**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SABRINA FELLOWS, EDMUND LYNN III,
DONNA PATTON, WESLEY HALL, and NINA
BUSTAMANTE-VICARIO, individually and as
representatives of a class of participants and
beneficiaries on behalf of the ALLIED
UNIVERSAL HEALTH AND WELFARE
BENEFIT PLAN,

                    Plaintiffs,

v.

UNIVERSAL SERVICES OF AMERICA, LP
d/b/a ALLIED UNIVERSAL, ALLIED
UNIVERSAL EMPLOYEE BENEFITS
COMMITTEE, MERCER HEALTH AND
BENEFITS ADMINISTRATION, LLC,
LOCKTON COMPANIES, LLC, and JOHN DOES
1–20,

                    Defendants.

No. 1:25-cv-10659-GHW-BCM

**ORAL ARGUMENT**
**REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**LOCKTON COMPANIES, LLC'S MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 4

ARGUMENT ........................................................................................................... 4

   I.    PLAINTIFFS DO NOT HAVE ARTICLE III STANDING TO BRING THEIR
         CLAIMS AGAINST LOCKTON. ............................................................... 5

       A.   Plaintiffs suffered no personal, concrete injury from the commissions paid to
           Lockton. ............................................................................................. 6

       B.   Plaintiffs received the benefit of their bargain. .......................................... 7

       C.   Plaintiffs' alleged loss is too speculative to constitute a concrete injury in fact. ........... 8

   II.   LOCKTON WAS NOT A FIDUCIARY AS A MATTER OF LAW. ........................... 11

       A.   Plaintiffs do not plausibly allege that Lockton was a "functional fiduciary." ............. 12

       B.   Recommending an insurer does not make Lockton a fiduciary. .................................. 14

       C.   Plaintiffs' allegations that Lockton managed claims, communications, and
           enrollment are both conclusory and irrelevant. ........................................... 16

       D.   Being an "agent" of the plan sponsor does not make a service provider a plan
           fiduciary. ............................................................................................. 17

       E.   Lockton did not become a fiduciary by setting its own compensation. ........................ 18

   III.  PLAINTIFFS FAIL TO ALLEGE THAT LOCKTON BREACHED THE DUTY
         OF PRUDENCE (COUNT I) ........................................................................ 19

   IV.  COUNT I FAILS AS TO LOCKTON BECAUSE PLAINTIFFS HAVE NOT
         ADEQUATELY PLED CAUSATION ........................................................... 22

   V.   PLAINTIFFS FAIL TO STATE ANY CLAIM FOR PROHIBITED
         TRANSACTIONS AGAINST LOCKTON (COUNT V) ................................... 23

   VI.  PLAINTIFFS FAIL TO STATE ANY "KNOWING PARTICIPATION" CLAIM
         AGAINST LOCKTON (COUNTS VII AND IX) ........................................... 25

CONCLUSION ...................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Serv. of N. Ill. v. Cap. Admin., Inc.*,
  2021 WL 780483 (N.D. Ill. Mar, 1, 2021)..................................................................16

*Allen v. Bank of Am. Corp.*,
  2016 WL 4446373 (S.D.N.Y. Aug. 23, 2016).........................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................5, 14

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ............................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................4, 5

*Black v. Bresee's Oneonta Dep't Store, Inc. Sec. Plan*,
  919 F. Supp. 597 (N.D.N.Y. 1996)....................................................................15

*Boyette v. Montefiore Med. Ctr.*,
  2025 WL 48108 (2d Cir. Jan. 8, 2025) .............................................................20

*Carfora v. Teachers Ins. Annuity Ass'n of Am.*,
  631 F. Supp. 3d 125 (S.D.N.Y. 2022).................................................................16

*Chao v. Day*,
  436 F.3d 234 (D.C. Cir. 2006)............................................................................13

*Chauvet v. Local 1199, Drug, Hosp. & Health Care Emps. Union*,
  1996 WL 665610 (S.D.N.Y. Nov. 18, 1996)......................................................26

*Collins v. Ne. Grocery, Inc.*,
  2025 WL 2383710 (2d Cir. Aug. 18, 2025).....................................................24, 25

*Comerica Bank v. Voluntary Emp. Benefits Assocs., Inc.*,
  2012 WL 12948705 (N.D. Ga. Jan. 11, 2012)....................................................6, 24

*Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.*,
  949 F.2d 960 (8th Cir. 1991) ............................................................................13

*Danza v. Fid. Mgmt. Tr. Co.*,
  533 F. App'x 120 (3d Cir. 2013) ......................................................................24

*DaVita, Inc. v. Amy's Kitchen, Inc.*,
    379 F. Supp. 3d 960 (N.D. Cal. 2019) ....................................................................7

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ...........................................................................6, 23

*Doe v. Blue Cross Blue Shield of Md., Inc.*,
    173 F. Supp. 2d 398 (D. Md. 2001) .......................................................................7

*Erickson v. Pardus*,
    551 U.S. 89 (2007).................................................................................................5

*F.H. Krear & Co. v. Nineteen Named Trs.*,
    810 F.2d 1250 (2d Cir. 1987)..............................................................................18

*Faber v. Metro. Life Ins. Co.*,
    2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009) ...................................................6, 7

*Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*,
    2013 WL 6506304 (S.D.N.Y. Dec. 12, 2013) ................................................13, 14

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014).............................................................................................4

*Fink v. Union Cent. Life Ins. Co.*,
    94 F.3d 489 (8th Cir. 1996) ................................................................................13

*Forgione v. Gaglio*,
    2015 WL 718270 (S.D.N.Y. Feb. 13, 2015)...................................................13, 25

*Gallagher Corp. v. Mass. Mut. Life Ins. Co.*,
    105 F. Supp. 2d 889 (N.D. Ill. 2000) ...................................................................15

*Georgas v. Kreindler & Kreindler*,
    41 F. Supp. 2d 470 (S.D.N.Y. 1999)....................................................................13

*Gonzalez v. Northwell Health, Inc.*,
    632 F. Supp. 3d 148 (E.D.N.Y. 2022) .................................................................22

*Haley v. TIAA*,
    377 F. Supp. 3d 250 (S.D.N.Y. 2019)..................................................................26

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000)........................................................................................25, 26

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ..............................................................................20

*Henry v. Champlain Enters., Inc.*,
    445 F.3d 610 (2d Cir. 2006)............................................................................8

*Horvath v. Keystone Health Plan E., Inc*.,
    333 F.3d 450 (3d Cir. 2003) ............................................................ *passim*

*In re Express Scripts/Anthem ERISA Litig.*,
    285 F. Supp. 3d 655 (S.D.N.Y. 2018)........................................................17

*In re Ins. Brokerage Antitrust Litig.*,
    2008 WL 141498 (D.N.J. Jan. 14, 2008) .....................................6, 12, 24

*In re JPMorgan Chase & Co. ERISA Litig.*,
    2016 WL 110521 (S.D.N.Y. Jan. 8, 2016) ...............................................13

*Johnston v. Paul Revere Life Ins.Co.*,
    241 F.3d 623 (8th Cir. 2001) ....................................................................13

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
    561 F.3d 112 (2d Cir. 2009)........................................................................5

*Krukas v. AARP, Inc.*,
    2021 WL 5083443 (D.D.C. Nov. 2, 2021) ................................................7

*Landmark Dev. Grp., LLC v. Town of East Lyme*,
    374 F. App'x 58 (2d Cir. 2010) .................................................................5

*Lauderdale v. NFP Ret., Inc.*,
    2022 WL 17260510 (C.D. Cal. Nov. 17, 2022)......................................23

*Leber v. Citgroup, Inc.*,
    2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ..........................................27

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) ..............................................................14, 15

*Lewandowski v. Johnson & Johnson*,
    2025 WL 3296009 (D.N.J. Nov. 26, 2025) ..............................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).................................................................................5, 8

*Mahoney v. J.J. Weiser & Co.*,
    564 F. Supp. 2d 248 (S.D.N.Y. 2008)................................................15, 16

*Mahoney v. JJ Weiser & Co.*,
    339 F. App'x 46 (2d Cir. 2009) ...........................................................12, 13

*Marks v. Independence Blue Cross*,
    71 F. Supp. 2d 432 (E.D. Pa. 1999) ..................................................................24

*Matney v. Barrick Gold of N.A.*,
    80 F.4th 1136 (10th Cir. 2023) ......................................................................21

*Matousek v MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ...........................................................................20

*McCarty v. Bank of N.Y. Mellon*,
    669 F. App'x 6 (2d Cir. 2016) ........................................................................10

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) .........................................................................................12

*Navarro v. Wells Fargo & Co.*,
    2025 WL 897717 (D. Minn. Mar. 24, 2025) ...............................................8, 11

*Patrico v. Voya Fin., Inc.*,
    2017 WL 2684065 (S.D.N.Y. June 20, 2017) .............................................18, 19

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ....................................................................................12, 17

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. v. Morgan
    Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ........................................................................19, 20

*Ramos v. Banner Health*,
    1 F.4th 769 (10th Cir. 2021) ............................................................................26

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ........................................................................16, 18

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
    718 F. App'x 3 (2d Cir. 2017) .........................................................................25

*Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*,
    2013 WL 3864395 (D.N.J. July 24, 2013) .....................................................18

*Santomenno v. Transamerica Life Ins. Co.*,
    883 F.3d 833 (9th Cir. 2018) ......................................................................18, 24

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
    960 F.3d 190 (5th Cir. 2020) ...........................................................................21

*Singh v. Deloitte LLP*,
    123 F.4th 88 (2d Cir. 2024) .............................................................................21

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................................................5, 6, 8

*Srein v. Frankford Tr. Co.*,
    323 F.3d 214 (3d Cir. 2003).........................................................................12

*Sullivan-Mestecky v. Verizon Comm. Inc.*,
    961 F.3d 91 (2d Cir. 2020)............................................................................17

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020).................................................................................5, 7

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013) .....................................................................21

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
    843 F.3d 561 (2d Cir. 2016).........................................................................25

*United States v. Glick*,
    142 F.3d 520 (2d Cir. 1998).........................................................................18

*Walker v. Merrill Lynch & Co.*,
    181 F. Supp. 3d 223 (S.D.N.Y. 2016)...........................................................16

*Walsh v. Vinoskey*,
    19 F.4th 672 (4th Cir. 2021) ........................................................................26

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023) ........................................................................11

*XY Plan. Network, LLC v. SEC*,
    963 F.3d 244 (2d Cir. 2020).........................................................................10

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) ...................................................................21

*Zang v. Paychex, Inc.*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010) .........................................................14

**Statutes**

29 U.S.C. § 1002(21)(A)...........................................................................12, 14

29 U.S.C. § 1106(b) ...................................................................................23

29 U.S.C. § 1109(a) ...................................................................................22

**Other Authorities**

H. Miller & A. Hollis, *Blindsided: Are Supplemental Health Plans the next class action risk for plan sponsors?*, EMPLOYEES FIRST (June 2025) ....................................2, 16

Jackson Williams, *Addressing Low-Value Insurance Products with Improved Consumer Information: The Case of Ancillary Health Products*, Journal of Insurance Regulation (2022)....................................................................................10

## PRELIMINARY STATEMENT

This case is one of a series of cookie-cutter ERISA class actions filed by Plaintiffs' counsel attacking voluntary benefits ("VB") insurance offered by companies to their employees. The Complaint ("Compl.") claims that the Defendants violated ERISA in connection with a VB program (the "VB Program") offered to employees of Universal Services of America LP ("Allied") because the brokerage commissions paid in connection with the insurance were purportedly above industry averages. These allegations are critically deficient, particularly with respect to the claims against Lockton Companies, LLC ("Lockton")—the third-party broker of record on Allied's VB program beginning in 2021.[1]

As a threshold matter, Plaintiffs' Complaint must be dismissed for lack of Article III standing. The lack of an injury-in-fact under Article III is apparent on the face of the Complaint. Plaintiffs acknowledge that Lockton's commissions were paid by the insurance carrier, not by Allied employees or the VB Program. Compl. ¶ 85. Plaintiffs do not have any economic interest in commissions the carrier chose to pay to Lockton and thus could not have suffered any cognizable injury from those payments. Plaintiffs attempt to get around this fatal defect by adding a conclusory allegation that higher commissions led to "excessive and unreasonable premiums." *Id*. ¶ 3. However, the Complaint does not include any plausible factual allegations to support this assertion, as the law requires. There are no allegations that the premiums paid by Allied employees were high compared to industry standards or to any other plans. Instead, the very same data Plaintiffs use to show that Lockton's fees were allegedly high compared to other plans

---

[1] Lockton hereby incorporates by reference the arguments set forth in the motions to dismiss filed by Defendants Mercer Health and Benefits Administration, LLC ("Mercer") ("Mercer Br.") and Allied Universal Employee Benefits Committee and Universal Services of America, LP d/b/a Allied Universal ("Allied Br."), to the extent those arguments are not inconsistent with the arguments set forth herein and also apply to the allegations against Lockton.

demonstrates the premiums paid by Allied employees were *lower* than those paid by employees on plans with lower commissions.  *Id*. ¶¶ 162-68; Allied Br. Section V.A.  In other words, participants in the Allied VB Program received all the VB benefits they were entitled to at premiums even lower than the alleged comparator plans identified in the Complaint.  Because Plaintiffs cannot demonstrate any injury-in-fact, Plaintiffs' claims must be dismissed as a matter of law.

Second, Lockton was not an ERISA fiduciary as a matter of law.  Even assuming ERISA applies to the Allied VB Program, the Complaint fails to allege any facts that Lockton served in any capacity other than as a traditional non-discretionary broker, a role that has been repeatedly held to not impose a fiduciary duty.[2]  Under ERISA, fiduciary status must be established through specific factual allegations demonstrating actual exercise of discretionary authority.  The Complaint fails to do that.  Instead, Plaintiffs rely on precisely the type of conclusory, formulaic recitations that the Supreme Court has held are insufficient to survive a motion to dismiss:  boilerplate allegations that Lockton "exercised discretionary authority or discretionary control over the administration and management of the Plan."  *Id*. ¶ 35.  This is a legal conclusion, not well-pleaded facts entitled to the presumption of truth.  Plaintiffs' claims must be dismissed because Lockton was not a fiduciary as a matter of law.

Third, even if the broker services Lockton provided could transform it into a plan fiduciary, the Complaint does not adequately allege any breach of fiduciary duty.  Plaintiffs assert a claim

---

[2] The Complaint's own sources expressly acknowledge this.  H. Miller & A. Hollis, *Blindsided: Are Supplemental Health Plans the next class action risk for plan sponsors?*, EMPLOYEES FIRST 2 (June 2025), https://www.myemployeesfirst.com/perspectives [https://perma.cc/B7UN-9HZT] ("What employers often fail to recognize is that **the brokers themselves are not fiduciaries**.  Therefore, [the brokers] **do not owe a fiduciary duty to the employer, the plan or the participants** . . . ." (emphasis added) (cited in Compl. ¶ 78 n.17).

based on the fiduciary duty of prudence, but the focus of the prudence inquiry under ERISA is on the *process* used in arriving at the challenged decision. Plaintiffs ignore Lockton's process entirely. Instead, they ask this Court to infer that each Defendant had no process based on the level of premiums paid by Allied employees. *Id.* ¶ 200. The law does not permit such an inference here. To infer a deficient process based on "objective imprudence" requires factual allegations that the premiums were high compared to a meaningful benchmark. Plaintiffs do not even attempt to make such a comparison and, indeed, their pleading conclusively undermines such an assertion. Lockton's commissions, which the Complaint alleges averaged about 39%, likewise cannot support an inference of a deficient process: as the Complaint shows, they were directly in line with the 15-55% range collected by other VB brokers. *See id.* ¶ 87 n.20.

Fourth, the prohibited transaction claim against Lockton, brought under ERISA § 406(b), suffers from some of the same defects as the fiduciary duty claim. Lockton was not a fiduciary, which is fatal to the Section 406(b) claim. In addition, the statute prohibits fiduciaries from self-dealing with *plan assets.* Lockton's commissions were paid by the insurance company as compensation for Lockton's services. The commissions are not "plan assets" in these circumstances, and the mere receipt of compensation by a plan service provider cannot be the basis of a self-dealing claim under Section 406(b).

Finally, Plaintiffs' claims that Lockton "knowingly participated" in ERISA violations by Allied (Counts VII and IX), must be dismissed because the predicate claims against Allied have not been adequately pled. *See* Allied Br. Section V. Moreover, the Complaint fails to allege specific facts supporting Lockton's "knowledge" of any alleged misconduct by Allied—offering only conclusory assertions that Lockton "knew" of Allied's purported failures, without identifying what Lockton knew, when it knew it, or how it possessed such knowledge.

In sum, the Complaint against Lockton is built entirely on conclusions masquerading as factual allegations, improper generalizations about so-called "industry practice," and a misapprehension of ERISA's fiduciary framework. The claims against Lockton should be dismissed in their entirety with prejudice.

## BACKGROUND

In addition to traditional health insurance, the Allied VB Program offers employees the opportunity to purchase supplemental benefits, including accident, critical illness, and hospital indemnity insurance. Compl. ¶ 46. These voluntary benefits provide a financial safety net for out-of-pocket costs not covered by traditional insurance plans. *Id*. ¶ 48. They cover specific health-related events, paying out a lump-sum or fixed amount when participants file a claim. *Id*. ¶ 47. The purchase of insurance is entirely voluntary, and participants pay the full cost of their premiums through payroll deductions. *Id*. ¶ 46.

Plaintiffs allege they are current or former participants in Allied's VB Program. Allied was the named fiduciary for the Plan and responsible for selecting the insurance carrier for the company's VB Program. *Id*. ¶¶ 21-23, 25, 67-68, 117. Continental American Insurance Company ("Continental"), a subsidiary of Aflac, has been the insurance carrier used by Allied since 2019. *Id*. ¶¶ 111-12. Mercer was the broker used for the VB Program until 2021 when Lockton replaced it as broker of record. *Id*. ¶ 111. Lockton was compensated for its services through commissions paid by the insurance carrier, not by the employees or Allied. *Id*. ¶ 85.

## ARGUMENT

Motions to dismiss are "important mechanism[s] for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Courts require factual specificity before allowing potentially costly and burdensome suits to proceed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Although "a judge must accept as true all of the factual allegations

contained in the complaint" and construe the pleading in the light most favorable to the plaintiff, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Dismissal is appropriate if the complaint fails to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Landmark Dev. Grp., LLC v. Town of East Lyme*, 374 F. App'x 58, 60 (2d Cir. 2010) (citation and internal quotation marks omitted).

## I.    PLAINTIFFS DO NOT HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS AGAINST LOCKTON.

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Courts apply the "ordinary Article III standing analysis," *id.* at 547, requiring Plaintiffs to "plausibly and clearly" allege (i) "an injury in fact" that is concrete, particularized, and actual or imminent, (ii) fairly traceable to the alleged fiduciary violations, and (iii) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs fail to satisfy the "first and foremost of standing's three elements": an injury-in-fact that is concrete, particularized, and "actual or imminent," rather than "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation and internal quotation marks omitted). Plaintiffs "cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of [their] entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009). Moreover, Plaintiffs seek, among other relief, restitution and disgorgement, "both of which are individual in nature and therefore require [a plaintiff] to demonstrate individual loss" to establish Article III standing. *Horvath v. Keystone*

*Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003).  They have failed as a matter of law to allege any Article III injury here.

A.    <u>**Plaintiffs suffered no personal, concrete injury from the commissions paid to Lockton.**</u>

Plaintiffs do not identify a personal, concrete injury with respect to Lockton's commissions.  *Spokeo*, 578 U.S. at 339-40 (injury must be concrete and affect the plaintiff "in a personal and individual way") (citation and internal quotation marks omitted).  A plaintiff that "advance[s] requests for money owed" must "identify a particular fund possessed by the defendant" to which they are entitled.  *Faber v. Metro. Life Ins. Co.*, 2009 WL 3415369, at *5 (S.D.N.Y. Oct. 23, 2009) (citation and internal quotation marks omitted), *aff'd*, 648 F.3d 98 (2d Cir. 2011).  Plaintiffs seek disgorgement of the commissions Lockton received from the insurance carrier, Continental.  But Plaintiffs have not—and cannot—allege entitlement to those funds.  Lockton's commissions were paid by Continental out of its own funds, not "plan assets." *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 657 (9th Cir. 2019) (premiums paid to insurer are not "plan assets" and participants have no beneficial ownership interest in them); *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184, 05-1079, 2008 WL 141498, at *8 (D.N.J. Jan. 14, 2008) (insurer's general assets are not plan assets subject to ERISA fiduciary obligations); *Comerica Bank v. Voluntary Emp. Benefits Assocs., Inc.*, 2012 WL 12948705, at *16 (N.D. Ga. Jan. 11, 2012)  ("[W]hen the commissions were paid to [the insurance brokers], the funds were assets belonging to [the brokers] paid from assets of the carriers.  This interpretation is the only one that makes legal and practical commercial sense under ERISA.").  Plaintiffs' interest in the funds used to purchase their VB insurance ended when they received the VB Insurance that they paid for from Continental; they have no interest in the commissions that Continental separately

paid to Lockton from its own funds.  *See Krukas v. AARP, Inc.*, 2021 WL 5083443, at *8 (D.D.C.

Nov. 2, 2021).  As the court in *Krukas* explained in rejecting a similar theory:

> [A] consumer has no cognizable interest in what a general contractor pays a
> subcontractor, or what the manufacturer of a product pays an outside marketing
> firm.  Similarly, plaintiffs here have no interest in the payment [the carrier] makes
> to defendants.  Regardless of the precise flow of money, plaintiffs knowingly paid
> a certain amount for insurance, and a portion of that amount went to defendants
> pursuant to the agreement between defendants and [the carrier].  Plaintiffs'
> assertions that they have "pa[id] for a charge that they did not owe," or have been
> "fraudentl[ly] overbill[ed]," are simply unsupportable on this record.

*Id.* (internal citations omitted).  Because Plaintiffs have failed to adequately allege any cognizable

entitlement to the commissions Continental paid to Lockton, Plaintiffs have failed to show a

personal, concrete injury relating to those commissions.  *Faber*, 2009 WL 3415369, at *5.

### B.    Plaintiffs received the benefit of their bargain.

The only thing Plaintiffs were personally entitled to is the VB insurance they received from

Continental—and they received those benefits in full.  Courts reject ERISA disgorgement claims

for lack of Article III standing where plaintiffs fail to allege a bargained-for benefit they did not

receive.  *See Faber*, 2009 WL 3415369, at *5; *see also DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F.

Supp. 3d 960, 971 (N.D. Cal. 2019) (no standing where ERISA plaintiff received all necessary

health treatment at the rate defined by plan); *Doe v. Blue Cross Blue Shield of Md., Inc.*, 173 F.

Supp. 2d 398, 404 (D. Md. 2001) (". . . ERISA case law consistently has tied the issue of standing

to the denial of specific benefits.").  Plaintiffs lack the "concrete stake" necessary to confer Article

III standing where, as here, they would receive the same plan benefits regardless of whether they

win or lose.  *See Thole*, 590 U.S. at 547 ("[P]laintiffs lack Article III standing for a simple,

commonsense reason:  They have received all of their vested pension benefits so far, and they are

legally entitled to receive the same monthly payments for the rest of their lives.").  "The aim of

ERISA is to make plaintiffs whole, but not to give them a windfall." *Henry v. Champlain Enters., Inc.,* 445 F.3d 610, 624 (2d Cir. 2006) (citation and internal quotation marks omitted).

Plaintiffs do not dispute that they received in full the benefits they paid for—accident, critical illness, and hospital indemnity insurance—and do not allege the coverage was deficient. Instead, Plaintiffs claim they paid "excessive and unreasonable premiums," Compl. ¶ 3, but as discussed *infra* Section III, and in Allied's Motion, this conclusory statement is belied by the alleged comparator plans in the Complaint:  Allied VB Program participants actually paid *less* for the VB insurance than participants in those plans.  Allied Br. Section V.A.  Plaintiffs received all the benefits they were due and are not entitled to a "windfall" under ERISA in the form of disgorgement, reversal of transactions, or surcharges.  *Henry*, 445 F.3d at 624.

### C.    Plaintiffs' alleged loss is too speculative to constitute a concrete injury in fact.

Plaintiffs' theory of loss—premised on an alleged "overpayment" of premiums—fails for the additional reason that it is far too speculative to constitute a "concrete" injury in fact.  *See Spokeo*, 578 U.S. at 339 (injury in fact must be "actual or imminent, not conjectural or hypothetical" (quoting *Lujan*, 504 U.S. at 560)).  Courts regularly dismiss ERISA claims where plaintiffs rely on speculative or generalized allegations of harm.  *See Horvath*, 333 F.3d at 457; *Lewandowski v. Johnson & Johnson*, 2025 WL 3296009, at *5 (D.N.J. Nov. 26, 2025) ("Put simply, it is too speculative that the allegedly excessive fees the Plan paid to its PBM 'had any effect at all' on Plaintiffs' contribution rates and out-of-pocket costs for prescriptions."); *Navarro v. Wells Fargo & Co.*, 2025 WL 897717, at *9 (D. Minn. Mar. 24, 2025) (no injury in fact where there was no "direct connection between [plaintiff's] increased costs and the [complained-of] increases in administrative fees").

*Horvath* is instructive and compels dismissal.  There, the plaintiff alleged that the ERISA fiduciary's failure to disclose cost-control incentives diminished the value of her healthcare

benefits. *Horvath*, 333 F.3d at 452-53. The Third Circuit rejected this theory as speculative, noting that the plaintiff merely assumed her employer would have passed on any savings. *Id.* at 457. Plaintiffs' claims suffer from the same defect. Like in *Horvath*, Plaintiffs do not allege that the coverage they received was affected by any ERISA violation. Instead, their "claim for individual loss, to the extent [they have] one at all, is premised on [their] argument that [they] overpaid" for that coverage. *Id*. at 456. Plaintiffs make the conclusory assertion that broker commissions necessarily caused a "dollar-for-dollar" increase in premiums (Compl. ¶¶ 84, 152, 160, 168)—a theory resting on unsupported assumptions:

*First*, the level of commissions paid on Allied's VB Program says nothing about whether the *premiums* were too high. Plaintiffs' chosen metric—commissions expressed as a percentage of premiums—is fundamentally flawed as a measure of participant harm.[3] More fundamentally, for Plaintiffs to adequately allege that they "overpaid premiums," the Complaint needs to allege, at a minimum, that Plaintiffs' premiums were higher compared to similar insurance. But Plaintiffs have not done that, and the very same "best available public data" they rely on, *id*. ¶ 151, shows that Allied employees paid lower average premiums despite supposedly paying higher commissions. *See* Allied Br. Section V.A.

*Second*, Plaintiffs allege that VB insurance across the industry had lower "loss ratios" (the ratio of the amount paid out in claims to premiums earned by the insurer) than certain other types of insurance, Compl. ¶¶ 94-107, and speculate that a lower loss ratio is far more likely to "corelate [sic] to poor value." *Id*. ¶ 157. However, loss ratio is a measure of an insurance company's

---

[3] Consider two participants who each pay a $0.50 commission for identical insurance coverage: if one participant's premium is $1.00 (a 50% commission rate) and the other's premium is $2.00 (a 25% commission rate), the participant paying the "higher" 50% commission rate is clearly better off because she paid a lower overall premium.

profitability, *id.* ¶ 94, not value to the insureds.  Plaintiffs allege no specific facts about Allied's VB Program, such as actual claims experience, denial rates, or service deficiencies, indicating that Continental's profitability translated into lower value to participants.[4]

      *Third,* even if loss ratios were a metric of value, Plaintiffs do not allege the *actual loss ratio* on Allied's program or that it was *lower than other similarly situated VB insurance programs.* Instead, they rely on unspecified "industry averages and sources" to speculate that the VB Program's historical loss ratio was "significantly less than 50%." *Id.* ¶¶ 149-50.  This methodology is precisely the type of speculation that cannot support Article III standing.  *See XY Plan. Network, LLC v. SEC*, 963 F.3d 244, 253 (2d Cir. 2020) (no standing where the theory of injury rested on "conclusory statements and speculative economic data") (citation and internal quotation marks omitted); *see also McCarty v. Bank of N.Y. Mellon*, 669 F. App'x 6, 7 (2d Cir. 2016) (affirming dismissal where claim "reli[ed] on too speculative an injury to serve as a basis for Article III standing").  Plaintiffs' estimate of the loss ratio is critically flawed because it is premised on an erroneous theory that it is "impossible" for a loss ratio to exceed 100%.  Regardless, an estimated loss ratio is meaningless without comparisons suggesting it was out-of-line with industry standards for similar insurance.  Indeed, the Complaint cites articles discussing how loss ratios on VB insurance were higher across the industry compared to other types of insurance but selectively omits data showing loss ratios below 50% are typical for VB insurance.[5]

---

[4] Plaintiffs also acknowledge that loss ratios can be higher or lower based on many factors, Compl. ¶ 107, none of which they address in the Complaint.

[5] *See id.* ¶ 101 n.29 (citing Jackson Williams, *Addressing Low-Value Insurance Products with Improved Consumer Information: The Case of Ancillary Health Products*, Journal of Insurance Regulation, at 18 (2022) (listing loss ratios for hospitalization insurance and specified disease insurance of 45.45% and 40.76%, respectively)).

*Fourth*, Plaintiffs assume that a lower loss ratio means they paid higher premiums, Compl. ¶ 154, but allege no facts establishing any direct correlation between loss ratio and premiums charged. Plaintiffs' naked assumption ignores the many other components affecting both premium pricing (*e.g.*, administrative costs, taxes, and product features) and loss ratios. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 524 (9th Cir. 2023) ("The problem with plaintiffs' theory is that plaintiffs have not pleaded facts tending to show that Sequoia's alleged breach of fiduciary duty led to plaintiffs paying higher contributions."); *Navarro*, 2025 WL 897717, at *9 ("There are simply too many variables in how Plan participants' contribution rates are calculated to make the inferential leaps necessary to elevate Plaintiffs' allegations from merely speculative to plausible.").

Plaintiffs' speculative injury theory is precisely why courts have found that "proving diminished value claims is problematic." *Horvath*, 333 F.3d at 457. Such claims require "a determination of the value of the insurance provided," an inquiry that "inappropriately transforms juries into quasi-regulatory commissions." *Id*. The Third Circuit found such reasoning "far too speculative to serve as the basis for a claim of individual loss." *Id*. (noting no court has found standing for diminished value claims under ERISA). This Court should, too. Because Plaintiffs have failed to allege—and cannot allege—a concrete and particularized injury sufficient to establish Article III standing, as a matter of law, the claims against Lockton should be dismissed.

## II.    <u>LOCKTON WAS NOT A FIDUCIARY AS A MATTER OF LAW.</u>

Even if Plaintiffs adequately alleged the VB Program was subject to ERISA,[6] Counts I and V must be dismissed because Lockton was not an ERISA fiduciary as a matter of law with respect

---

[6] As noted in Allied's brief, Plaintiffs do not sufficiently allege that the VB Program was a part of the Allied ERISA plan. *See* Allied Br. Section V.B.

to the challenged conduct.  Claims for breach of fiduciary duty and prohibited transactions under ERISA §§ 404 and 406 may only be asserted against a party that is an ERISA fiduciary.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53, 263 (1993) (affirming dismissal); *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").

Under ERISA § 3(21)(A), a person is a fiduciary:

[T]o the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  Plaintiffs' allegations are insufficient to plead fiduciary status as a matter of law.  *See Srein v. Frankford Tr. Co.*, 323 F.3d 214, 220 (3d Cir. 2003).

## A.  <u>Plaintiffs do not plausibly allege that Lockton was a "functional fiduciary."</u>

Plaintiffs concede that insurance brokers that facilitate the sale of insurance to a plan are not fiduciaries under ERISA.  *See* Compl. ¶ 132 (citing *In re Ins. Brokerage Antitrust Litig.*, 2008 WL 141498, at *5).  Moreover, courts routinely dismiss ERISA claims against third-party service providers absent factual allegations that they exercised discretionary authority with respect to the challenged conduct.  *See, e.g.*, *Allen v. Bank of Am. Corp.*, 2016 WL 4446373, at *8 (S.D.N.Y. Aug. 23, 2016) ("The Complaint's allegations fall short of the level of control described in the cases that Plaintiffs cite for the proposition that 'service providers' may be considered ERISA fiduciaries."), *aff'd sub nom. Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214 (2d Cir. 2018); *Mahoney v. JJ Weiser & Co.*, 339 F. App'x 46, 48-49 (2d Cir. 2009) ("mere acceptance of

a recommendation to purchase insurance" is non-actionable where there was no evidence of the insurance broker's authority or control); *Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir. 1991) (salesperson selling products and "earning commissions" was "not a fiduciary under ERISA").

Service providers to a plan's administrators can be functional fiduciaries only if they "transcend the normal role and exercise discretionary authority." *Johnston v. Paul Revere Life Ins.* Co., 241 F.3d 623, 632 (8th Cir. 2001) (cleaned up). Typical broker activities—such as receiving and forwarding applications and delivering policy information—do not constitute discretionary control. *Id.*; *see also* Mercer Br. Section II.A; *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 493 (8th Cir. 1996) (recommending insurance and assisting with enrollment are not fiduciary activities).[7]

Conclusory allegations labeling a service provider a "functional fiduciary" or asserting that it "exercised discretionary authority" are insufficient. *See In re JPMorgan Chase & Co. ERISA Litig.*, 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016) (bare assertions of discretionary authority and control over plan administration are inadequate), *aff'd sub nom. Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016); *Forgione v. Gaglio*, 2015 WL 718270, at *9 (S.D.N.Y. Feb. 13, 2015) (". . . Plaintiffs cannot transform [defendant] into a fiduciary by means of conclusory assertions that are belied by the remainder of the Complaint."); *Fastener Dimensions, Inc. v. Mass. Mut. Life*

---

[7] The cases cited in the Complaint either: (a) stand for the unremarkable proposition that brokers *can* be fiduciaries *if* they hold discretion over plan management; or (b) are inapposite and have distinguishable facts. *See* Compl. ¶¶ 133-35. For example, in *Chao v. Day*, 436 F.3d 234, 236-37 (D.C. Cir. 2006), the broker misappropriated funds and delivered fake policies, which is vastly different from Lockton's disclosed, arm's-length brokerage services. In *Georgas v. Kreindler & Kreindler*, 41 F. Supp. 2d 470, 475 (S.D.N.Y. 1999), the court *dismissed* the complaint despite conclusory statements that the employer "played an active role" in claims decisions.

*Ins. Co.*, 2013 WL 6506304, at *3 (S.D.N.Y. Dec. 12, 2013) (merely "parroting ERISA's definition of fiduciary" fails to state a claim under *Iqbal*).

Plaintiffs have failed to allege any specific facts showing that Lockton "transcended" the normal role of an insurance broker.  Instead, Plaintiffs either impermissibly parrot the statutory language of 29 U.S.C. §§ 1002(21)(A)(i) and (iii)—*see, e.g.*, Compl. ¶ 35—or allege, in conclusory fashion and with no further factual enhancement, that Lockton "exercise[s] discretion in administering voluntary benefit plans" because it "selected and recommended" the insurance carrier by "screen[ing] the bids [it] receive[d] from carriers" before presenting them to Allied, and "administer[ed] and manag[ed] the [VB] Insurance, including by managing claims, controlling communications and conducting enrollment."  *Id.* ¶¶ 90-93, 134-139.  None of these provides an adequate basis to confer fiduciary status.

## B.    Recommending an insurer does not make Lockton a fiduciary.

Plaintiffs allege in a conclusory fashion that Lockton acted as fiduciary because it recommended Continental.[8]  *Id.* ¶ 136.  However, ERISA purposefully does not impose fiduciary status on every entity that interacts with an employee benefit plan and "merely 'playing a role' in the selection of investment options or furnishing professional advice is not enough to transform a company into a fiduciary."  *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 270 (W.D.N.Y. 2010) (citation modified); *see also Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 912 (7th Cir. 2013).  Making recommendations is simply not enough to transform Lockton into a fiduciary.  *See*

---

[8] The Complaint's habit of lumping all "Defendants" together in alleging that each "selected" Continental renders the allegations so vague as to be unintelligible.  *See* Compl. ¶¶ 126-28, 136. Such group pleading fails to provide fair notice of what Lockton is alleged to have done.  *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" is insufficient under Federal Rule 8).

*Mahoney v. J.J. Weiser & Co.*, 564 F. Supp. 2d 248, 256-57 (S.D.N.Y. 2008) (recommendations do not "convert [the broker] into a fiduciary" absent an allegation that the broker "had the authority to force the [Plan] to accept" its recommendations); *Black v. Bresee's Oneonta Dep't Store, Inc. Sec. Plan*, 919 F. Supp. 597, 606-07 (N.D.N.Y. 1996) (same).

Plaintiffs implausibly seek to blur the distinction between recommendation and discretionary control by claiming Lockton and Mercer recommended a curated list of insurance carriers to Allied (Compl. ¶¶ 91-92), but there is no legal support for this. Every recommendation is by nature a subset of the universe of options. Regardless, other allegations show that Lockton could not have "selected" the insurance carrier because Continental was already the VB Program's insurance carrier when Lockton was hired in 2021. *Id.* ¶¶ 111-12. Thus, at most, Lockton inherited a pre-existing carrier relationship—it did not make any selection decision. To the extent Plaintiffs' theory rests on a duty to monitor an existing carrier relationship, the Complaint is silent as to what Lockton actually did to monitor the carrier, or when Continental could be terminated under its existing contract with Allied.

The Complaint does not and cannot allege with any factual specificity that Lockton's role went any further than evaluating the VB carrier, providing guidance to Allied on market terms, presenting "options" and "alternatives," and making "recommend[ations]." *Id.* ¶¶ 86, 91. Plaintiffs do not and cannot allege that Lockton had ultimate authority to select the Plan's VB carrier. That decision was made by Allied, which was free to choose a different broker or insurer if it believed the insurance was not competitive. *See Leimkuehler*, 713 F.3d at 912; *see also Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 105 F. Supp. 2d 889, 897 (N.D. Ill. 2000) ("In short, plaintiffs are upset that they purchased expensive insurance to their detriment and [defendant's]

benefit.  But the alleged receipt of excessive premiums and payment of high commissions does not transform [defendant] into an ERISA fiduciary."); *Mahoney*, 564 F. Supp. at 257 (same).

The cases Plaintiffs cite in the Complaint do not help them.  In *Access Services of Northern Illinois v. Capitol Administrators, Inc.*, the court explained that a broker "offering insurance plans for sale or recommending options" is different from one who has "final discretion in the choice of which insurance provider and plan to choose."  2021 WL 780483, at *4 (N.D. Ill. Mar. 1, 2021).  Only the latter acts as a fiduciary.  *Id.*  Courts routinely decline to find that service providers are plan fiduciaries merely because they present a limited number of options to the plan.  *See, e.g.*, *Carfora v. Teachers Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125, 153 (S.D.N.Y. 2022) (a mere service provider to an ERISA plan does not have "fiduciary status" even if it chooses "to limit the investment options available to the plan"); *Walker v. Merrill Lynch & Co.*, 181 F. Supp. 3d 223, 234 (S.D.N.Y. 2016) ("[a]s a matter of law, simply offering a discrete menu of [options to a plan] does not" make one a fiduciary under ERISA) (citation and internal quotation marks omitted); *Renfro v. Unisys Corp.*, 671 F.3d 314, 323 (3d Cir. 2011) (service provider held "no contractual authority to control the mix and range of investment options, [or] to veto [the sponsor's] selections" and thus was "not subject [] to liability [as a fiduciary] for these activities").  As Plaintiffs' own sources concede, brokers "do not owe a fiduciary duty to the employer, the plan or the participants."  *See supra* note 2.

C.     **Plaintiffs' allegations that Lockton managed claims, communications, and enrollment are both conclusory and irrelevant.**

Plaintiffs further allege that Lockton was an ERISA fiduciary because it supposedly "administer[ed] and manag[ed] the [VB] Insurance, including by managing claims, controlling communications and conducting enrollment."  Compl. ¶ 137.  Even if this assertion were supported by any specific factual allegations (and it is not), it still falls short.  The relevant inquiry is not

whether Plaintiffs have adequately alleged that Lockton exercised discretion over plan administration in some fashion, but rather whether they have alleged Lockton was a fiduciary *with respect to the challenged conduct*—here the setting of its commissions. *See In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 681 (S.D.N.Y. 2018) ("Because the guiding question is whether ESI was acting as a fiduciary 'when taking the action subject to complaint,' whether or not ESI exercised discretion with respect to other aspects of Plan administration is immaterial." (quoting *Pegram*, 530 U.S. at 226)), *aff'd sub nom. Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020). The Complaint does not allege that Lockton breached a fiduciary duty in connection with claims handling, communications, or enrollment. Whether Lockton "administered or managed" the VB insurance is immaterial and irrelevant. Compl. ¶ 137.

## D. <u>Being an "agent" of the plan sponsor does not make a service provider a plan fiduciary.</u>

Plaintiffs next contend Lockton is a fiduciary because it allegedly acted as Allied's and the VB Program's agent in "procuring and renewing insurance policies" and supposedly "managing claims." *Id*. ¶ 139. But even in making this bare allegation, Plaintiffs do not and cannot allege that Lockton had any authority to bind Allied to any insurer or make any VB Program decision. Agents are *not* Plan fiduciaries when they lack discretion or final authority over Plan administration or assets. *See Sullivan-Mestecky v. Verizon Comm. Inc.*, 961 F.3d 91, 104 (2d Cir. 2020) ("plan administrators may perform a fiduciary function through ministerial agents, without converting those individual agents themselves into fiduciaries" (citation modified)). Here, the

Complaint does not and cannot allege that Lockton had final authority over any Program decisions. As a matter of law, Lockton's non-discretionary role does not confer fiduciary status.

### E.    Lockton did not become a fiduciary by setting its own compensation.

Finally, Plaintiffs make a generalized assertion that a broker can "become a fiduciary by setting its own compensation."  Compl. ¶ 93.  *First*, this generalized assertion does not allege anything about Lockton.  Lockton didn't set its own compensation.  Carriers, not brokers, set the standard commission schedules that Plaintiffs complain about.  Nowhere in the Complaint do Plaintiffs allege any facts that *Lockton* sets its own compensation.

*Second*, even if Lockton set its own compensation, that does not—as a matter of law— confer fiduciary status.  A service provider "owes no fiduciary duty with respect to the negotiation of its fee compensation."  *Renfro*, 671 F.3d at 324.  "When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan. . . .  Such a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation."  *Id.* (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)).  Lockton negotiated its services agreement at arm's length and disclosed its compensation, and Allied was free to choose a different broker or carrier.  *See Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*, 2013 WL 3864395, at *7 (D.N.J. July 24, 2013), *aff'd*, 768 F.3d 284 (3d Cir. 2014); *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018) ("A service provider is plainly not" a fiduciary "when negotiating its prospective fees or compiling a list of proposed [options].").

Fiduciary status arises only when a service provider exercises an "ability to control unilaterally the amount of compensation it receives."  *Patrico v. Voya Fin., Inc.*, 2017 WL 2684065, at *3 (S.D.N.Y. June 20, 2017); *see also United States v. Glick*, 142 F.3d 520, 528 (2d Cir. 1998) ("[A]n agent with a contractually-established commission rate is not, without other

indicia, a fiduciary to the plan."). Plaintiffs do not and cannot allege that Lockton had any ability to unilaterally control the rates of commissions paid by Continental, or that Allied Universal was not "free to select a different . . . service provider or none at all." *See Patrico*, 2017 WL 2684065, at *3. Plaintiffs' generalized assertion that a "broker can become a fiduciary by setting its own compensation" fails to plead a plausible claim against Lockton.

* * *

Plaintiffs have failed to allege facts sufficient to establish that Lockton was an ERISA fiduciary with respect to the challenged conduct. Because fiduciary status is a prerequisite to Plaintiffs' claims for breach of fiduciary duty (Count I) and prohibited transactions (Count V), this deficiency is dispositive, and the Court's inquiry into those claims should end here.

### III.    PLAINTIFFS FAIL TO ALLEGE THAT LOCKTON BREACHED THE DUTY OF PRUDENCE (COUNT I)

As set forth above, Plaintiffs' claim for breach of fiduciary duty (Count I) fails as a matter of law because Lockton was not a fiduciary under ERISA. But this claim also fails because Plaintiffs have not alleged that Lockton's actions amounted to a breach of the fiduciary duty of prudence. The duty of prudence "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 716 (2d Cir. 2013) (citation modified). Critically, the Complaint makes ***no specific allegations*** about Lockton's actual process for recommending or monitoring the challenged insurance. Because there is no basis to claim Lockton's process was flawed or "that a prudent fiduciary in like circumstances would have acted differently," *id*. at 718, 720, Count I must be dismissed.

Plaintiffs ask this court to "infer" that Lockton must have had a flawed process for recommending Continental, but they provide no factual allegations that would support that

inference. *See, e.g.*, Compl. ¶¶ 113, 144. Plaintiffs suggest that a negative inference about process can be drawn from the insurance *premiums* paid by Plaintiffs, but the Complaint makes no attempt to show those premiums were high compared to a meaningful benchmark. Putting aside that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible" option, *PBGC*, 712 F.3d at 718, there is no basis to infer that Plaintiffs paid anything other than the lowest premiums available.

Unable to show the premiums were comparatively expensive, Plaintiffs compare Lockton's commissions to commissions it received in connection with other VB programs.[9] Compl. ¶¶ 165-67. But Plaintiffs make no effort to explain why the two comparators it chose (out of many more plans for which Lockton has acted as broker) are appropriate benchmarks from which to infer the imprudence of Lockton's commissions. "A plaintiff alleging excessive fees must provide meaningful benchmarks' and cannot rely on bare allegations that other plans paid less." *Boyette v. Montefiore Med. Ctr.*, 2025 WL 48108, at *1 (2d Cir. Jan. 8, 2025) (summary order) (citation modified). Plaintiffs must provide a "like-for-like comparison" based on plausible allegations that "similarly sized plans spend less" than the challenged plan for the same thing. *Matousek v MidAmerican Energy Co.*, 51 F.4th 274, 278–79 (8th Cir. 2022) (affirming dismissal).

For example, Plaintiffs do not allege whether Lockton performed similar services for the two comparator plans as it does for Allied or whether the programs had the same commission

---

[9] To the extent Plaintiffs based this inference on their theory that the commissions paid to Lockton were excessive, the alleged *commissions* are squarely in line with the industry averages referenced in the Complaint. *See supra* p. 3. In addition, even if commissions could be viewed as above average, that is not a basis to conclude anything about Lockton's process. *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("The total fee [charged to a participant], not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost of [a plan offering].").

structures, features, or benefit levels as the VB Insurance.  Such information is critical to the Court's determination, as the relevant inquiry is whether a fee is "excessive under the circumstances." *See Singh v. Deloitte LLP*, 123 F.4th 88, 93-94 (2d Cir. 2024) (affirming dismissal where plaintiff "fail[ed] to do more than allege conclusorily that the Plan's recordkeeping fees exceeded those of a select handful among the many other plans available on the market").  Mere allegations of excessive fees without regard to the similarity of services rendered for those fees do not create a plausible inference of a fiduciary breach. *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 31 (2d Cir. 2009); *see also Matney v. Barrick Gold of N.A.*, 80 F.4th 1136, 1149 (10th Cir. 2023) ("A court cannot reasonably draw an inference of imprudence simply from the allegation that a cost disparity exists; rather, the complaint must state facts to show the funds or services being compared are, indeed, comparable.").

Plaintiffs attempt to frame Lockton's commissions as a *per se* indicator of imprudence by alleging a direct correlation between brokerage commissions and the "value" of the policy.  As discussed *supra* Section II.E, Plaintiffs' theory is speculative and unsupported by any concrete factual allegations.  Moreover, for the same reason fiduciaries are not required to offer the lowest cost option, they are also not required to offer the policy with the lowest commissions or highest loss ratio.  "There are simply too many relevant considerations for a fiduciary for" any "type of bright-line approach to prudence to be tenable." *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015).  Instead, "prudence requires fiduciaries to consider the totality of the circumstances," *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 196 (5th Cir. 2020), including, with respect to insurance, other product features like carrier service, technology, coverage limits, deductibles, and exclusions.  *See* Compl. ¶ 157 (conceding that loss ratio is not "the only thing a prudent employer should consider").  Given that

the premiums paid by VB Program participants were on average *lower* than comparable programs in the Complaint, *see* Allied Br. Section V.A, the speculative assertion that the VB insurance *might have* had a higher-than-average loss ratio does not support an inference of imprudence.

Finally, Plaintiffs have not alleged other indicia of imprudence—such as self-dealing or conflicts of interest—that would support an inference the insurance was objectively imprudent. *See Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 163 (E.D.N.Y. 2022). The Complaint is devoid of any such allegations as to Lockton and contains only boilerplate allegations that Lockton "has engaged in a consistent business practice of providing things of value to employers in exchange for permitting excessive commissions." Compl. ¶ 36. But this speculative assertion does not establish self-dealing as to this Program. The Complaint does not identify what "things of value" Lockton allegedly provided to Allied, when, or how any quid pro quo affected insurance selection.[10] Plaintiffs' breach of fiduciary duty claim is fatally deficient and must be dismissed.

## IV.    COUNT I FAILS AS TO LOCKTON BECAUSE PLAINTIFFS HAVE NOT ADEQUATELY PLED CAUSATION

Section 409 of ERISA provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan *resulting from each such breach*." 29 U.S.C. § 1109(a) (emphasis added). Plaintiffs have not adequately alleged that their purported losses (*i.e.*, the amounts that they supposedly overpaid in premiums) resulted from any fiduciary breach by Lockton.

---

[10] Because Plaintiffs have failed to plausibly allege any underlying breach of fiduciary duty by Mercer or Allied, Lockton is not liable with respect to their alleged breaches as a co-fiduciary. *See* Mercer Br. Sections II, III; *see also* Allied Br. Sections V.A-D.

The Complaint acknowledges that Continental had *already been selected as the carrier* at the time Lockton became the VB Program's broker.  Compl. ¶¶ 111-12.  Accordingly, there are no allegations that Lockton's actions were the cause of any losses to participants.  And as explained *supra* Section II.A., the Complaint does not (and could not) allege that Lockton had authority to replace the insurance carrier in place after it became the broker of record.  The existence of a separate fiduciary that had the sole discretionary authority to make changes to the VB Program's offerings (Allied) breaks any causal chain connecting Lockton's conduct to the purported losses. *See Lauderdale v. NFP Ret., Inc*., 2022 WL 17260510, at *13 (C.D. Cal. Nov. 17, 2022) (defendant who was "not the entity responsible or with authority to remove" the complained-of funds could not have "caused" plaintiffs' injury related to the inclusion of such funds in the plan).  Accordingly, Plaintiffs' breach of fiduciary duty claim fails for the independent reason that the Complaint does not, as a matter of law, adequately plead causation.

## V.  PLAINTIFFS FAIL TO STATE ANY CLAIM FOR PROHIBITED TRANSACTIONS AGAINST LOCKTON (COUNT V)

Count V asserts that Lockton engaged in prohibited transactions under ERISA § 406(b), 29 U.S.C. § 1106(b).  Compl. ¶¶ 234-36.  As a threshold matter, this claim fails because ERISA § 406(b) applies only to fiduciaries, 29 U.S.C. § 1106(b), and Lockton was not a fiduciary for the reasons stated above.

The prohibited transaction claim also fails because the Complaint does not allege Lockton dealt with "plan assets." 29 U.S.C. §§ 1106(b)(1), (3) (prohibiting a fiduciary defendant from receiving a benefit from "the assets of the plan").  Lockton's commissions were paid by Continental.  Compl. ¶¶ 84-85, 146.  Once premiums are remitted to an insurance carrier, those funds become the carrier's assets—not plan assets.  *See, e.g., Depot, Inc*., 915 F.3d at 657 ("Premiums paid to an insurance company in return for coverage under a fully insured insurance

policy are not 'plan assets.'"); *In re Ins. Brokerage Antitrust Litig.*, 2008 WL 141498, at *8 (agreeing that "an insurer's general assets" are not "the assets of an ERISA plan, and payments made from those assets are not subject to any ERISA fiduciary duty"); *Comerica Bank*, 2012 WL 12948705, at *16 ("[t]he moment an insurance carrier received a premium payment, the payment was the property of the carrier" and "commissions were . . . assets belonging to [the brokers] paid from assets of the carriers"); *Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432, 435 (E.D. Pa. 1999) (noting that the "money [an insurance company] used to pay the medical providers was the money [the insurer] received in consideration for insuring the [plan's] participants" and came from the insurer's "own assets, not those of the [plan]").

Moreover, even if commissions *were* paid with plan assets, the prohibited transaction claim against Lockton still fails. "Section 406(b)'s purpose is to prohibit transactions that might involve self-dealing by a fiduciary, not to prevent fiduciaries from being paid for their work." *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013) ("A service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain."); *see also Santomenno*, 883 F.3d at 841 ("[W]hen a service provider's definitively calculable and nondiscretionary compensation is clearly set forth in a contract with the fiduciary-employer, collection of fees out of plan funds in strict adherence to that contractual term is not a breach of the provider's fiduciary duty."). Lockton cannot have engaged in a prohibited transaction merely by accepting payment for services, especially when it was neither a fiduciary nor a party in interest when it negotiated its compensation. *See id.* at 838.

The Second Circuit recently affirmed the dismissal of a similar 406(b) claim, in which plaintiffs asserted that the plan's committee "knowingly selected and failed to remove imprudent funds" with the intent to earn profit from surplus revenue sharing fees. *Collins v. Ne. Grocery,*

*Inc.*, 2025 WL 2383710, at *5 (2d Cir. Aug. 18, 2025). The court held that such allegations were "too conclusory" and that the complaint "provided no factual basis to 'distinguish between ordinary compensation for services in the form of revenue-sharing payments and illicit kickbacks.'" *Id.* (quoting *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 7 (2d Cir. 2017)). Here, the Complaint affirmatively alleges that insurance brokers are typically compensated through commissions, Compl. ¶ 83, and that Lockton's commissions were in line with the 15-55% range collected by other voluntary benefits brokers. *See Id.* ¶ 87 n.20. Plaintiffs here allege no factual basis for the Court to infer that Lockton received anything more than "ordinary compensation" for its brokerage services.

## VI.   PLAINTIFFS FAIL TO STATE ANY "KNOWING PARTICIPATION" CLAIM AGAINST LOCKTON (COUNTS VII AND IX)

Counts VII and IX assert Lockton is liable for "knowingly participating" in alleged breaches of fiduciary duty and prohibited transactions by Allied. Compl. ¶¶ 258, 276-78. A knowing participation claim requires Plaintiffs to establish: (1) an underlying breach by Allied, (2) Lockton's knowing participation in the breach, and (3) damages. *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016); The Complaint fails to satisfy any of these elements for the reasons below and those outlined in Mercer's Motion, which apply with equal force to the "knowing participation" claims against Lockton. *See* Mercer Br. Sections II.B., III.B., and IV.

First, these claims are derivative of the claims against Allied. Because those underlying claims fail—as set forth in Allied's and Mercer's Motions—the knowing participation claims necessarily fail. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 51 (2000); *Forgione*, 2015 WL 718270, at *13 (dismissing co-fiduciary breach claim "for lack of an antecedent co-fiduciary breach"). Among other reasons, Plaintiffs fail to allege a Section 406(a)

prohibited transaction claim against Allied because Lockton was not a "party in interest" when Allied engaged Lockton and agreed to its disclosed commissions. *See* Mercer Br. Section III.A.3; *Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021) ("[S]ome prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest under § 1106.").

Second, disgorgement based on a knowing participation claim requires that the defendant actually received plan assets. *Harris Tr.*, 530 U.S. at 250-51. As discussed *supra* Section I.A, Lockton did not receive "plan assets" as a matter of law. Lockton's commissions were paid by Continental, not by the employees or Allied. Compl. ¶¶ 84-85.

Third, the Complaint fails to allege Lockton's "actual or constructive knowledge" of any misconduct. "[G]eneral knowledge of the transaction's circumstances is not enough"; the defendant "must know the circumstances *that rendered the transaction unlawful*." *Walsh v. Vinoskey*, 19 F.4th 672, 678 (4th Cir. 2021); *accord Haley v. TIAA*, 377 F. Supp. 3d 250, 258 (S.D.N.Y. 2019). That heightened standard arises out of the law of trusts, which imposes liability only on transferees who "knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." *Harris Tr.,* 530 U.S. at 251.

Knowledge that one is receiving commissions—even substantial commissions—is not knowledge that a plan fiduciary is breaching its duties. Lockton disclosed its compensation, and Allied approved it. Compl. ¶¶ 85-86. Service providers like Lockton are under no duty to monitor plan fiduciaries or negotiate against themselves when negotiating compensation for their services. *See supra* Section II.E; *see* also *Chauvet v. Local 1199, Drug, Hosp. & Health Care Emps. Union*, 1996 WL 665610, at *14 (S.D.N.Y. Nov. 18, 1996) (rejecting that "non-fiduciaries are under an affirmative obligation to oversee and to ensure that fiduciaries do not breach their ERISA duties").

Plaintiffs offer only conclusory assertions that Lockton "knew" Allied's fiduciaries were failing to monitor broker commissions.  Compl. ¶¶ 257-58.  But the Complaint does not allege what Lockton knew or when, or how it learned of any fiduciary failure.  These bare conclusions do not come close to establishing the requisite knowledge element.  *See Leber v. Citgroup, Inc.*, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) (dismissing complaint that "contain[ed] nothing beyond a bare assertion that" defendant "knew or should have known" investment committee breached fiduciaries duties).  Counts VII and IX should be dismissed.[11]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

---

[11] Counts VII and IX also fail because they seek monetary rather than equitable relief.  Damages remedies are not available against non-fiduciaries under ERISA.  Although Counts VII and IX claim to seek "equitable" relief, Plaintiffs do not identify specific funds in Lockton's possession to which they are entitled.  *See* Mercer Br. Section IV.

Dated:  February 25, 2026            MILBANK LLP
        New York, New York


                                */s/ Sean M. Murphy*
                                Scott A. Edelman
                                Sean M. Murphy
                                Robert C. Hora
                                Lucille E. Baeurle
                                55 Hudson Yards
                                New York, NY 10001
                                Telephone:  (212) 530-5000
                                Facsimile:  (212) 530-5219
                                Email:  sedelman@milbank.com
                                          smurphy@milbank.com
                                          rhora@milbank.com
                                        lbaeurle@milbank.com

                                *Counsel for Defendant Lockton Companies, LLC*

**<u>Local Civil Rule 7.1(c) Certification</u>**

Undersigned counsel hereby certifies that this Memorandum of Law complies with the word count limitations and rules set forth in Local Civil Rule 7.1(c). Undersigned counsel has relied on the word count of the word-processing program used to prepare this document and states that the applicable portions of the document contain 8,745 words.

Dated: February 25, 2026                                          */s/ Sean M. Murphy*