**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SABRINA FELLOWS, EDMUND LYNN III, DONNA PATTON, WESLEY HALL, and NINA BUSTAMANTE-VICARIO, individually and as representatives of a class of participants and beneficiaries on behalf of the ALLIED UNIVERSAL HEALTH AND WELFARE BENEFIT PLAN, | |
| Plaintiffs, | No. 1:25-cv-10659-GHW-BCM |
| v. | **ORAL ARGUMENT REQUESTED** |
| UNIVERSAL SERVICES OF AMERICA, LP d/b/a ALLIED UNIVERSAL, ALLIED UNIVERSAL EMPLOYEE BENEFITS COMMITTEE, MERCER HEALTH AND BENEFITS ADMINISTRATION, LLC, LOCKTON COMPANIES, LLC, and JOHN DOES 1–20, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT LOCKTON COMPANIES, LLC'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND ...................................................................................................................4

ARGUMENT.........................................................................................................................6

    I.    PLAINTIFFS LACK ARTICLE III STANDING TO BRING THEIR CLAIMS AGAINST LOCKTON..............................................................................................6

        A.    Plaintiffs received the benefit of their bargain.................................................7

        B.    Plaintiffs do not plausibly allege facts supporting excessive premiums......................7

        C.    Plaintiffs have no personal, concrete stake in Lockton's commissions.....................12

    II.    LOCKTON WAS NOT A FIDUCIARY AS A MATTER OF LAW ...........................13

        A.    Plaintiffs do not plausibly allege that Lockton transcended the role of a traditional insurance broker ........................................................................13

        B.    Recommending an insurer does not make Lockton a fiduciary..................................15

        C.    Plaintiffs' allegations that Lockton managed claims, communications, and enrollment are both conclusory and irrelevant...........................................................17

        D.    Being an "agent" of the plan sponsor does not make a service provider a plan fiduciary.......................................................................................................17

        E.    Lockton did not become a fiduciary by setting its own compensation .......................18

    III.    PLAINTIFFS FAIL TO ALLEGE THAT LOCKTON BREACHED THE DUTY OF PRUDENCE (COUNT I).....................................................................................19

    IV.    COUNT I FAILS AS TO LOCKTON BECAUSE PLAINTIFFS HAVE NOT ADEQUATELY PLED CAUSATION ....................................................................22

    V.    PLAINTIFFS FAIL TO STATE ANY CLAIM FOR PROHIBITED TRANSACTIONS AGAINST LOCKTON (COUNT V)..........................................23

    VI.    PLAINTIFFS FAIL TO STATE ANY "KNOWING PARTICIPATION" CLAIM AGAINST LOCKTON (COUNTS VII AND IX) ......................................................25

CONCLUSION....................................................................................................................27

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Access Servs. of N. Ill. v. Capitol Adm'rs, Inc.*,
  2021 WL 780483 (N.D. Ill. Mar. 1, 2021) ....................................................... 16, 17

*Acosta v. AEU Benefits, LLC*,
  2019 WL 8301677 (N.D. Ill. May 13, 2019)........................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................6, 15

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ...............................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................6

*Carfora v. Teachers Ins. Annuity Ass'n of Am.*,
  631 F. Supp. 3d 125 (S.D.N.Y. 2022)....................................................................16

*Chao v. Day*,
  436 F.3d 234 (D.C. Cir. 2006).................................................................................14

*Chauvet v. Local 1199, Drug, Hosp. & Health Care Emps. Union*,
  1996 WL 665610 (S.D.N.Y. Nov. 18, 1996)...........................................................26

*Collins v. Ne. Grocery, Inc.*,
  2025 WL 2383710 (2d Cir. Aug. 18, 2025) ....................................................... 24, 25

*Comerica Bank for DARLC Retiree Benefit Tr. v. Voluntary Empl. Benefits
  Assocs.*,
  2012 WL 12948705 (N.D. Ga. Jan. 11, 2012)........................................................24

*Danza v. Fid. Mgmt. Tr. Co.*,
  533 F. App'x 120 (3d Cir. 2013) .............................................................................24

*DaVita, Inc. v. Amy's Kitchen, Inc.*,
  379 F. Supp. 3d 960 (N.D. Cal. 2019).......................................................................7

*Dempsey v. Verizon Commc'ns, Inc.*,
  2026 WL 72197 (S.D.N.Y. Jan. 8, 2026) ...................................................................7

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ............................................................................. 12, 23

*Doe v. Blue Cross Blue Shield of Md., Inc.*,
  173 F. Supp. 2d 398 (D. Md. 2001) ...........................................................................7

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ..................................................................................................6

*F.H. Krear & Co. v. Nineteen Named Trs.*,
  810 F.2d 1250 (2d Cir. 1987)................................................................................18

*Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*,
  2013 WL 6506304 (S.D.N.Y. Dec. 12, 2013) .......................................................15

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ................................................................................................6

*Fink v. Union Cent. Life Ins. Co.*,
  94 F.3d 489 (8th Cir. 1996) ...................................................................................14

*Forgione v. Gaglio*,
  2015 WL 718270 (S.D.N.Y. Feb. 13, 2015)................................................... 15, 25

*Georgas v. Kreindler & Kreindler*,
  41 F. Supp. 2d 470 (S.D.N.Y. 1999)......................................................................14

*Haley v. TIAA*,
  377 F. Supp. 3d 250 (S.D.N.Y. 2019).....................................................................26

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
  530 U.S. 238 (2000) ...............................................................................................26

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) .................................................................................20

*Horvath v. Keystone*,
  333 F.3d 450 (3d Cir. 2003) ............................................................................. 7, 12

*In re Express Scripts/Anthem ERISA Litig.*,
  285 F. Supp. 3d 655 (S.D.N.Y. 2018).....................................................................17

*In re Ins. Brokerage Antitrust Litig.*,
  2008 WL 141498 (D.N.J. Jan. 14, 2008).................................................................23

*In re JPMorgan Chase & Co. ERISA Litig.*,
  2016 WL 110521 (S.D.N.Y. Jan. 8, 2016) ..............................................................14

*Jacobs v. Verizon Commc'ns, Inc.*,
  2017 WL 8809714 (S.D.N.Y. Sep. 28, 2017)..........................................................20

*Johnston v. Paul Revere Life Ins. Co.*,
  241 F.3d 623 (8th Cir. 2001) .................................................................................14

*Krukas v. AARP, Inc.*,
    2021 WL 5083443 (D.D.C. Nov. 2, 2021) ...................................................................... 12, 13

*Landmark Dev. Grp., LLC v. Town of East Lyme*,
    374 F. App'x 58 (2d Cir. 2010) ...................................................................................6

*Lauderdale v. NFP Ret., Inc.*,
    2022 WL 17260510 (C.D. Cal. Nov. 17, 2022)................................................................23

*Leber v. Citigroup, Inc.*,
    2010 WL 935442 (S.D.N.Y. Mar. 16, 2010).........................................................................26

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) ......................................................................................15

*Lewandowski v. Johnson & Johnson*,
    2025 WL 3296009 (D.N.J. Nov. 26, 2025) ...............................................................7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .........................................................................................7

*Mahoney v. J.J. Weiser & Co.*,
    564 F. Supp. 2d 248 (S.D.N.Y. 2008) ...................................................................16

*Marks v. Indep. Blue Cross*,
    71 F. Supp. 2d 432 (E.D. Pa. 1999) ....................................................................24

*Matney v. Barrick Gold of N.A.*,
    80 F.4th 1136 (10th Cir. 2023) ...........................................................................21

*Matousek v MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) .................................................................................20

*McCarty v. Bank of N.Y. Mellon*,
    669 F. App'x 6 (2d Cir. 2016) .......................................................................... 11, 12

*Navarro v. Wells Fargo & Co.*,
    2025 WL 897717 (D. Minn. Mar. 24, 2025) ...........................................................8

*Navarro v. Wells Fargo & Co.*,
    2026 WL 591454 (D. Minn. Mar. 3, 2026) ............................................................10

*Patrico v. Voya Fin., Inc.*,
    2017 WL 2684065 (S.D.N.Y. June 20, 2017) .......................................................19

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ..............................................................................................13

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* (*PBGC*),
712 F.3d 705 (2d Cir. 2013) ...................................................................... 19, 20

*Pizarro v. Home Depot, Inc.*,
111 F.4th 1165 (11th Cir. 2024) ............................................................................23

*Ramos v. Banner Health*,
1 F.4th 769 (10th Cir. 2021) ...............................................................................25

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011) .............................................................................. 16, 18

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
718 F. App'x 3 (2d Cir. 2017) ..............................................................................14

*Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*,
2013 WL 3864395 (D.N.J. July 24, 2013) ..............................................................18

*Santomenno v. Transamerica Life Ins. Co.*,
883 F.3d 833 (9th Cir. 2018) ............................................................................. 18, 24

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
960 F.3d 190 (5th Cir. 2020) ..............................................................................22

*Singh v. Deloitte LLP*,
123 F.4th 88 (2d Cir. 2024) .............................................................................21, 25

*Sira v. Morton*,
380 F.3d 57 (2d Cir. 2004) ...................................................................................5

*Smith v. Med. Benefit Adm'rs Grp. Inc.*,
639 F.3d 277 (7th Cir. 2011) ................................................................................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ......................................................................................... 7, 12

*Stern v. JPMorgan Chase & Co.*,
2026 WL 654714 (S.D.N.Y. Mar. 9, 2026)...........................................................10

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*,
961 F.3d 91 (2d Cir. 2020) ................................................................................17

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020).................................................................................... 6, 7, 11

*Tibble v. Edison Int'l*,
729 F.3d 1110 (9th Cir. 2013) .............................................................................22

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
　843 F.3d 561 (2d Cir. 2016) ........................................................................................25

*United States v. Glick*,
　142 F.3d 520 (2d Cir. 1998) ........................................................................................19

*Walker v. Merrill Lynch & Co.*,
　181 F. Supp. 3d 223 (S.D.N.Y. 2016) ..........................................................................16

*Walsh v. Vinoskey*,
　19 F.4th 672 (4th Cir. 2021) ........................................................................................26

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
　62 F.4th 517 (9th Cir. 2023) ..........................................................................................7

*XY Plan. Network, LLC v. SEC*,
　963 F.3d 244 (2d Cir. 2020) ........................................................................................11

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
　325 F. App'x 31 (2d Cir. 2009) ....................................................................................21

*Zang v. Paychex, Inc.*,
　728 F. Supp. 2d 261 (W.D.N.Y. 2010) ..........................................................................15

**Statutes**

29 U.S.C. § 1002(21)(A) .......................................................................................... 13, 15

29 U.S.C. § 1106(b) ............................................................................................. 4, 23, 24

29 U.S.C. § 1109(a) ....................................................................................................22

**Other Authorities**

*2024 Annual Report*, ARTHUR J. GALLAGHER & CO. (2024) ..........................................21

Fed. R. Civ. P. 8 ..........................................................................................................15

Fed. R. Civ. Proc. 12(b)(1) ............................................................................................3

H. Miller & A. Hollis, *Blindsided: Are Supplemental Health Plans the next class
　action risk for plan sponsors?*, EMPLOYEES FIRST  (June 2025) ............................... 3, 6, 8

Jackson Williams, *Addressing Low-Value Insurance Products with Improved
　Consumer Information: The Case of Ancillary Health Products*, Journal of
　Insurance Regulation (2023)......................................................................................11

Mike Prendes, *Focus on Voluntary Benefits*, THE ACTUARY (Sept. 2019) ...............................6, 8

## PRELIMINARY STATEMENT

The Amended Complaint fails to state a plausible claim for relief against Lockton Companies, LLC ("Lockton").  Plaintiffs' second opportunity to plead has not cured the fundamental defects Lockton and the other Defendants identified in their original motions to dismiss.  Rather than defend their original pleading, Plaintiffs withdrew it and filed the Amended Complaint.  Yet, the new pleading suffers from the same deficiencies that compel dismissal— namely, a failure to adequately (1) allege Article III standing, (2) plead that Lockton had fiduciary status, or (3) plead that Lockton engaged or knowingly participated in a fiduciary breach or prohibited transaction under ERISA.  Instead, the Amended Complaint (the "Complaint" or "Compl.") merely repackages Plaintiffs' legally insufficient theories with additional comparator data that, on even a cursory review, only confirms the fundamental factual and logical gaps in Plaintiffs' claims.  Because Plaintiffs have already been afforded an opportunity to cure these defects and failed, the claims against Lockton should be dismissed with prejudice.

Plaintiffs' Amended Complaint continues its attack on voluntary benefits ("VB") insurance offered by companies to their employees.  These benefits—which may include accident, critical illness, and hospital indemnity—are offered in addition to traditional health insurance and are entirely voluntary for both employers and participants.  Compl. ¶ 46.  Plaintiffs are current or former Universal Services of America, LP ("Allied") employees who purchased VB insurance through Allied's VB program (the "VB Program").  They claim Defendants violated ERISA because the VB Program's brokers allegedly received "inflated" commissions on the insurance, which somehow caused the insurance premiums paid by participants to be excessive.  Those

- 1 -

allegations were critically deficient when first pled, and they remain so, particularly with respect to the claims against Lockton—the VB Program's third-party broker of record since 2021.[1]

*First*, Plaintiffs fail to allege any cognizable injury to support Article III standing. Plaintiffs do not dispute they received the full benefits they were entitled to under the VB products they purchased.  Although they conclusorily assert that premiums were "excessive," they do not allege any facts indicating that they were higher than industry averages or otherwise compare them to any other meaningful benchmark.  In fact, public filings show that the VB Program's participants paid *lower* average premiums than participants in each comparator plan cited in the original pleading, and premiums that are well within or below the market range across the comparators added in the new Complaint.  *Id.* ¶¶ 166-67, 188-203; Allied Br. §§ V.B.2, V.C.

Plaintiffs appear to recognize as much: rather than identifying a meaningful benchmark to support their claim that premiums were excessive, their Complaint asserts that the Court should not focus on comparing premiums.  Compl. ¶ 206.  Instead, Plaintiffs ask the Court to focus on commissions.  *Id.* ¶ 208.  However, premiums are the critical figure for assessing whether participants were harmed, not commissions.  Plaintiffs can only have suffered an injury in fact if they paid unreasonable premiums.  And as Plaintiffs acknowledge, Lockton's commissions were paid by the insurance carrier, not by Plaintiffs or the VB Program.  *Id.* ¶ 93.  Plaintiffs do not plausibly allege that Lockton's commissions were outside of industry norms, or that there was any correlation between the commissions and the level of premiums.  If anything, the Complaint's own

---

[1] Lockton incorporates by reference the arguments set forth in the motions to dismiss filed by Defendants Mercer Health and Benefits Administration, LLC ("Mercer") ("Mercer Br.") and Allied Universal Employee Benefits Committee and Universal Services of America, LP d/b/a Allied Universal ("Allied Br."), to the extent those arguments are not inconsistent with the arguments set forth herein and also apply to the allegations against Lockton.

data shows **no** correlation between commissions and premiums. The allegations against Lockton should be dismissed under Rule 12(b)(1) for lack of standing.

*Second*, Plaintiffs' claims against Lockton are premised on Lockton acting as an ERISA fiduciary to the VB Program, but Lockton was not a fiduciary as a matter of law. The services agreement between Lockton and Allied (the "Services Agreement" or the "Agreement") referenced in the Complaint *expressly forbids* Lockton from exercising discretionary authority over the VB Program's choice of insurer and explicitly disclaims any fiduciary or special relationship with Allied. The Complaint fails to allege that Lockton served in any capacity other than as a traditional non-discretionary broker—a role repeatedly held not to impose a fiduciary duty.[2]

*Third*, even if Lockton were a fiduciary, the Complaint does not adequately allege imprudence. The prudence inquiry under ERISA focuses on the *process* used in arriving at the challenged decision. Plaintiffs ignore Lockton's process entirely. Instead, they ask this Court to infer that Defendants had no process based on the broker commissions and the "loss ratio" of the VB insurance. Compl. ¶ 246. But Plaintiffs fail to show that Lockton's commissions or the premiums Allied employees paid were high compared to a meaningful benchmark. Rather, they impermissibly speculate about the VB Program's loss ratio and mischaracterize a "loss ratio" as a measure of an insurance product's value to participants when its merely indicates the insurer's profitability. These unsupported logical leaps are insufficient to survive a motion to dismiss.

---

[2] The Complaint's own sources expressly acknowledge this. H. Miller & A. Hollis, *Blindsided: Are Supplemental Health Plans the next class action risk for plan sponsors?*, EMPLOYEES FIRST 2 (June 2025), https://www.myemployeesfirst.com/perspectives (then choose Blindsided, Are Supplemental Health Plans the next class action risk for plan sponsors) [https://perma.cc/B7UN-9HZT] ("What employers often fail to recognize is that **the brokers themselves are not fiduciaries**. Therefore, [the brokers] **do not owe a fiduciary duty to the employer, the plan or the participants.** . . ." (emphasis added) (cited in Compl. ¶ 81 n.17)).

*Fourth*, Plaintiffs' prohibited transaction claim (Count V) fails on multiple independent grounds. ERISA § 406(b) reaches only *fiduciaries* who self-deal with plan assets, and Lockton was not a fiduciary as a matter of law. Even if it were, its commissions were paid from the insurer's own funds, not "plan assets." In any event, merely accepting previously bargained-for, disclosed compensation for services is not self-dealing under § 406(b).

*Finally*, Plaintiffs' "knowing participation" claims (Counts VII and IX) fail at the threshold because the predicate fiduciary-breach claims against Allied have not been adequately pled. *See* Allied Br. § V. They also independently fail because the Complaint pleads no specific facts showing Lockton's knowledge of any breach, offering only conclusory assertions that never identify what Lockton knew, when it knew it, or how.

The claims against Lockton should be dismissed with prejudice.

## BACKGROUND

Accident, critical illness, and hospital indemnity insurance provide a financial safety net for out-of-pocket costs not covered by traditional insurance. Compl. ¶ 48. These benefits pay lump-sum or fixed amounts when participants file a valid claim. *Id*. ¶ 47. Under Allied's VB Program, purchase of these products is entirely voluntary, and participants pay the full cost through payroll deductions. *Id*. ¶ 46. Allied is the Plan sponsor, administrator, and named fiduciary. *Id*. ¶¶ 20-23, 25, 144, 255.

A subsidiary of American Family Life Assurance Company ("Aflac") has been the Program's insurance carrier since 2019. *Id*. ¶¶ 125-26. Allied retained Mercer as the broker of record from 2019 until 2021, when Lockton replaced it. *Id*. ¶ 125. Under the Services Agreement executed July 21, 2021, which Plaintiffs expressly incorporate by reference in the Complaint, Lockton's potential services included strategic planning, renewal and marketing support, data analytics, vendor management, and communications support. Ex. A (Services Agreement) at

Addendum A.[3]  Although Lockton could assist Allied in connection with its design of the VB Program, Allied agreed that "in no event shall Lockton owe any enhanced or special duties" to Allied, including any fiduciary duties.  *Id.* § 6.11.  The Agreement was also explicit that Lockton could not "take any action to replace Client's Insurers unless Client instructs Lockton to do so." *Id.* § 6.8; *see also* Ex. B (2024 Consulting Services Agreement Addendum) at 1.[4]  Allied could terminate Lockton's services at any time with sixty days' notice, or immediately upon designating a different broker of record.  Ex. A (Services Agreement) §§ 4.1, 4.2.

The Services Agreement sets forth Lockton's compensation structure, including that Lockton was compensated through commissions paid by the insurance carrier, not by employees or Allied.  Compl. ¶ 93; Ex. A (Services Agreement) at Addendum B.  As is common for VB programs and insurance, Lockton was compensated using "heaped" commissions wherein a higher percentage of the commission (55%–70%+) is paid upfront in the first year, followed by lower renewal commissions in subsequent years.  Ex. A (Services Agreement) at Addendum B.  A later Memorandum of Understanding also memorialized that ███ of VB commissions would be used for third-party vendor services or to offset program-related expenses, "as directed by the Committee."  *See* Ex. B (2024 Consulting Services Agreement Addendum) at Memorandum of Understanding.  Plaintiffs allege Lockton's commissions averaged about 39% of premiums, which—as Plaintiffs acknowledge—was within the 15-55% range collected by other VB brokers. *See* Compl. ¶¶ 96 n.24, 166-67, 188 tbl. 1.  Other sources cited by Plaintiffs explain that commissions of "50[%] to 70[%] of the first year's earned premium" are the industry norm, with

---

[3] As used herein, "Ex." refers to exhibits to the Declaration of Robert C. Hora in Support of Lockton's Motion to Dismiss the Amended Complaint.

[4] On a motion to dismiss, the court may consider materials incorporated by reference or integral to the complaint, such as the Services Agreement and its addendum.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); Compl. ¶¶ 159, 161.

renewal commissions dropping to 5% to 15%—a structure similar to Lockton's disclosed "heaped" commission arrangement.[5]

**ARGUMENT**

Motions to dismiss are "important mechanism[s] for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).   Courts require factual specificity before allowing burdensome suits to proceed.    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).     Although "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Dismissal is appropriate if the complaint fails to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Landmark Dev. Grp., LLC v. Town of East Lyme*, 374 F. App'x 58, 60 (2d Cir. 2010) (citation modified).

**I.    PLAINTIFFS LACK ARTICLE III STANDING TO BRING THEIR CLAIMS AGAINST LOCKTON**

"There is no ERISA exception to Article III."    *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020).  Courts apply the "ordinary Article III standing analysis," *id.* at 547, requiring Plaintiffs to "plausibly and clearly," *id*. at 544, allege "an injury in fact" that is (1) concrete, particularized, and actual or imminent, (2) fairly traceable to the alleged fiduciary violations, and (3) likely to be

---

[5] *See* Compl. ¶ 99 n.25 (citing Mike Prendes, *Focus on Voluntary Benefits*, THE ACTUARY (Sept. 2019)); *see also id.* ¶ 81 n.17 (citing Miller *supra* note 2, at 2 (noting that "commissions can be as high as 60% to 80% of the total premium in the first year")).

redressed by a favorable decision.    *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61  (1992).

Plaintiffs identify no personal, concrete injury that is fairly traceable to Lockton.

### A.       Plaintiffs received the benefit of their bargain

Voluntary benefits, like other group health insurance, are considered defined-benefit plans.

*See Smith v. Med. Benefit Adm'rs Grp. Inc.*, 639 F.3d 277, 283 (7th Cir. 2011).  Courts consistently

hold that defined-benefit plan participants who received all their entitled benefits lack Article III

standing.  *See Dempsey v. Verizon Commc'ns, Inc.*, 2026 WL 72197, at *9 (S.D.N.Y. Jan. 8, 2026);

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 528-29 (9th Cir. 2023); *see also*

*DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 971 (N.D. Cal. 2019) (no standing where

ERISA plaintiff received all necessary health treatment at the rate defined by plan); *Doe v. Blue*

*Cross Blue Shield of Md., Inc.*, 173 F. Supp. 2d 398, 404 (D. Md. 2001) ("ERISA case law

consistently has tied the issue of standing to the denial of specific benefits.").  Plaintiffs lack the

"concrete stake" necessary for standing if they would receive the same benefits regardless of

outcome.  *See Thole*, 590 U.S. at 547; *see also* Allied Br. § V.B.

Here, Plaintiffs do not allege that they experienced a qualifying event but were denied or

underpaid benefits under the VB policies.  The Court should dismiss Plaintiffs' Complaint for this

reason alone.

### B.       Plaintiffs do not plausibly allege facts supporting excessive premiums

Plaintiffs' theory of loss—premised on alleged "overpayment" of premiums—fails for the

additional reason that it is far too speculative to constitute a "concrete" injury in fact.  *See Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 339 (2016) (injury in fact must be "actual or imminent, not conjectural

or hypothetical" (quoting *Lujan*, 504 U.S. at 560)).  Courts regularly dismiss ERISA claims where

plaintiffs rely on speculative or generalized allegations of harm.  *See Horvath v. Keystone*, 333

F.3d 450, 457 (3d Cir. 2003); *Lewandowski v. Johnson & Johnson*, 2025 WL 3296009, at *5

(D.N.J. Nov. 26, 2025) ("[I]t is too speculative that the allegedly excessive fees the Plan paid to its PBM 'had any effect at all' on Plaintiffs' contribution rates and out-of-pocket costs for prescriptions."); *Navarro v. Wells Fargo & Co.*, 2025 WL 897717, at *9 (D. Minn. Mar. 24, 2025) (no injury in fact where there was no "direct connection between [plaintiff's] increased costs and the [complained-of] increases in administrative fees").

*First*, Plaintiffs' theory of loss begins with the assumption that Lockton's commissions were unreasonably high, but Plaintiffs have not plausibly alleged this to be true. According to Plaintiffs, Lockton's commissions averaged about 39% of premiums, which—as Plaintiffs acknowledge—was within the 15-55% range collected by other VB brokers. *See* Compl. ¶¶ 96 n.24, 166-67, 188 tbl. 1. Plaintiffs even cite a source which explicitly states that commissions of "50[%] to 70[%] of the first year's earned premium" are the industry norm.[6] The Complaint includes new allegations about Aflac's heaped commission structure, but Plaintiffs do not allege that this structure is atypical or unreasonable. If anything, Plaintiffs' acknowledgment that Lockton's commissions are highest in early years under a heaped commission schedule defeats their comparisons. Commissions earned in those years cannot be meaningfully compared to the commissions earned by brokers for other plans that may have been more mature with less turnover or may not have had a heaped schedule at all. It is also entirely speculative for Plaintiffs to conclude that Lockton's heaped commissions were "too high" based only on the first few years of its engagement and without knowing the amount of participant turnover or renewals that may happen over the length of that engagement.

---

[6] *See id.* ¶ 99 n.25 (citing Prendes, *supra* note 5); *see also id.* ¶ 81 n.17 (citing Miller, s*upra* note 2, at 2).

*Second*, commission levels say nothing about whether *premiums* were too high.  For Plaintiffs to adequately allege that they "overpaid premiums," they must, at a minimum, allege premiums were higher than comparable insurance.  But they have not—the "best available public data" they rely on, *id*. ¶ 176, shows Allied employees paid lower average premiums than participants in each comparator plan cited in the original complaint, and premiums well within or below the market range across the comparators added in the Amended Complaint, *see id*. ¶¶ 188-203.  *See* Allied Br. §§ V.B.2, V.C.  Lockton identified this issue in its original motion, but instead of pleading that premiums were actually excessive, Plaintiffs now deflect by claiming premium comparisons are "apples-to-oranges."  Compl. ¶ 206.  According to Plaintiffs, the fact that Allied employees paid *less* in premiums than employees in comparator plans is irrelevant, and the Court should focus on commissions.

However, Plaintiffs' chosen metric—commissions expressed as a percentage of premiums—is fundamentally flawed as a measure of participant harm.  Plaintiffs plead no facts about how insurers calculate commissions, despite acknowledging the many variables that insurers consider in setting premiums.[7]  *See id*. ¶ 205.  And, as shown below, Plaintiffs' "dollar-for-dollar" theory of injury—that every dollar of broker commissions translates directly into a dollar of excess premiums—is in fact directly refuted by Plaintiffs' own data:

---

[7] Consider two participants who each pay a $0.50 commission for identical insurance coverage:  if one participant's premium is $1.00 (a 50% commission rate) and the other's premium is $2.00 (a 25% commission rate), the participant paying the "higher" 50% commission rate is clearly better off because she paid a lower overall premium.

| Year[8] | Insured Persons | Premiums Paid | Mercer Comm. | Lockton Comm. | Total Broker Comm. | Comm. as a % of Premiums | Avg. Premium Per Insured Person |
|---------|-----------------|---------------|--------------|---------------|--------------------|--------------------------|---------------------------------|
| 2019 | 65,691 | $8,023,853 | $2,940,564 | $0 | $2,940,564 | 36.65% | $122.15 |
| 2020 | 81,137 | $8,078,145 | $3,242,806 | $0 | $3,242,806 | 40.14% | $99.56 |
| 2021 | 82,184 | $8,618,371 | $2,562,590 | $1,325,073 | $3,887,663 | 45.11% | $104.87 |
| 2022 | 47,848 | $10,501,532 | $204,443 | $4,253,334 | $4,457,777 | 42.45% | $219.48 |
| 2023 | 47,599 | $11,912,506 | $0 | $4,507,524 | $4,507,524 | 37.84% | $250.27 |
| 2024 | 61,317 | $12,608,457 | $2,706 | $4,613,604 | $4,616,310 | 36.61% | $205.63 |

*Id.* ¶ 188 tbl. 1. From 2021 to 2024, commissions as a percentage of premiums declined in every consecutive year, falling from 45.11% to 42.45% to 37.84% to 36.61%, even as total premiums rose from $8.6 million to $12.6 million. *Id.* Had commissions truly driven premiums on a dollar-for-dollar basis, that ratio would have remained constant or moved upward alongside premiums; the data show the opposite. The disconnect is even more pronounced on a per-participant basis: between 2023 and 2024, the average premium per insured person dropped from $250.27 to $205.63—a nearly 18% decline—even as commissions increased by approximately $106,000. *Id.* Plaintiffs cannot plausibly trace any purported "overpayment" to the commissions they challenge. *See Stern v. JPMorgan Chase & Co.*, 2026 WL 654714, at *7 (S.D.N.Y. Mar. 9, 2026) ("If dramatic swings in total [p]lan spending did not produce corresponding reductions or increases in participant contributions, the Court cannot plausibly infer that lower . . . costs would necessarily have resulted in lower contributions."); *Navarro v. Wells Fargo & Co.*, 2026 WL 591454, at *9-10 (D. Minn. Mar. 3, 2026) (allegations resting on "too many variables" cannot establish injury in fact (citation omitted)).

*Third*, Plaintiffs allege VB insurance had lower "loss ratios" (the ratio of claims paid to premiums earned) than other insurance types, Compl. ¶¶ 107-21, 174-75, and speculate a lower

---

[8] The first seven columns of this table reflect Table 1 of the Complaint (*see* Compl. ¶ 188). The last column lists the results of dividing Column 3 ("Premiums Paid") by Column 2 ("Insured Persons") for each respective year.

loss ratio "correlate[s] to poor value," *id*. ¶ 184.  However, loss ratio measures insurer profitability, *id*. ¶ 107, not the value to the insureds.  A low loss ratio may simply reflect that fewer claims were made, not that the coverage lacked value when it was issued.[9]  Plaintiffs do not allege how participating in a plan with a particular loss ratio inherently injures any plan participant.  *See Thole*, 590 U.S. at 543 (defined benefit plan participants "possess no equitable or property interest in the plan").  They allege no facts about Allied's VB Program—such as claims experience, denial rates, or service deficiencies—indicating Aflac's profitability translated into lower participant value.

*Fourth,* even if loss ratios measured value, Plaintiffs do not allege the *actual loss ratio* on Allied's program or that it was *lower than comparable VB programs.*  Instead, they rely on unspecified "industry averages and sources" to speculate the VB Program's loss ratio was "significantly less than 50%."  Compl. ¶¶ 175-76.  This speculation cannot support standing.  *See XY Plan. Network, LLC v. SEC*, 963 F.3d 244, 253 (2d Cir. 2020) (no standing where the theory of injury rested on "conclusory statements and speculative economic data" (citation modified)); *see also McCarty v. Bank of N.Y. Mellon*, 669 F. App'x 6, 7 (2d Cir. 2016) (affirming dismissal where claim "relie[d] on too speculative an injury to serve as a basis for Article III standing").  Plaintiffs' estimate is critically flawed because it assumes loss ratios cannot exceed 100%, despite that Plaintiffs elsewhere acknowledge that loss ratios can be "over 100%."  Compl. ¶ 109.  A heaped commission structure, like the one used by Aflac here, might make an insurer willing to assume loss (and have a loss ratio higher than 100%) in the first year in exchange for higher profitability in subsequent years.  Regardless, Plaintiffs' speculation about the VB Program's loss

---

[9] An insurer who insures 100 people against a housefire, none of whom experience a fire, has a low loss ratio.  But that does not mean that when the insurance was issued, it was not valuable.

ratio is meaningless without comparisons to industry standards.  The Complaint itself cites articles showing loss ratios below 50% are typical for VB insurance.[10]

*Fifth*, Plaintiffs assume a lower loss ratio means higher premiums, *id*. ¶¶ 180-81, but allege no facts establishing correlation.  This assumption ignores the many components affecting both premium pricing and loss ratios.  *See id*. ¶ 205 (acknowledging that "premiums may rely on complex actuarial calculations").

Plaintiffs' speculative theory is precisely why courts find "proving diminished value claims . . . problematic."  *Horvath*, 333 F.3d at 457.  Such claims require "a determination of the value of the insurance provided," an inquiry that "inappropriately transforms juries into quasi-regulatory commissions."  *Id*.   The Third Circuit found such reasoning "far too speculative" to support individual loss.   *Id*. (noting no court has found standing for diminished value claims under ERISA).   This Court should, too.

**C.     Plaintiffs have no personal, concrete stake in Lockton's commissions**

Plaintiffs also cannot identify a personal, concrete injury regarding Lockton's commissions.   *Spokeo*, 578 U.S. at 339–40.   Plaintiffs have no entitlement to Lockton's commissions. Those commissions were paid by Aflac from its own funds, not "plan assets." *See Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 657–58 (9th Cir. 2019) (even premiums paid to insurer are not "plan assets" and participants have no beneficial ownership interest in them); *see also infra* Section V.  The court in *Krukas v. AARP, Inc.*  rejected a similar theory:

---

[10] *See id*. ¶ 115 n.35 (citing Jackson Williams, *Addressing Low-Value Insurance Products with Improved Consumer Information: The Case of Ancillary Health Products*, Journal of Insurance Regulation (2023); *see id*. at 30 (listing 2019 loss ratios for hospitalization insurance and specified disease insurance of 45.45% and 40.76%, respectively).

> [A] consumer has no cognizable interest in what a general contractor pays a subcontractor, or what the manufacturer of a product pays an outside marketing firm.   Similarly, plaintiffs here have no interest in the payment [the carrier] makes to defendants.   Regardless of the precise flow of money, plaintiffs knowingly paid a certain amount for insurance, and a portion of that amount went to defendants pursuant to the agreement between defendants and [the carrier].    Plaintiffs' assertions that they have "pa[id] for a charge that they did not owe," or have been "fraudentl[ly] overbill[ed]," are simply unsupportable on this record.

2021 WL 5083443, at *8 (D.D.C. Nov. 2, 2021) (citation modified).   Because Plaintiffs have failed to allege—and cannot allege—a concrete and particularized injury sufficient for Article III standing, the claims against Lockton should be dismissed.

## II.      LOCKTON WAS NOT A FIDUCIARY AS A MATTER OF LAW

The claims for breach of fiduciary duty and prohibited transactions under ERISA §§ 404 and 406 must be dismissed because Lockton was not an ERISA fiduciary.  *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary . . . (that is, was performing a fiduciary function) when taking the action subject to complaint.").

Under ERISA § 3(21)(A), a person is a fiduciary only:

> [T]o the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).   Plaintiffs' allegations as to Lockton are insufficient to plead fiduciary status as a matter of law.

### A.      Plaintiffs do not plausibly allege that Lockton transcended the role of a traditional insurance broker

Plaintiffs concede that insurance brokers facilitating sales to a plan are not ERISA fiduciaries.  *See* Compl. ¶ 154.   Typical broker activities—like recommending insurance and

assisting with enrollment—do not constitute discretionary control.  *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 493 (8th Cir. 1996); *see also* Mercer Br. § II.A.[11]

The Services Agreement confirms Lockton's role was that of a typical broker, not a fiduciary exercising discretionary authority.  The Agreement *prohibits* Lockton from making Program changes, including to the insurer, without Allied's instruction and expressly disclaims fiduciary status.  *See* Ex. A (Services Agreement) § 6.8 ("Lockton will not take any action to replace Client's Insurers unless Client Instructs Lockton to do so."); *id.* § 6.11 (disclaiming "fiduciary relationship" or "enhanced or special duties to [Allied]"); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 5 (2d Cir. 2017) (trustee not a fiduciary where employer retained "final contractual authority over any changes to the funds available to the Trust").  Despite amending their complaint to reference the Services Agreement, Plaintiffs ignore these provisions.

Even if the Services Agreement were not dispositive—which it is—Plaintiffs do not plausibly allege Lockton "transcend[ed] the normal role" of a broker and "exercise[d] discretionary authority."  *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 632 (8th Cir. 2001) (citation omitted).  Conclusory allegations labeling a service provider a "functional fiduciary" or asserting that it "exercised discretionary authority" are insufficient.  *See In re JPMorgan Chase & Co. ERISA Litig.*, 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016) (bare assertions of discretionary authority and control over plan administration are inadequate), *aff'd sub nom. Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016); *Forgione v. Gaglio*, 2015 WL 718270, at *9 (S.D.N.Y. Feb.

---

[11] The cases cited in the Complaint either:  (a) stand for the unremarkable proposition that brokers *can* be fiduciaries *if* they hold discretion over plan management; or (b) are inapposite and have distinguishable facts.  *See* Compl. ¶¶ 155-57.  For example, in *Chao v. Day*, 436 F.3d 234, 236–37 (D.C. Cir. 2006), the broker misappropriated funds and delivered fake policies, which is vastly different from Lockton's disclosed, arm's-length brokerage services.  In *Georgas v. Kreindler & Kreindler*, 41 F. Supp. 2d 470, 475 (S.D.N.Y. 1999), the court *dismissed* the complaint despite conclusory statements that the employer "played an active role" in claims decisions.

- 14 -

13, 2015) ("Plaintiffs cannot transform [defendant] into a fiduciary by means of conclusory assertions that are belied by the remainder of the Complaint.").

Plaintiffs either impermissibly parrot the statutory language of 29 U.S.C. §§ 1002(21)(A)(i) and (iii)—*see* Compl. ¶ 35—or allege, in conclusory fashion, that Lockton "exercise[s] discretion in administering voluntary benefit plans" because it "selected and recommended" the insurance carrier by "screen[ing] the bids [it] receive[d] from carriers" before presenting them to Allied, and "administer[ed] and manag[ed] the [VB] Insurance, including by managing claims, controlling communications and conducting enrollment." *Id*. ¶¶ 102-06, 153-163. None suffices. *See Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, 2013 WL 6506304, at *3 (S.D.N.Y. Dec. 12, 2013) (merely "parroting ERISA's definition of fiduciary" fails to state a claim under *Iqbal*).

### B.    Recommending an insurer does not make Lockton a fiduciary

Plaintiffs conclusorily allege Lockton acted as fiduciary because it recommended Aflac.[12] *Id*. ¶ 158.   ERISA purposefully does not impose fiduciary status on every entity that interacts with a benefit plan, and "merely 'playing a role' in the selection of [plan] options or furnishing professional advice is not enough." *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 270 (W.D.N.Y. 2010) (citation modified); *see also Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 912 (7th Cir. 2013) (narrowing universe of potential plan options does not transform a service provider into an ERISA fiduciary where sponsor has final say on which options will be included).   Making recommendations does not transform Lockton into a fiduciary.  *See Mahoney v. J.J. Weiser & Co.*,

---

[12] The Complaint lumps Defendants together in alleging that both Lockton and Mercer "selected" Aflac.  *See* Compl. ¶¶ 125-28, 158.  Such group pleading is impermissibly vague and fails to provide fair notice of what Lockton is alleged to have done. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" is insufficient under Federal Rule 8).  This lack of specificity independently warrants dismissal under Federal Rule 8's requirement of "fair notice." *See* Fed. R. Civ. P. 8.

- 15 -

564 F. Supp. 2d 248, 256-57 (S.D.N.Y. 2008) (recommendations do not "convert [the broker] into a fiduciary" absent an allegation that the broker "had the authority to force the [Plan] to accept" its recommendations).[13]

Plaintiffs seek to blur the distinction between recommendation and discretionary control by claiming Lockton presented a curated list of carriers (Compl. ¶¶ 103-04), but, as noted, courts decline to find that service providers are plan fiduciaries merely because they present a limited number of options to the plan. *See, e.g.*, *Carfora v. Teachers Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125, 153 (S.D.N.Y. 2022) (a mere service provider to an ERISA plan does not have "fiduciary status" even if it chooses "to limit the investment options available to the plan"); *Walker v. Merrill Lynch & Co.*, 181 F. Supp. 3d 223, 234 (S.D.N.Y. 2016) ("[a]s a matter of law, simply offering a discrete menu of [options to a plan] does not" make one a fiduciary under ERISA) (citation modified); *Renfro v. Unisys Corp.*, 671 F.3d 314, 323 (3d Cir. 2011) (service provider held "no contractual authority to control the mix and range of investment options, [or] to veto [the sponsor's] selections" and thus was "not subject [] to liability [as a fiduciary] for these activities").

Regardless, Lockton could not have "selected" the carrier because Aflac was already the insurer when Lockton was hired in 2021, Compl. ¶¶ 125-26, and Lockton was contractually prohibited from changing insurers without Allied's consent. As the court explained in *Access Services of Northern Illinois v. Capitol Administrators, Inc.*, which the Complaint cites, a broker "offering insurance plans for sale or recommending options" is different from one who has "final discretion in the choice of which insurance provider and plan to choose." 2021 WL 780483, at *4

---

[13] For the same reason, the fact that the Services Agreement stated that Lockton's services could include "VB vendor oversight" or "optimization" services says nothing about whether Lockton exercised discretion or control over the Program. At most, this suggests that Lockton could make recommendations to Allied about Program design and vendor retention, not that Lockton had the discretion to actually implement any changes itself.

(N.D. Ill. Mar. 1, 2021).  Only the latter is fiduciary conduct, *id.*, and the Services Agreement gave that discretion to Allied.  *See* Ex. A (Services Agreement) § 6.8.

      **C.**      **Plaintiffs' allegations that Lockton managed claims, communications, and enrollment are both conclusory and irrelevant**

Plaintiffs further allege Lockton was an ERISA fiduciary because it "administer[ed] and manag[ed] the [VB] Insurance, including by managing claims, controlling communications and conducting enrollment."  Compl. ¶ 160.  Even if supported by specific factual allegations (and it is not), this falls short.  The relevant inquiry is whether Lockton was a fiduciary *with respect to the challenged conduct*—here, setting its commissions.  *See In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 681 (S.D.N.Y. 2018) ("Because the guiding question is whether ESI was acting as a fiduciary 'when taking the action subject to complaint,' whether or not ESI exercised discretion with respect to other aspects of Plan administration is immaterial." (quoting *Pegram*, 530 U.S. at 226)), *aff'd sub nom. Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020).  The Complaint does not allege Lockton breached any duty in connection with claims handling, communications, or enrollment.  Whether Lockton "administered" the VB insurance is immaterial.

      **D.**      **Being an "agent" of the plan sponsor does not make a service provider a plan fiduciary**

Plaintiffs contend Lockton is a fiduciary because it allegedly acted as Allied's agent in "procuring and renewing insurance policies and managing claims."  Compl. ¶ 163.  But Plaintiffs do not and cannot allege Lockton had authority to bind Allied to any insurer or make VB Program decisions.  Agents are *not* fiduciaries when they lack discretion over Plan administration or assets.  *See Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 104 (2d Cir. 2020).  Indeed, alleging Lockton was Allied's "agent" directly undercuts Plaintiffs' fiduciary theory.  *See Acosta v. AEU Benefits, LLC*, 2019 WL 8301677, at *4 (N.D. Ill. May 13, 2019) ("Given that [the entity]

was apparently acting under the direction of [the plan administrator], it was not exercising discretionary authority.").

### E.    Lockton did not become a fiduciary by setting its own compensation

Finally, Plaintiffs assert that a broker can "become[] a fiduciary by setting its own compensation."  Compl. ¶ 106.  *First*, this generalized assertion does not allege anything about Lockton.  Carriers, not brokers, set standard commission schedules and, as Plaintiffs acknowledge, the carriers pay those commissions.  *See* Compl. ¶ 93.  Nowhere do Plaintiffs allege facts that *Lockton* set its own compensation or that the VB Program paid it.[14]

*Second*, even if Lockton set its own compensation and was paid by the VB Program (neither of which could be alleged), that does not confer fiduciary status.  A service provider "owes no fiduciary duty with respect to the negotiation of its fee compensation."  *Renfro*, 671 F.3d at 324.  "When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan" and "is not an ERISA fiduciary with respect to the terms of the agreement for his compensation."  *Id.* (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)).  The Services Agreement was entered into at arm's length and disclosed Lockton's compensation; Allied was free to choose a different broker.  *See* Ex. A (Services Agreement) at Addendum B; *see also Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*, 2013 WL 3864395, at *7 (D.N.J. July 24, 2013); *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018) ("A service provider is plainly not" a fiduciary "when negotiating its prospective fees or compiling a list of proposed . . . options.").

---

[14] Further, Plaintiffs use data in the Complaint that overstates the actual commissions Lockton retained, as it reflects the carrier-set commission rate and does not include rebates or caps set by Lockton.  *See* Ex. B (2024 Consulting Services Agreement Addendum) at Memorandum of Understanding.

Fiduciary status arises only when a service provider exercises an "ability to control unilaterally the amount of compensation it receives." *Patrico v. Voya Fin., Inc.*, 2017 WL 2684065, at \*3 (S.D.N.Y. June 20, 2017); *see also United States v. Glick*, 142 F.3d 520, 528 (2d Cir. 1998) ("[A]n agent with a contractually-established commission rate is not, without other indicia, a fiduciary to the plan."). Plaintiffs do not and cannot allege Lockton had any ability to unilaterally control Aflac's commission rates, or that Allied was not "free to select a different . . . service provider." *See Patrico*, 2017 WL 2684065, at \*3.

\* \* \*

Plaintiffs do not allege facts sufficient to establish Lockton was an ERISA fiduciary with respect to the challenged conduct. Because fiduciary status is a prerequisite to the breach of fiduciary duty (Count I) and prohibited transaction (Count V) claims, the Court's inquiry should end here.

### III.    PLAINTIFFS FAIL TO ALLEGE THAT LOCKTON BREACHED THE DUTY OF PRUDENCE (COUNT I)

Even if Lockton were a fiduciary, Plaintiffs' breach claim (Count I) fails because they have not alleged imprudence. The duty of prudence "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* (*PBGC*), 712 F.3d 705, 716 (2d Cir. 2013) (citation modified). Critically, the Complaint makes ***no specific allegations*** about Lockton's actual process for recommending or monitoring the challenged insurance. Because there is no basis to claim Lockton's process was flawed or "that a prudent fiduciary in like circumstances would have acted differently," *id*. at 718, 720, Count I must be dismissed.

Plaintiffs ask this Court to "infer" Lockton had a flawed process but provide no factual support. *See* Compl. ¶ 133. As discussed, *supra* Section I.B, Plaintiffs still cannot allege that they

paid premiums that were outside the range of allegedly comparable VB programs.  Moreover, they do not even attempt to provide a meaningful benchmark with respect to premiums.  *See Matousek v MidAmerican Energy Co.*, 51 F.4th 274, 278–79 (8th Cir. 2022) (plaintiffs must provide a "like-for-like comparison").  Indeed, Plaintiffs affirmatively allege that premiums "rely on complex actuarial calculations that depend on the demographics of a workforce, the employer's industry, the size of the workforce, and benefits offered."  Compl. ¶ 205.  Nowhere do Plaintiffs allege that the comparator plans they identify were similar across these factors.  Putting aside that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible" option, *PBGC*, 712 F.3d at 718 (citation omitted), there is no basis to infer Plaintiffs paid anything other than the lowest premiums available for Allied's workforce and its demographics.  *See* Allied Br. § V.B.

Plaintiffs attempt to compare Lockton's commissions to those from other VB programs.[15] Compl. ¶¶ 189-203.  Plaintiffs, however, make no effort to explain why these are appropriate benchmarks.  They do not allege whether comparators' brokers performed similar services, whether those programs had heaped or level commission structures, or whether those programs had similar benefit levels or participant demographics.  Mere allegations of excessive fees without regard to service similarity do not create a plausible inference of breach.  *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 31 (2d Cir. 2009); *Singh v. Deloitte LLP*, 123 F.4th 88, 93–94

---

[15] To the extent Plaintiffs' theory is based on the assumption that the commissions paid to Lockton were excessive, the alleged commissions are squarely in line with the industry averages referenced in the Complaint.  *See supra* Section I.B.  In addition, even if commissions could be viewed as above average, that is not a basis to conclude anything about Lockton's process.  *See Jacobs v. Verizon Commc'ns, Inc.*, 2017 WL 8809714, at *13 (S.D.N.Y. Sep. 28, 2017) ("The total fee [charged to a participant], not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost of [a plan offering].") (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009), *abrogated on other grounds by Hughes v. Northwestern Univ.*, 63 F.4th 615 (7th Cir. 2023)).

(2d Cir. 2024) (affirming dismissal where plaintiff "fail[ed] to do more than allege conclusorily that the Plan's recordkeeping fees exceeded those of a select handful among the many other plans available on the market"); *Matney v. Barrick Gold of N.A.*, 80 F.4th 1136, 1149 (10th Cir. 2023) ("A court cannot reasonably draw an inference of imprudence simply from the allegation that a cost disparity exists; rather, the complaint must state facts to show the funds or services being compared are, indeed, comparable.").[16]

Plaintiffs also frame Lockton's commissions as a *per se* indicator of imprudence by alleging correlation between commissions and the "value" of the policy, as expressed by the policy's "loss ratio." As discussed, *supra* Section I.B, Plaintiffs' theory is speculative and unsupported by any concrete factual allegations. Moreover, for the same reason fiduciaries are not required to offer the lowest-cost option, they are also not required to offer the policy with the lowest commissions or highest loss ratio. "There are simply too many relevant considerations" for any "bright-line approach to prudence to be tenable." *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015). "[P]rudence requires fiduciaries to consider the totality of the circumstances," *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 196 (5th Cir. 2020), including premiums, insurer service and responsiveness, and product features and benefits in relation to the particular demographics of the

---

[16] Plaintiffs try to compare VB commissions to medical plan commissions, but medical and VB insurance are fundamentally different products. *See, e.g.*, *2024 Annual Report* at 42, 78, ARTHUR J. GALLAGHER & CO. (2024), https://s28.q4cdn.com/872121257/files/doc_financials/2024/ar/ARTHUR-J-GALLAGHER-ARS.pdf (Compl. ¶ 86 n.19) ("Commissions depend upon a large number of factors, including the type of risk being placed, the particular underwriting enterprise's demand, the expected loss experience of the particular risk of coverage, and historical benchmarks surrounding the level of effort necessary for us to place and service the insurance contract. Rather than being tied to the amount of premiums, fees are most often based on an expected level of effort to provide our services."); Prendes, *supra* note 5 (Compl. ¶ 99 n.25) (noting that different types of insurance policies may have varying commission structures, anti-selection risks, and persistency characteristics).

participant pool.  *See* Compl. ¶ 184 (conceding that loss ratio is not "the only thing a prudent employer should consider").  Plaintiffs make no effort to evaluate the VB Program on any of these bases, and their speculative assertion about loss ratios does not support an imprudence inference.

Finally, the boilerplate allegation that Lockton "has engaged in a consistent business practice of providing things of value to employers in exchange for permitting excessive commissions," Compl. ¶ 36, does not establish imprudence.  Plaintiffs have not pled what "things of value" Lockton allegedly provided, when, or how any *quid pro quo* affected insurance selection.[17]  Plaintiffs' breach of fiduciary duty claim must be dismissed.

## IV.    COUNT I FAILS AS TO LOCKTON BECAUSE PLAINTIFFS HAVE NOT ADEQUATELY PLED CAUSATION

Section 409 of ERISA provides that a fiduciary found to have breached a duty "shall be personally liable to make good to such plan any losses to the plan *resulting from each such breach*."  29 U.S.C. § 1109(a) (emphasis added).   Plaintiffs have not adequately alleged that their purported losses resulted from any breach by Lockton.

The Complaint acknowledges Aflac was *already the carrier* when Lockton became broker. Compl. ¶¶ 125-26.  Accordingly, there are no allegations that Lockton caused any losses to participants.  And as explained, *supra* Section II.A, the Complaint does not allege Lockton had authority to replace the carrier.  *See* Ex. A (Services Agreement) § 6.8.  The existence of a separate fiduciary with sole discretionary authority to change the VB Program's offerings (Allied) breaks any causal chain connecting Lockton's conduct to the losses.  *See Lauderdale v. NFP Ret., Inc.*, 2022 WL 17260510, at *13 (C.D. Cal. Nov. 17, 2022) (defendant who was "not the entity

---

[17] Because Plaintiffs have failed to plausibly allege any underlying breach of fiduciary duty by Mercer or Allied, Lockton is not liable with respect to their alleged breaches as a co-fiduciary.   *See* Mercer Br. §§ II, III; *see also* Allied Br. § V.

- 22 -

responsible or with authority to remove" the complained-of funds could not have "caused" plaintiffs' injury concerning the inclusion of such funds in the plan); *see also Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1173, 1176 (11th Cir. 2024) (to obtain damages, "the breach of fiduciary duty must proximately cause the plaintiffs' losses"). Accordingly, Plaintiffs' breach of fiduciary duty claim fails for the independent reason that the Complaint does not, as a matter of law, adequately plead causation.

## V.   PLAINTIFFS FAIL TO STATE ANY CLAIM FOR PROHIBITED TRANSACTIONS AGAINST LOCKTON (COUNT V)

Count V asserts prohibited transactions under ERISA § 406(b). Compl. ¶¶ 281-86. As a threshold matter, this claim fails because § 406(b) applies only to fiduciaries, and Lockton was not a fiduciary. The prohibited transaction claim also fails because the Complaint does not allege Lockton dealt with "plan assets." 29 U.S.C. §§ 1106(b)(1), (3) (prohibiting a fiduciary defendant from receiving a benefit from "the assets of the plan"). Lockton's commissions were paid by Aflac. Compl. ¶ 93. Even accepting that commissions were "built into" premiums, *id.* ¶ 89, once premiums are remitted to an insurer, those funds become the carrier's assets—not plan assets. *See e.g.*, *Depot, Inc.*, 915 F.3d at 657 ("Premiums paid to an insurance company in return for coverage under a fully insured insurance policy are not 'plan assets.'"); *In re Ins. Brokerage Antitrust Litig.*, 2008 WL 141498, at *8 (D.N.J. Jan. 14, 2008) (agreeing that "an insurer's general assets" are not "the assets of an ERISA plan, and payments made from those assets are not subject to any ERISA fiduciary duty") (citation omitted); *Comerica Bank for DARLC Retiree Benefit Tr. v. Voluntary Empl. Benefits Assocs.*, 2012 WL 12948705, at *16 (N.D. Ga. Jan. 11, 2012) ("[t]he moment an insurance carrier received a premium payment, the payment was the property of the carrier" and "commissions were . . . assets belonging to [the brokers] paid from assets of the carriers"); *Marks v. Indep. Blue Cross*, 71 F. Supp. 2d 432, 435 (E.D. Pa. 1999) (noting that the "money [an

- 23 -

insurance company] used to pay the medical providers was the money [the insurer] received in consideration for insuring the [plan's] participants" and came from the insurer's "own assets, not those of the [plan]").  That commissions may be "embedded" in premium calculations does not change this legal reality.

Even if commissions *were* paid with plan assets, the claim still fails.  "Section 406(b)'s purpose is to prohibit transactions that might involve self-dealing by a fiduciary, not to prevent fiduciaries from being paid for their work."  *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013) ("A service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain."); *see also Santomenno*, 883 F.3d at 841 ("[W]hen a service provider's definitively calculable and nondiscretionary compensation is clearly set forth in a contract with the fiduciary-employer, collection of fees out of plan funds in strict adherence to that contractual term is not a breach of the provider's fiduciary duty.").  Lockton cannot have engaged in a prohibited transaction merely by accepting payment for services when it was neither a fiduciary nor a party-in-interest. *See id.* at 838.

The Second Circuit recently affirmed dismissal of a similar § 406(b) claim where plaintiffs asserted the plan's committee "knowingly selected and failed to remove" plan options to earn profit. *Collins v. Ne. Grocery, Inc.*, 2025 WL 2383710, at *5 (2d Cir. Aug. 18, 2025).  The court held such allegations were "too conclusory" and "provided no factual basis to 'distinguish between ordinary compensation . . . and illicit kickbacks.'" *Id.*  Here, the Complaint alleges brokers are "typically compensated through commissions," Compl. ¶¶ 86-87, and that Lockton's commissions

were within the 15-55% industry range.[18]  *See id.* ¶ 96 n.24.  Plaintiffs allege no basis to infer

Lockton received more than "ordinary compensation."

## VI.    PLAINTIFFS FAIL TO STATE ANY "KNOWING PARTICIPATION" CLAIM AGAINST LOCKTON (COUNTS VII AND IX)

Counts VII and IX assert Lockton is liable for "knowingly participating" in breaches by

Allied.  Compl. ¶¶ 299-308, 320-28.  A knowing participation claim requires:  (1) an underlying

breach by Allied, (2) Lockton's knowing participation, and (3) damages.  *See Trs. of Upstate N.Y.*

*Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016).  The Complaint fails

to satisfy any element.  *See* Mercer Br. §§ II.C, III.B., IV.

*First*, these claims are derivative.  Because the underlying claims against Allied fail—as

set forth in Allied's and Mercer's Motions, the knowing participation claims necessarily fail.

*Forgione*, 2015 WL 718270, at *13.  Among other reasons, Plaintiffs fail to allege a § 406(a)

claim against Allied because Lockton was not a "party in interest" when Allied engaged Lockton

and agreed to its disclosed commissions.   *See* Mercer Br. Section III.B.3; *Ramos v. Banner Health*,

1 F.4th 769, 787 (10th Cir. 2021) ("[S]ome prior relationship must exist between the fiduciary and

the service provider to make the provider a party in interest under § 1106.").

*Second*, disgorgement based on knowing participation requires the defendant actually

received plan assets.  *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250–

---

[18] Plaintiffs incorrectly attempt to characterize this range as "large because it includes outliers" who have "unreasonably high commissions," Compl. ¶ 97, but provide no valid benchmark establishing what commission level is reasonable for a program of this size, scope, and structure, *see Singh*, 123 F.4th at 93–94 (affirming dismissal where plaintiff "fail[ed] to do more than allege conclusorily that the Plan's . . . fees exceeded those of a select handful among the many other plans available on the market").  Plaintiffs also inconsistently allege that "typical" commissions are only 10% for plans who are similarly sized to the plans in the VB Program (Compl. ¶¶ 168, 172), but cite to sources that support commissions of 60 to 80% (*supra* note 2)—which further underscores the absence of any meaningful standard against which to measure Lockton's compensation.

51 (2000). Lockton did not receive "plan assets"—its commissions were paid by Aflac. Compl. ¶ 93. *See supra* Section V.

*Third*, the Complaint fails to allege Lockton's "actual or constructive knowledge" of misconduct. "[G]eneral knowledge of the transaction's circumstances is not enough"; the defendant "must know the circumstances *that rendered the transaction unlawful*." *Walsh v. Vinoskey*, 19 F.4th 672, 678 (4th Cir. 2021); *accord Haley v. TIAA*, 377 F. Supp. 3d 250, 258 (S.D.N.Y. 2019). This heightened standard imposes liability on transferees who "knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach." *Harris Tr.*, 530 U.S. at 251.

Knowledge of receiving commissions—even substantial commissions—is not knowledge that a fiduciary is breaching its duties. Lockton disclosed its compensation, and Allied approved it. Compl. ¶¶ 91, 93, 143. Service providers have no duty to monitor fiduciaries. *See Chauvet v. Local 1199, Drug, Hosp. & Health Care Emps. Union*, 1996 WL 665610, at *14 (S.D.N.Y. Nov. 18, 1996) (rejecting that "non-fiduciaries are under an affirmative obligation to oversee and to ensure that fiduciaries do not breach their ERISA duties"). Plaintiffs do not allege what Lockton knew or when, or how it learned of any fiduciary failure. Compl. ¶¶ 301-08. Their bare conclusions do not establish the requisite knowledge. *See Leber v. Citigroup, Inc.*, 2010 WL 935442, at *14 (S.D.N.Y. Mar. 16, 2010) (dismissing complaint with "bare assertion that" defendant "knew or should have known" investment committee breached fiduciaries duties). Counts VII and IX should be dismissed.[19]

---

[19] Counts VII and IX also fail because they seek monetary rather than equitable relief. Damages remedies are not available against non-fiduciaries under ERISA. Although Counts VII and IX claim to seek "equitable" relief, Plaintiffs do not identify specific funds in Lockton's possession to which they are entitled. *See* Mercer Br. § IV.

## **CONCLUSION**

Plaintiffs had two opportunities to plead claims against Lockton.  For the foregoing reasons and because Plaintiffs cannot cure these deficiencies, dismissal with prejudice is appropriate.

Dated:    April 30, 2026               **MILBANK LLP**
           New York, New York

*/s/ Sean M. Murphy*

Scott A. Edelman
Sean M. Murphy
Robert C. Hora
Lucille E. Baeurle
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Email:    sedelman@milbank.com
          smurphy@milbank.com
          rhora@milbank.com
          lbaeurle@milbank.com

*Counsel for Defendant Lockton Companies, LLC*

- 28 -

**Local Civil Rule 7.1(c) Certification**

Undersigned counsel hereby certifies that this Memorandum of Law complies with the word count limitations and rules set forth in Local Civil Rule 7.1(c).  Undersigned counsel has relied on the word count of the word-processing program used to prepare this document and states that the applicable portions of the document contain 8,588 words.


Dated: April 30, 2026                                                          */s/ Sean M. Murphy*