**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SABRINA FELLOWS, EDMUND LYNN III, DONNA PATTON, WESLEY HALL, and NINA BUSTAMANTE-VICARIO, individually and as representatives of a class of participants and beneficiaries on behalf of the ALLIED UNIVERSAL HEALTH AND WELFARE BENEFIT PLAN,<br><br>       *Plaintiffs*,<br><br>v.<br><br>UNIVERSAL SERVICES OF AMERICA, LP d/b/a ALLIED UNIVERSAL, ALLIED UNIVERSAL EMPLOYEE BENEFITS COMMITTEE, MERCER HEALTH AND BENEFITS ADMINISTRATION, LLC, LOCKTON COMPANIES, LLC, and JOHN DOES 1–20,<br><br>       *Defendants*. | No. 1:25-cv-10659 |

**OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTIONS [ECF NOS. 72, 75, 81]**

**CONTENTS**

Authorities ............................................................................................................................ ii

Preliminary Statement........................................................................................................... 1

Background ............................................................................................................................ 2

    A.   Statutory background ................................................................................................. 2

    B.   Factual background ..................................................................................................... 4

Argument ............................................................................................................................... 6

    I.    The Court should exclude extrinsic materials and arguments based on them or promptly open discovery to allow Plaintiffs a fair opportunity to respond. .................... 6

    II.   Plaintiffs plausibly allege each of their claims. ............................................................ 12

       A.   Plaintiffs allege that all Defendants acted as fiduciaries or as knowing participants in fiduciary violations. .......................................................................... 13

       B.   Plaintiffs plausibly allege breach of fiduciary duty. ............................................... 21

       C.   Plaintiffs plausibly allege prohibited transactions. ................................................. 23

Conclusion ........................................................................................................................... 26

**AUTHORITIES**

### Cases

*Access Servs. of N. Ill. v. Capitol Adm'rs, Inc.*,
  No. 19-50050, 2021 U.S. Dist. LEXIS 37582 (N.D. Ill. Mar. 1, 2021).................................... 16

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*,
  99 F. Supp. 3d 1110 (C.D. Cal 2015) ........................................................................................ 9

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012)............................................................................................... 12, 13

*Barbich v. Northwestern Univ.*,
  No. 25-6849, ECF 61 (N.D. Ill. Apr. 2, 2026) ........................................................................ 15

*Beck v. Pace Int'l. Union*,
  551 U.S. 96 (2007) ................................................................................................................... 15

*Bernhard v. Cent. Parking Sys. of N.Y., Inc.*,
  282 F.R.D. 284 (E.D.N.Y. 2012) ............................................................................................ 14

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009)........................................................................................... 3, 17, 22

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*,
  No. 21-8384, 2024 U.S. Dist. LEXIS 97679 (S.D.N.Y. May 31, 2024) ................................. 18

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)........................................................................................... 7, 10, 12

*Chao v. Day*,
  436 F.3d 234 (D.C. Cir. 2006) ................................................................................................. 16

*Chauvet v. Local 1199, Drug, Hosp. & Health Care Emples. Union*,
  No. 96-2934,1996 U.S. Dist. LEXIS 17080 (S.D.N.Y. Nov. 14, 1996) ................................. 19

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) ................................................................................................................. 14

*Cosmas v. Hassett*,
  886 F.2d 8 (2d Cir. 1989)........................................................................................................... 9

*Cunningham v. Cornell University*,
  604 U.S. 693 (2025) ..................................................................................................... 20, 21, 24

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*,
  931 F.3d 269 (4th Cir. 2019).................................................................................................... 14

*Donovan v. Bierwirth*,
  680 F.2d 263 (2d Cir. 1982)....................................................................................................... 1

*Evans v. Port Auth. of New York & New Jersey*,
  192 F. Supp. 2d 247 (S.D.N.Y. 2002)........................................................................................ 7

*Eversole v. Metro. Life Ins. Co.*,
  500 F. Supp. 1162 (C.D. Cal. 1980) ........................................................................................ 16

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ........................................................................................................ 15

*Fink v. Union Cent. Life Ins. Co.*,
   94 F.3d 489 (8th Cir. 1996) ............................................................................................ 17

*Global Network Commc'ns, Inc. v. City of N.Y.*,
   458 F.3d 150 (2d Cir. 2006) ................................................................... 6, 7, 10, 11, 12

*Goel v. Bunge, Ltd.*,
   820 F.3d 554 (2d Cir. 2016) ............................................................................................ 10

*Haley v. Teachers Ins. & Annuity Ass'n of Am.*,
   377 F. Supp. 3d 250 (S.D.N.Y. 2019) ............................................................................ 19

*Hammer v. Johnson Senior Ctr.*, Inc.,
   No. 6:19-cv-00027, 2020 U.S. Dist. LEXIS 223169 (W.D. Va. Nov. 30, 2020) .................... 23

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
   530 U.S. 238 (2000) ...................................................... 3, 4, 14, 17, 18, 19

*Henry Avocado Corp. v. Z.J.D. Brother, LLC*,
   No. 17-4559 (ARR), 2017 U.S. Dist. LEXIS 208509 (E.D.N.Y. Dec. 19, 2017) ..................... 8

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield*,
   751 F.3d 740 (6th Cir. 2014) .......................................................................................... 23

*In re Omnicom ERISA Litig.*,
   2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) .................................................................. 13

*In re Regions Morgan Keegan ERISA Litig.*,
   692 F. Supp. 2d 944 (W.D. Tenn. 2010) ....................................................................... 14

*In re Schering-Plough Corp. ERISA Litig.*,
   No. 03-1204 (KSH), 2007 U.S. Dist. LEXIS 59708 (D.N.J. Aug. 15, 2007) ......................... 14

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
   146 F.3d 66 (2d Cir. 1998) ............................................................................................... 7

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*,
   510 U.S. 86 (1993) ........................................................................................................... 2

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ....................................................................................... 14

*Keiler v. Harlequin Enters.*,
   751 F.3d 64 (2d Cir. 2014) ............................................................................................. 12

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991) ............................................................................................. 8

*Leber v. Citigroup, Inc.*,
   2010 U.S. Dist. LEXIS 25097 (S.D.N.Y. Mar. 16, 2010) .............................................. 19

*Leigh v. Engle*,
   727 F.2d 113 (7th Cir. 1984) .......................................................................................... 16

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ................................................................................................ 20

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ...................................................................................... 2

*Lowen v. Tower Asset Mgmt.*,
   829 F.2d 1209 (2d Cir. 1987) .................................................................................. 23

*Lynch v. City of N.Y.*,
   952 F.3d 67 (2d Cir. 2020) ...................................................................................... 12

*Massaro v. Palladino*,
   19 F.4th 197 (2d Cir. 2021) ..................................................................................... 13

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ..................................................................................... 2, 11, 19

*Nakahata v. N.Y.-Presbyterian Healthcare Sys.*,
   723 F.3d 192 (2d Cir. 2013) ...................................................................................... 6

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) .................................................................................... 12

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ......................................................................... 2, 13, 17

*Rankin v. Rots*,
   278 F. Supp. 2d 853 (E.D. Mich. 2003) .................................................................. 17

*Rodriguez v. Vill. Green Realty, Inc.*,
   788 F.3d 31 (2d Cir. 2015) ........................................................................................ 7

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) .................................................................................. 8, 9

*Sacerdote v. New York Univ.*,
   9 F.4th 95 (2d Cir. 2021) ........................................................................................ 13

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004) ........................................................................................ 9

*Spencer-Smith v. Erlich*,
   347 F.R.D. 606 (S.D.N.Y. 2024) ............................................................................ 10

*Stern v. JPMorgan Chase & Co.*,
   No. 25-2097 (JLR), 2026 LX 132031 (S.D.N.Y. Mar. 9, 2026) ...................... 15, 20

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) .................................................................................... 21

*Teets v. Great-West Life & Annuity Ins. Co.*,
   919 F.3d 1232 (10th Cir. 2019) .............................................................................. 17

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015) ................................................................................................... 3

*Tibble v. Edison Int'l,*
  843 F.3d 1187 (9th Cir. 2016)........................................................................................ 3

*Trs. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg,*
  No. 08-0884, 2009 U.S. Dist. LEXIS 101778 (E.D.N.Y. Sept. 25, 2009) ........................ 23, 24

*Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.,*
  843 F.3d 561 (2d Cir. 2016)......................................................................................... 19

*United States ex rel. Foreman v. AECOM,*
  19 F.4th 85 (2d Cir. 2021)............................................................................................ 7

*United States v. Strock,*
  982 F.3d 51 (2d Cir. 2020)............................................................................................ 9

*Varity Corp. v. Howe,*
  516 U.S. 489 (1996)...................................................................................................... 3

*Walker v. S.W.I.F.T. SCRL,*
  517 F. Supp. 2d 801 (E.D. Va. 2007)............................................................................. 7

*Walsh v. Vinoskey,*
  19 F.4th 672 (4th Cir. 2021) ........................................................................................ 19

*Woods v. S. Co.,*
  396 F.Supp.2d 1351 (N.D. Ga. 2005) ........................................................................... 14

**Statutes**

29 U.S.C. § 1001(b) ...................................................................................................... 2

29 U.S.C. § 1002(14)(B).......................................................................................... 5, 20, 22

29 U.S.C. § 1002(16)(A)(i).............................................................................................. 4

29 U.S.C. § 1002(16)(B)................................................................................................. 4

29 U.S.C. § 1002(21)(A)........................................................................................ 2, 11, 13, 16

29 U.S.C. § 1002(7) ...................................................................................................... 3

29 U.S.C. § 1002(8) ...................................................................................................... 3

29 U.S.C. § 1102(a)(2)................................................................................................... 4

29 U.S.C. § 1104(a)(1)(B) ............................................................................................. 2

29 U.S.C. § 1104(a)(1)(D) ............................................................................................. 15

29 U.S.C. § 1105(c)(2)(A) ............................................................................................. 16

29 U.S.C. § 1106............................................................................................................ 3

29 U.S.C. § 1106 (a)(1)(D) ....................................................................................... 21, 22

29 U.S.C. § 1106(a)(1)................................................................................................... 21

29 U.S.C. § 1106(a)(1)(A) ...................................................................................... 20, 21, 22, 24

29 U.S.C. § 1106(a)(1)(C) ...................................................................................... 20, 21, 22, 24

29 U.S.C. § 1106(a)(1)(D) ........................................................................................ 20

29 U.S.C. § 1106(a)(2) .............................................................................................. 21

29 U.S.C. § 1106(b) ............................................................................................ 21, 22

29 U.S.C. § 1109(a) .................................................................................................... 4

29 U.S.C. § 1110(a) .................................................................................................. 11

29 U.S.C. § 1113(1) .................................................................................................. 21

29 U.S.C. § 1132(a)(2) .......................................................................................... 3, 17

29 U.S.C. § 1132(a)(3) .................................................................................... 3, 4, 17

**Rules**

Fed. R. Civ. P. 12(d) ............................................................................................... 6, 7

Fed. R. Civ. P. 56(d) .................................................................................................. 7

**Regulations**

29 C.F.R. § 2510.3-102(a)(1) ................................................................................... 23

**Other Authorities**

44 C.J.S. Insurance .................................................................................................... 16

RESTATEMENT (THIRD) OF TRUSTS .................................................................... 3, 16

U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993) ................................ 23

U.S. Dept. of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* (Sept. 2023) ................................................................................... 15

Unif. Prudent Investor Act ......................................................................................... 3

## PRELIMINARY STATEMENT[1]

As fiduciaries of ERISA-governed benefit plans, Defendants were obligated to act with the utmost care and loyalty to the employees who participate in the plan—duties that are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982) (Friendly, J.). As Plaintiffs' Amended Complaint ("AC") explains in detail, Defendants fell far short of those standards. Defendant Allied subjected its employees to millions of dollars in losses in the form of excessive premiums for accident, critical illness, and hospital indemnity insurance. A staggering 40% of the premiums was earmarked as a broker commission paid to Defendants Mercer and Lockton; the industry-standard rate paid by comparable plans is roughly 10%. Far from acting with the care, skill, prudence, and diligence that ERISA demands, Defendants exercised no due diligence whatsoever, with Mercer and Lockton in particular deliberately enriching themselves at employees' expense.

Defendants merely ignore or dispute the alleged facts—improperly relying on *thousands of pages* of extrinsic exhibits to do so. The very fact that Defendants must resort to this tactic confirms that Plaintiffs' claims raise fact-intensive issues that can only be resolved at a later stage of the proceedings. Because the complaint plausibly shows that Defendants violated ERISA, the Court should deny Defendants' motions.

Aside from raising improper factual disputes, Defendants also misleadingly portray the case as some sort of industry-wide attack on the practice of paying brokerage commissions, as a purported justification for seeking dismissal "with prejudice." Allied Mem. 25 (ECF 73); Mercer Mem. 28–29 (ECF 76). Far from condemning the entire industry, the complaint repeatedly refers

---

[1] Defendants filed a total of three motions to dismiss, each of which seeks dismissal under both Rule 12(b)(1) and Rule 12(b)(6). All three of the motions make overlapping arguments and adopt each other's arguments by incorporation. To avoid unnecessary repetition, Plaintiffs address all Rule 12(b)(6) issues in this brief and Rule 12(b)(1) issues in a concurrent separate opposition.

to the exorbitant commissions paid by Allied's plan as "outliers," while citing numerous examples of prudently managed plans with reasonable commissions. AC ¶¶ 97, 172, 188–203 (ECF 64). Thus, Defendants' accusation of an industry-wide attack is merely a smokescreen to obscure the egregious overcharges that Defendants inflicted on Allied's rank-and-file workers.  In any event, while Plaintiffs' existing allegations are more than sufficient to satisfy Rule 8(a)(2) and Defendants' dismissal arguments seek to impose a heightened standard that goes far beyond the required "short and plain statement of the claim," Plaintiffs would be entitled to an opportunity to cure any "specific deficiency" after "the benefit of a ruling" by the Court. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).

### BACKGROUND

**A.     Statutory background**

"ERISA's central purpose is to protect beneficiaries of employee benefits plans." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 715 (2d Cir. 2013) ("*PBGC*"). ERISA accomplishes its protective purposes "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see* 29 U.S.C. § 1002(21)(A). By defining the term "fiduciary" broadly, Congress ensured that ERISA's strict conduct standards would attach to all persons whose actions affect employees' interests in benefit plans. *See John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 96 (1993).

ERISA's fiduciary duties require acting "solely in the interest of the participants" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).

Congress supplemented those general duties by categorically barring certain "prohibited transactions" that are likely to injure a plan. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000); *see* 29 U.S.C. § 1106.

Because ERISA's fiduciary duties are derived from trust law, the scope of an ERISA fiduciary's duty generally tracks common law trust duties unless inconsistent with the statute. *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996). Thus, ERISA fiduciaries have a continuing duty to monitor the plan. *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). ERISA also incorporates a trust-law duty of "cost-conscious management," because "[w]asting beneficiaries' money is imprudent." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197–98 (9th Cir. 2016) (*en banc*) (quoting RESTATEMENT (THIRD) OF TRUSTS § 90, cmt. b, and Unif. Prudent Investor Act § 7). Plan fiduciaries "are obliged to minimize costs." *Id.* This means that ERISA fiduciaries "have a duty to avoid fees, transaction costs, and other expenses that are not justified by needs and realistic objectives of the trust's investment program[.]" RESTATEMENT (THIRD) OF TRUSTS, § Scope. "The duty to be cost conscious requires attention to such matters as the cumulation of fiduciary commissions with agent fees[.]" *Id*.

To enforce these standards, Congress granted a right of action to several classes of plaintiffs, including the Secretary of Labor, or a plan participant, beneficiary, or fiduciary. 29 U.S.C. § 1132(a)(2), (a)(3).[2] The Secretary "depends in part on private litigation to ensure compliance with the statute." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009). A fiduciary found to be in breach of its duties is liable for damages and equitable relief such as

---

[2] A "participant" is "any employee or former employee of an employer … who is or may become eligible to receive a benefit of any type from an employee benefit plan," 29 U.S.C. § 1002(7), while a "beneficiary" is "a person designated by a participant" or the terms of the plan "who is or may become entitled to a benefit" under the plan, 29 U.S.C. § 1002(8).

disgorgement of profits. 29 U.S.C. § 1109(a). A non-fiduciary who "knowingly participates" in a fiduciary's ERISA violation is also subject to such equitable relief. *See Harris Tr.*, 530 U.S. at 246, 250–51; 29 U.S.C. § 1132(a)(3).

**B.      Factual background**

Plaintiffs are five current and former employees of Allied Universal, a worldwide provider of security services with over 800,000 employees and $20 billion in annual revenue. AC ¶¶ 13–19. Plaintiffs purchased accident, critical illness, or hospital indemnity insurance through an Allied-sponsored welfare benefits plan governed by ERISA (the "Plan").[3] AC ¶¶ 2, 13–17. During the period at issue (2019 through 2024), the insurance at issue covered 47,000 to 82,000 "lives."[4] *Id*. ¶ 123. The Plan's large size gives it enormous bargaining power to command lower broker commissions and better deals on insurance premiums. *Id*. ¶ 7.

In addition to sponsoring the Plan, Allied is the Plan's "named fiduciary" as defined by ERISA. AC ¶¶ 20–22; *see* 29 U.S.C. §§ 1002(16)(B), 1102(a)(2). Allied administers the Plan through the Allied Universal Employee Benefits Committee, also a fiduciary. AC ¶ 25; *see* 29 U.S.C. § 1002(16)(A)(i). Because Defendants' arguments do not distinguish between Allied and its committee, Plaintiffs refer to them collectively as "Allied."

Insurance industry jargon classifies the types of accident, critical illness, and hospital indemnity programs at issue as "voluntary" benefits, as distinguished from "traditional" employee benefits like medical, dental, life, and disability insurance. AC ¶ 46. While traditional medical plans are typically subsidized by the employer, employees pay the full cost of premiums for voluntary benefits. *Id*. The employer holds employees' contributions in trust after withholding

---

[3] Although certain voluntary benefit programs can qualify for a "safe harbor" from ERISA coverage, AC ¶¶ 59–63, the Plan here is subject to ERISA, *id*., ¶¶ 64–67.

[4] This is industry jargon for the number of people covered by a plan (employees and covered family members).

wages through payroll deductions. *Id.*

The voluntary insurance at issue here provides coverage for specific health-related events in the form of lump-sum benefits. *Id*. ¶ 47. These products are often marketed to rank-and-file employees as a way to cover the out-of-pocket medical costs not covered by traditional health insurance coverage. *Id*. ¶¶ 48–49.

Allied delegated certain administrative tasks to insurance brokerage firms, Defendants Mercer and Lockton. AC ¶¶ 27–38, 83–97. As entities providing services to the Plan, Mercer and Lockton are "part[ies] in interest" under ERISA. *Id*. ¶ 81; 29 U.S.C. § 1002(14)(B). The bulk of these Defendants' compensation comes from commissions, which are "calculated as a percentage of the premiums" paid by participants. AC ¶¶ 88–89, 91. If commissions are 40% of premiums, the premium rate must include the 40% to cover the cost of commissions. *Id*. ¶ 90. Because of the correlation between premiums and commissions, Mercer and Lockton had a financial incentive to drive up the premiums paid by participants. *Id*. ¶¶ 85–87.

Mercer and Lockton were deeply involved with and aware of Allied's conduct related to the insurance at issue. AC ¶¶ 158–65. The services that Lockton agreed to provide to Allied include "optimization of VB [Voluntary Benefits] offering" and "VB vendor oversight." *Id.* ¶ 159. Lockton additionally agreed to provide "VB strategy development," "[f]ull management of renewal / marketing efforts," "VB plan reporting," and support for "all VB related communications." *Id.* ¶ 161. Lockton also administered and managed voluntary benefit insurance, including by managing claims, controlling communications, and conducting enrollment. *Id.* ¶ 160.

Plaintiffs allege that Allied failed to monitor and control the commissions paid to Mercer and Lockton in connection with the Plan, AC ¶¶ 137–169, which amounted to $23 million during the class period, roughly 40% of all premiums paid by participants for the insurance at issue, *id*.

¶¶ 166, 209–10. The high commissions were partly attributable to the use of a "heaped" commission structure (*i.e.*, higher commissions for new enrollees) in a company with a history of high employee turnover. *Id*. ¶ 132. Similar plans sponsored by other employers paid commissions of approximately 10%, *id.* ¶168, as shown by numerous specific examples, including plans that used Lockton as a broker, *id*. ¶¶ 188–211. Thus, it is apparent that Defendants did not conduct appropriate due diligence to monitor broker compensation. *Id*. ¶¶ 120, 214. Because the commissions were a percentage of the premiums paid by employees, the excessive commissions inflated the premiums paid by Plaintiffs and all participants. *Id.* ¶¶ 170–71, 179–80.

Based on these facts, Plaintiffs assert claims that Allied and its co-defendants violated ERISA's fiduciary duties and prohibited transaction rules. AC ¶¶ 237–328. On behalf of a class of all participants who were subjected to these overcharges since December 23, 2019, Plaintiffs seek recovery of losses and equitable relief such as disgorgement of ill-gotten profits and reformation of the Plan to comply with ERISA. AC ¶ 216, pp. 62–63.

## ARGUMENT

**I.      The Court should exclude extrinsic materials and arguments based on them or promptly open discovery to allow Plaintiffs a fair opportunity to respond.**

Courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202 (2d Cir. 2013). If "matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment." *Id.* at 202–03 (citing Fed. R. Civ. P. 12(d)). This conversion requirement "is strictly enforce[d] and mandatory." *Id*. at 203 (quoting *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006)). Thus, when "presented with matters outside the pleadings," a court has two options: (1) exclude the extrinsic documents," or (2) "convert the motion to one for summary judgment and give the

parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002); *see* Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 56(d).

The two limited exceptions to this strict conversion requirement include materials integral to or incorporated into the complaint and matters subject to judicial notice. *Global Network*, 458 F.3d at 156. The exceptions are construed narrowly; otherwise, they would "swallow" the four-corners rule and deprive plaintiffs of the right to conduct discovery and have their claims adjudicated on a complete record. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 108 (2d Cir. 2021); *see also Chambers*, 282 F.3d at 154–55. The burden is on the proponent of the evidence to show that the materials fall within an exception. *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 46 (2d Cir. 2015) (noting proponent's burden to establish admissibility); *Evans v. Port Auth. of New York & New Jersey*, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) (same).

Integral documents are those on which the complaint necessarily relies, typically "a contract or other legal document containing obligations upon which the plaintiff's complaint *stands or falls*." *Global Network*, 458 F.3d at 156–57 (emphasis added); *see also Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (discussing cases illustrating that an "integral" document is one that by its "very existence, and not the mere information it contains, gives rise to the legal rights asserted."). The second exception allows a court to take judicial notice of indisputable facts. *Global Network*, 458 F.3d at 157; Fed. R. Evid. 201(b). To meet that standard, the fact must be "usually common knowledge" or "derived from an unimpeachable source." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

Filings with federal government agencies may be integral to a complaint or subject to judicial

notice, depending on the nature of the claim. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Either way, the documents may be considered "only to determine *what* the documents stated," and "*not to prove the truth of their contents.*" *Id*. (quoting *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991)). Such documents are properly considered in securities fraud cases because they "are the very documents that are alleged to contain the various misrepresentations or omissions," and there can be no reasonable dispute about "what statements [they] contained." *Kramer*, 937 F.2d at 774; *Roth*, 489 F.3d at 509. If the complaint does not allege fraud, that reasoning is inapplicable. *See Roth*, 489 F.3d at 510 (SEC filings were "inappropriate for consideration" where complaint did not allege "a failure to disclose or of a factual misrepresentation."). Even when properly considered, a defendant's statements regarding its own conduct cannot be used to prove the truth of those statements. *See id*. at 510–11 (reversing where district court granted Rule 12(b)(6) motion based on view that "Defendants' statements, which have been submitted to a government agency and made public, should not be contradicted or taken as perjurious simply because the Plaintiff, without evidence, says they are.").

Defendants try to drive a truck through these narrow exceptions. Together, they attach a total of *58 exhibits* spanning more than *3,300 pages*. ECF 74 (Allied attaching 53 exhibits); ECF 77 (Mercer attaching 3 exhibits); ECF 83, 85 (Lockton attaching 2 exhibits). While such material may be appropriately considered in resolving a "factual" challenge to jurisdiction, Defendants cannot justify their heavy dependence on this extrinsic material under Rule 12(b)(6). Defendants simply try to use the narrow exception to present "a counter-narrative of facts," which is improper. *Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-4559 (ARR), 2017 U.S. Dist. LEXIS 208509, at *7–8 (E.D.N.Y. Dec. 19, 2017) ("[A] motion to dismiss is not a swearing contest.").

For example, Allied collects a massive compilation of other companies' annual reports (Forms 5500) filed with the government, and uses data derived from those documents to dispute Plaintiffs' allegations regarding Allied's failure to obtain competitive bids and to perform its own calculations to counter Plaintiffs' allegation that the Plan paid excessive commissions. Allied Mem. 15–17, 19–21. That is more of an expert report than a Rule 12(b)(6) motion. Allied's assertion that these documents are "incorporated in Plaintiffs' Amended Complaint by reference" misunderstands the exception. The Amended Complaint merely refers to "publicly available Form 5500 data;" it does not cite any specific report at all. AC ¶ 188. "Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (although the amended complaint "discussed [certain] documents and presented short quotations from them[,]" these passing references and "brief[ ] excerpt[s]" are insufficient for incorporation by reference). Further, Allied does not present these materials merely to show "*what* the documents stated," but instead "*to prove the truth of their contents*," which is wholly improper at this stage. *Roth*, 489 F.3d at 509; *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (district court erred by considering agency's report for the truth of the matters asserted on a motion to dismiss).

While courts sometimes take judicial notice of the *existence* of Forms 5500 on motions to dismiss in ERISA cases, it is improper to "take judicial notice of *one party's opinion* of how a matter of public record should be interpreted," "to make any determination as to the truth of any of the facts alleged or otherwise asserted in the documents themselves," or "to rely upon these documents to determine disputed factual issues." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110, 1126 (C.D. Cal 2015). That is exactly what

Allied asks the Court to do here: to accept its interpretation of what the Forms 5500 show and to draw inferences from those documents in its favor in a way that contradicts Plaintiffs' factual allegations. The Court must exclude the entirety of these arguments or convert the motion to a Rule 56 motion and open discovery. *Chambers*, 282 F.3d at 154.

Mercer and Lockton also misapply the exceptions, contending that their service contracts are "integral to the complaint." Mercer Mem. 4 n.3; Lockton Mem. 5 n.4 (ECF 82). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id*. (quoting *Global Network*, 458 F.3d at 156); *Spencer-Smith v. Erlich*, 347 F.R.D. 606, 631 (S.D.N.Y. 2024) (excluding contract where complaint "[did] not rely on the [contract] *per se* or on any of its terms," and the "most that [could] be said" was that the plaintiff "relied on certain information in the [contract] in framing her complaint"). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Goel*, 820 F.3d at 559 (quoting *Global Network*, 458 F.3d at 157).

Here, the complaint does not cite Mercer's contract at all, let alone rely "heavily upon its terms and effect." Although the complaint contains a handful of isolated quotations to the Lockton-Allied agreement, it does so merely to provide further support to allegations that must be taken as true on their own, to counter anticipated defense arguments that factual allegations without additional support should be discarded as "conclusory." *See, e.g.*, AC ¶ 89 (alleging that

10

"It is a common industry practice for brokers' commissions to be built into the premiums participants pay," with no citation to contract); *id.* ¶ 92 (referring to provision in Lockton contract that its commissions would be calculated as a percentage of premiums). This does not rise to the level of "heavy reliance" on the terms or effect of the contract so as to make it "integral" to the complaint.

Plaintiffs' claims also do not "rise or fall" on the contents of the Mercer or Lockton contracts. The brokers cite contractual boilerplate purporting to disclaim fiduciary status, and then ask the Court to infer from this language that they did not act as fiduciaries with respect to the challenged conduct, contrary to Plaintiffs' allegations that they *did* act as fiduciaries. Lockton Mem. 14; Mercer Mem. 4, 16. Plaintiffs' claims do not "fall" on such a disclaimer because ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties -- and to damages -- under § 409(a)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see* 29 U.S.C. § 1002(21)(A). That means that a contractual disclaimer cannot save Mercer or Lockton from liability when they "cross the line from adviser to fiduciary" by virtue of engaging in the fiduciary conduct described in § 1002(21)(A). *Id.* Indeed, ERISA makes such exculpatory language "void as against public policy" as a matter of law. 29 U.S.C. § 1110(a). Accordingly, Plaintiffs' claims do not turn on the contents of these service agreements, meaning they are not integral to the complaint.

In sum, by filing a Rule 12(b)(6) motion, Defendants made a strategic choice to ask the Court to determine whether the complaint's alleged facts, *accepted as true*, are legally sufficient "*without* resolving a contest regarding its substantive merits." *Global Network*, 458 F.3d at 155. A defendant cannot pick and choose pieces of evidence from its files or the public record on a

11

Rule 12(b)(6) motion to present its own version of the facts in an attempt to weaken the inferences to be drawn from Plaintiffs' allegations. Doing so "is at odds with the liberal pleading standard" of Rule 8(a)(2). *Chambers*, 282 F.3d at 154. Rule 12(d) precludes the Court from weighing Defendants' one-sided evidentiary presentation against Plaintiffs' allegations and accepting Defendants' version of events, and ensures that Plaintiffs will have a fair opportunity "to contest defendant's relied-upon evidence by submitting material that controverts it." *Global Network*, 458 F.3d at 155. After discovery, Plaintiffs will be able to counter Defendants' ambiguous exhibits with direct evidence of how the Plan's commissions and premiums compare to similar plans and the scope of Mercer's and Lockton's fiduciary conduct. At this juncture, the Court should reject Defendants' invitation to conduct a trial on the pleadings.

## II.    Plaintiffs plausibly allege each of their claims.

Defendants' merits arguments refuse to accept the controlling pleading standard, attempting to impose on Plaintiffs a standard far higher than that imposed by law.

"[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). A court must "constru[e] the complaint liberally." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). A court's task in deciding a motion to dismiss is "to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020). "Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Id.* (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)). Thus, "a complaint that states a plausible version of the events" is not subject to dismissal "merely because the court finds a different version more

12

plausible." *Anderson News*, 680 F.3d at 185. "The choice between or among plausible inferences or scenarios is one for the factfinder" at trial, not for "the court on a Rule 12(b)(6) motion." *Id.*

"[A]s is true in many contexts, a claim under ERISA may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021). That is because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Id.* at 107–10; *see also PBGC*, 712 F.3d at 718 (2d Cir. 2013) ("[A] claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss—even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary—if the complaint alleges facts that, if proved, would show that an adequate investigation would have revealed" the facts rendering the fiduciary's conduct unlawful); *In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *11–13 (S.D.N.Y. Aug. 2, 2021) (courts in this Circuit "overwhelming[ly]" defer resolving "until after discovery" factual disputes that require comparisons and bear on whether ERISA fiduciaries breached their duties).

### A.    Plaintiffs allege that all Defendants acted as fiduciaries or as knowing participants in fiduciary violations.

The "threshold question" in every ERISA breach of fiduciary duty case is whether the defendant "was acting *as a fiduciary* … when taking the action subject to complaint." *Massaro v. Palladino*, 19 F.4th 197, 211 (2d Cir. 2021). A person is an ERISA fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan," or "(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Given ERISA's broad remedial purposes, courts have an "obligation to liberally construe fiduciary status under ERISA." *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269,

13

278 (4th Cir. 2019); *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (explaining that courts "construe ERISA fiduciary status liberally, consistent with ERISA's policies and objectives") (internal quotation marks omitted). The question of a defendant's fiduciary status is fact-intensive and generally cannot be determined on a motion to dismiss. *Bernhard v. Cent. Parking Sys. of N.Y., Inc*., 282 F.R.D. 284, 288 (E.D.N.Y. 2012); *In re Schering-Plough Corp. ERISA Litig.*, No. 03-1204 (KSH), 2007 U.S. Dist. LEXIS 59708, at \*19–20 (D.N.J. Aug. 15, 2007) ("Fiduciary status is a fact sensitive inquiry" and such "complex legal and factual questions" cannot be resolved "prior to discovery."); *In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d 944, 964 (W.D. Tenn. 2010) ("Fiduciary status is 'a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss.'") (citation omitted); *Woods v. S. Co.*, 396 F.Supp.2d 1351, 1365 (N.D. Ga. 2005) (refusing to dismiss ERISA claims "based on the absence of exacting factual averments respecting the existence of Defendants' fiduciary status or the outer contours of their fiduciary capacities.").

Non-fiduciaries who knowingly participate in violations of ERISA and thereby receive ill-gotten gains are also subject to liability. *Harris Tr.*, 530 U.S. at 246, 250–51; 29 U.S.C. § 1132(a)(3).

Plaintiffs' allegations show that all Defendants acted as fiduciaries. Even if the brokers did not act as fiduciaries, they are subject to knowing participation liability.

### 1. Allied acted as a fiduciary.

Allied's contention (at 8–9) that subjecting participants to excessive commissions and premiums implicates only "settlor" functions is wrong. A settlor "creates the plan's basic terms and conditions, executes a written instrument containing those terms and conditions, and provides in that instrument a procedure for making amendments" to the plan. *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011). Allied has not shown that the plan contains any provision requiring the use

14

of Aflac as an insurance provider or requiring broker commissions to be set at approximately 40% of the premiums charged to participate in the plan. Although the decision to offer the insurance at issue can be characterized as a "settlor" function, various aspects of implementing that decision, including selecting a specific insurer and the broker Defendants, were fiduciary acts. *Beck v. Pace Int'l. Union*, 551 U.S. 96, 102 (2007) (while decision to terminate a plan is a settlor function, "ERISA imposed on [employer] a fiduciary obligation in its selection of an appropriate annuity provider" to implement the decision); *Stern v. JPMorgan Chase & Co.*, No. 25-2097 (JLR), 2026 LX 132031, at *42 (S.D.N.Y. Mar. 9, 2026) (employer acted as fiduciary when it hired pharmacy benefit manager because "[h]iring a service provider in and of itself is a fiduciary function.") (citation omitted); Order at 4–5, *Barbich v. Northwestern Univ.*, No. 25-6849, ECF 61 (N.D. Ill. Apr. 2, 2026) (concluding that decision to offer a group health plan was settlor function but "selecting the specific options for employees to enroll in" and monitoring the options were fiduciary functions).[5]

In the unlikely event that the Plan included such terms, "the duty of prudence trumps the instructions of a plan document." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (citing 29 U.S.C. § 1104(a)(1)(D)). Accordingly, even if the Plan specified that participants would have to pay 40% commissions, Allied still would have been obligated to exercise fiduciary oversight to "ensure that those fees and expenses are reasonable, necessary for the plan's operation, and not excessive for the services provided." U.S. Dept. of Labor*, Understanding Your Fiduciary Responsibilities Under a Group Health Plan* at 5 (Sept. 2023).[6]

---

[5] https://benefitslink.com/src/ctop/barbich-v-northwestern-ndill-04022026.pdf, archived at https://perma.cc/M5TP-3N9M.

[6] https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/group-health-plan-fiduciary-responsibilities.pdf

Delegating certain tasks to Mercer and Lockton did not relieve Allied of liability; Allied retained a duty to monitor its appointees to ensure they complied with ERISA. *See* 29 U.S.C. § 1105(c)(2)(A) (appointing fiduciary must act prudently in making and continuing delegation). An appointing fiduciary must "act with an appropriate prudence and reasonableness in overseeing" that person to ensure he is fulfilling his fiduciary obligations. *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984); Restatement (Third) of Trusts § 80 cmt. d(2) (appointing fiduciary must "act with prudence in supervising or monitoring the agent's performance and compliance with the terms of the delegation.").

### 2.    Mercer and Lockton acted as ERISA fiduciaries.

Mercer and Lockton both dispute fiduciary status. Mercer Mem. 10–21; Lockton Mem. 10–19. Plaintiffs' allegations show that both Defendants exercised the requisite discretionary authority or control over the Plan. AC ¶¶ 153, 158–64; *see* 29 U.S.C. § 1002(21)(A).

A broker that selects an insurance plan or its administrator for an ERISA plan is a fiduciary. *Access Servs. of N. Ill. v. Capitol Adm'rs, Inc.*, No. 19-50050, 2021 U.S. Dist. LEXIS 37582, at *10 (N.D. Ill. Mar. 1, 2021); *see also Eversole v. Metro. Life Ins. Co.*, 500 F. Supp. 1162, 1165 (C.D. Cal. 1980) (similar).

> Where an insurance agent or broker acts as [an] agent for [the] insured, there is a fiduciary relationship between them, and the agent or broker has a fiduciary responsibility to [the] insured. Thus, an agent or broker employed to effect insurance for another, like other agents, owes to his principal the duty to discharge with loyalty and good faith the trust imposed in him, to obey the instructions given to him by [the] insured, and to exercise reasonable skill, care, and diligence in effecting the insurance.

*Chao v. Day*, 436 F.3d 234, 237 (D.C. Cir. 2006) (quoting 44 C.J.S. Insurance § 215).

Here, Mercer and Lockton acted as fiduciaries because they were responsible for monitoring, oversight, and selection of voluntary benefits insurance carriers. AC ¶¶ 103, 159–64. Mercer and Lockton further selectively withheld information from Allied about lower-cost voluntary benefits

16

insurance options, to prevent Allied from having sufficient information to prudently manage the Plan, and to maximize their own compensation. *Id.* ¶ 162. A service provider who takes action to exercise control over its own compensation becomes an ERISA fiduciary. *See, e.g.*, *Teets v. Great-West Life & Annuity Ins. Co.*, 919 F.3d 1232, 1244–46 (10th Cir. 2019).

*Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 493 (8th Cir. 1996), upon which Lockton relies, Mem. at 14, is easily distinguishable. There, the agent "was merely a salesperson earning commissions." Here, it is undisputed that Lockton is a service provider responsible for providing "VB vendor oversight" and "optimization" services. *See* Lockton Mem. at 26; AC ¶ 159.

Defendants criticize Plaintiffs for not alleging specific details about their conduct. Mercer Mem. 11–12; Lockton Mem. 14–15. Such details about "a fiduciary's methods" are in "the sole possession" of the defendants before discovery. *PBGC*, 712 F.3d at 719–20 (citing *Braden*, 588 F.3d at 598); *see Braden*, 588 F.3d at 598 (discussing ERISA plaintiffs' "limited access to crucial information" regarding the fiduciary process until discovery commences).

> [T]he manner in which each defendant operated was something of a black box. To expect the employee to be able to turn on the light and point to the particular individuals who exercised decision-making authority was simply too much to require at the pleading stage of the case. To accept defendants' positions that they were not fiduciaries would have meant that there was no one responsible for discretionary decision making.

*Rankin v. Rots*, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003).

### 3. Alternatively, Mercer and Lockton are subject to non-fiduciary liability.

Certain ERISA provisions make "fiduciary" status a prerequisite to liability. *See* 29 U.S.C. § 1132(a)(2), incorporating § 1109(a) (providing that "a fiduciary" who violates a duty may be held liable for various remedies). In contrast, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), "admits of no limit . . . on the universe of possible defendants." *Harris Tr.*, 530 U.S. at 246. Thus, a defendant may be held liable under § 502(a)(3) even if the defendant is not an ERISA fiduciary, if

17

the defendant "knowingly participates" in an ERISA fiduciary's violation. *Id*. at 250–51. A non-fiduciary with actual or constructive knowledge of the circumstances constituting the breach of duty or rendering the transaction unlawful may be held liable for restitution. *Id.* at 251.

In a recent decision in this district, despite concluding that a plan service provider who engaged in cross-selling of outside investments to plan products activities did not act as a fiduciary, the Court held that the defendant could nevertheless be held liable for having knowingly participated in the ERISA violations of plan sponsors who failed to prudently monitor the defendant's activities and the compensation it received from cross-sales. *Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, No. 21-8384, 2024 U.S. Dist. LEXIS 97679, *11–12, *15–31 (S.D.N.Y. May 31, 2024). Here, for similar reasons, Plaintiffs have stated a knowing participation claim against Mercer and Lockton, to the extent they did not act as fiduciaries. *See* AC ¶¶ 165–69, 294–96, 305–07, 313–17, 323–27.

The brokers' argument that this claim fails for want of an underlying breach (Mercer Mem. 29–30; Lockton Mem. 25), fails because Plaintiffs have plausibly alleged a breach by Allied in failing to monitor commissions. The brokers further dispute that Plaintiffs have sufficiently alleged their "knowledge of" any breach by Allied. Mercer Mem. 30; Lockton Mem. 26. That argument fails because Plaintiffs alleged facts showing that the brokers had "actual or constructive knowledge of the circumstances that rendered" the Plan Sponsors' conduct unlawful. *Harris Tr*., 530 U.S. at 251. The brokers necessarily knew that Allied was doing nothing to monitor their commissions, which is precisely why they were allowed to collect such exorbitant commissions. AC ¶¶ 295, 306. If Allied had engaged in prudent monitoring, the commissions would have been reduced to align with the reasonable industry standard of roughly 10%. Thus, Plaintiffs sufficiently allege the brokers' knowledge of the relevant circumstances, particularly since knowledge need

18

only be alleged "generally" under Rule 9(b). Defendants' assertion that Plaintiffs have not sufficiently alleged that they "affirmatively assisted, helped conceal, or by virtue of failing to act when required to do so enabled the breach of fiduciary duty to proceed," Mercer Mem. 30; Lockton Mem. 25 (both citing *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016)), simply ignores the alleged facts. AC ¶¶ 158–65.

Lockton's assertion (at 25–26) that receipt of "plan assets" is a prerequisite to liability misstates the law: "The 'equitable relief' awardable under § 502(a)(5) includes restitution of ill-gotten plan assets *or profits* . . . " *Harris Tr.*, 530 U.S. at 253 (quoting *Mertens,* 508 U.S. at 260) (emphasis added). Thus, Plaintiffs need not identify a "particular fund" to obtain disgorgement of wrongful profits derived from the violation. Mercer Mem. 37.

Defendants' other cases do not support dismissal. *Walsh v. Vinoskey*, 19 F.4th 672, 678 (4th Cir. 2021) (absent were allegations of knowledge of "the circumstances that rendered the transaction unlawful"); *Leber v. Citigroup, Inc.*, 2010 U.S. Dist. LEXIS 25097, at *41 (S.D.N.Y. Mar. 16, 2010) (no allegation as to "how or why" party-in-interest would know of breach); *Chauvet v. Local 1199, Drug, Hosp. & Health Care Emples. Union*, No. 96-2934,1996 U.S. Dist. LEXIS 17080, at *42 (S.D.N.Y. Nov. 14, 1996) (no allegation that party-in-interest was "in any way put on notice" of fiduciary breach) (cleaned up). Another case cited by Lockton, *Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 377 F. Supp. 3d 250, 267 (S.D.N.Y. 2019), supports Plaintiffs, as the Court *denied* a motion to dismiss a similar "knowing participation" claim based on allegations that mirror those here.

Mercer's assertion that it did not knowingly participate in any prohibited transaction depends on the mistaken premise that only transfers of "plan assets" constitute prohibited transactions. Mem. 34. But the case it cites merely states that such transactions "*generally* involve" harmful

uses of "plan assets." *Id*. (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)) (emphasis added). The statute, however, also applies to transfers of "property," 29 U.S.C. § 1106(a)(1)(A), as distinguished from "assets," 29 U.S.C. § 1106(a)(1)(D). Service provider transactions also do not contain any "plan asset" requirement. 29 U.S.C. § 1106(a)(1)(D). Allowing a welfare plan provider to receive excessive compensation thus constitutes a prohibited transaction regardless of whether the payment involves plan assets. 29 U.S.C. § 1106(a)(1)(C). As the Supreme Court recently held, "plaintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less." *Cunningham v. Cornell University*, 604 U.S. 693, 709 (2025). Mercer's effort to add a "plan asset" requirement to the statutory elements fails.

In *Stern*, the Court found that the plaintiffs stated plausible prohibited transaction claims based on hiring a pharmacy benefits manager who allegedly received excessive compensation, relying on *Cunningham* to reject arguments similar to those Defendants make here.  *Stern*, 2026 LX 132031, at *43–47. The allegations were sufficient because they "track[ed] the respective elements of Section 406's subsections, specifically 29 U.S.C. § 1106(a)(1)(A), (C), and (D)." *Id.* at *43. Plaintiffs' allegations here are similar, and Mercer's arguments for dismissal fail for the same reasons. *See also* Part II.C, *infra*.

Mercer's contends that "party in interest" status requires a preexisting relationship with the Plan. Mem. 35. It is doubtful that such a requirement remains good law after *Cunningham*, as nothing in § 1106(a) or the relevant "party in interest" definition (29 U.S.C. § 1002(14)(B)) requires a preexisting relationship. But assuming such a relationship is required, Plaintiffs have alleged it here. Because Mercer received $3 million in commissions for the entire year of 2019, it is apparent that Mercer was providing services to the Plan before the start of the class period, which

20

does not begin until December 2019. AC ¶¶ 188, 216. Mercer was thus a "party in interest" because it was already providing services to the Plan at the time of the challenged conduct.

This claim is not time barred as Mercer contends. Each time it received a commission payment or provided services, there was a transaction involving an exchange of property, services, or plan assets as described in § 1106(a). AC ¶¶ 314–16. Mercer received such payments at least through 2021, well within six years of the December 23, 2025 complaint. AC ¶ 188; *see* ECF 1; 29 U.S.C. § 1113(1).

### B.      Plaintiffs plausibly allege breach of fiduciary duty.

ERISA's fiduciary duties must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Because this duty is derived from trust law, "courts often must look to the law of trusts" to determine "the contours of an ERISA fiduciary's duty." *Tibble*, 575 U.S. at 528–29. ERISA's duty of prudence thus incorporates a trust-law duty of "cost-conscious management," because "[w]asting beneficiaries' money is imprudent." *Tibble v. Edison Int'l*, 843 F.3d at 1197–98 (quoting RESTATEMENT (THIRD) OF TRUSTS § 90, cmt. b, and Unif. Prudent Investor Act § 7). "The duty to be cost conscious requires attention to such matters as the cumulation of fiduciary commissions with agent fees[.]" RESTATEMENT (THIRD) OF TRUSTS, § Scope. ERISA fiduciaries must "understand and monitor plan expenses" and "should be vigilant in 'negotiation of the specific formula and methodology" used to pay service providers—even when such payments are made by a third party such as a mutual fund ("revenue sharing"). *Sweda v. Univ. of Pa.,* 923 F.3d 320, 328–29 (3d Cir. 2019) (quoting DOL Advisory Opinion 2013-03A, 2013 ERISA LEXIS 3, 2013 WL 3546834, at *4 (July 3, 2013)).

ERISA fiduciaries breach their duties "by failing to monitor and control" service provider compensation. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (affirming trial judgment); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1132–34 (D. Colo. 2020) (trial judgment). Plan participants state a claim for unreasonable service provider fees based on allegations that fiduciaries "failed to solicit bids from service providers, failed to monitor revenue sharing," and "failed to leverage the Plan's size to obtain lower fees or rebates." *Sweda*, 923 F.3d at 331–32; *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 685 (D. Conn. 2018).

Here, the Plan paid broker commissions of approximately 40% over the six-year class period—four times higher than the industry-standard commission rate of 10%. AC ¶¶ 165–68, 172–73. Plaintiffs show that numerous substantially similar plans paid far lower commissions. AC ¶¶ 188–211. That the Plan's commissions far exceeded those of comparable plans for the same services shows that Defendants failed to leverage "the power the trust wields" to reduce fees. *Tibble*, 843 F.3d at 1198. Although Defendants criticize Plaintiffs for not "directly" alleging how the "fiduciary process" was flawed (Allied Mem. 5, 18), that is not required at this stage. *Braden*, 588 F.3d at 596; *Sweda*, 923 F.3d at 332. The circumstantial allegations that the Plan's fees were multiples higher than comparable plans raise a reasonable inference that Defendants had a "flawed" process for monitoring broker commissions and that a prudent fiduciary would have acted differently. *PBGC*, 712 F.3d at 718, 720; *Braden*, 588 F.3d at 596; *Sweda*, 923 F.3d at 332. Plaintiffs' allegations provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of" liability. *Lynch*, 952 F.3d at 75. Plaintiffs, accordingly, plausibly allege a fiduciary breach.

Defendants simply dispute the facts, including by improper arguments based on extrinsic evidence that is subject to exclusion under Rule 12(d). *See supra*, Part I, pp. 8–9. Defendants'

assertion that the court should look at total premiums only while ignoring commissions is flawed for reasons stated in Plaintiffs' concurrent Rule 12(b)(1) opposition. *See* Opp. at 18–19 (ECF 99). In that regard, Mercer misstates the Seventh Circuit's holding in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), which stated that "[t]he total fee" was the relevant metric in the context of a *misrepresentation* claim, reasoning that investors would not find "omission" of "information" regarding the various fee components to be "material." *Id.* at 586. Neither *Hecker* nor any other case suggests that an *excessive* fee component that has the *effect* of driving up the *total fee*, as here, would be immaterial to a claim of loss from a breach of fiduciary duty.

Defendants further assert that the rates paid by comparator plans are "meaningless" unless Plaintiffs allege a slew of specific details to show that the comparators are a "meaningful benchmark." Mercer Mem. 27–28 (citing *Singh v. Deloitte LLP*, 123 F.4th 88 (2d Cir. 2024)). *Singh* rejected allegations that a 401(k) plan's fees were unreasonable because the services at issue varied in quality and the plaintiffs did not allege that the comparator plans received the same scope of services. *Id.* at 94–98. Here the relevant service—cash payments for specified events—would have been materially identical across providers. *Cf. Forman v. TriHealth, Inc.*, 40 F.4th 443, 451 (6th Cir. 2022) (key is whether "sufficient parallels" are apparent from context). Thus, the "detailed factual allegations" that Defendants seek go far beyond what Rule 8(a)(2) requires for a plausible claim. *Keiler*, 751 F.3d at 70.

### C.    Plaintiffs plausibly allege prohibited transactions.

Subject to certain exemptions, ERISA prohibits: (1) transactions between a plan and a "party in interest," 29 U.S.C. § 1106(a)(1), and (2) transactions between a plan and a fiduciary, *id.* § 1106(b). ERISA prohibits the "sale or exchange, or leasing, of any property between the plan and a party in interest," 29 U.S.C. § 1106(a)(1)(A), the "furnishing of goods, services, or facilities between the plan and party in interest," 29 U.S.C. § 1106(a)(1)(C), and "transfer to, or use by or

23

for the benefit of a party in interest, of any assets of the plan[.]" 29 U.S.C. § 1106 (a)(1)(D). "Any transaction" that satisfies the §1106 elements is "presumptively unlawful." *Cunningham*, 604 U.S. at 700.

Defendants' argument that Plaintiffs have not plausibly alleged prohibited transactions fail in part for the reasons discussed *supra* in Part II.A.3, p. 20. Moreover, allegations that a party-in-interest received excessive compensation that "far exceeded" reasonable compensation for "services rendered to the Plan" state a plausible violation of §1106(a)(1)(C). *Braden*, 588 F.3d at 601 & n.9. Here, Lockton and Mercer meet the definition of "party in interest" because they provided services to the Plan. 29 U.S.C. § 1002(14)(B).

Plaintiffs allege that by selecting and retaining the broker Defendants, Allied caused the Plan to engage in a transaction constituting an "exchange . . . of . . . property" between the Plan and a party in interest. 29 U.S.C. § 1106(a)(1)(A); AC ¶¶ 265–67. By selecting and retaining Mercer and Lockton as the brokers for the voluntary benefits insurance, and by causing Plan assets to be transferred to the insurance carrier as payment for the purpose of paying Mercer and Lockton's commissions, Allied caused the plan to engage in transactions with Mercer and Lockton constituting "furnishing of goods, services, or facilities between the plan and party in interest[.]" 29 U.S.C. § 1106(a)(1)(C). Further, by selecting and retaining Mercer and Lockton as brokers for the at-issue insurance, and by causing Plan assets to be transferred to the brokers as payment for premiums and/or commissions, Allied caused the Plan to engage in transactions constituting "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]" 29 U.S.C. § 1106 (a)(1)(D); AC ¶ 267.

Separately, under 29 U.S.C. § 1106(b), fiduciaries are prohibited from engaging in self-dealing with Plan assets. Section 1106(b) prohibits fiduciaries from (1) dealing with plan assets in

their own interest, (2) acting adversely to plan interests, and (3) receiving personal consideration in connection with plan transactions. Because Lockton and Mercer were fiduciaries, *see supra* Part II.A.2, by collecting excessive commissions, they dealt with assets of the Plan in their own interests and received consideration for their own personal account in connection with a transaction involving Plan assets, in violation of 29 U.S.C. § 1106(b).

Defendants' assertion that commissions were not paid from plan assets is incorrect. Employee contributions to a plan constitute plan assets. *See Hi-Lex Controls, Inc. v. Blue Cross Blue Shield*, 751 F.3d 740, 745 (6th Cir. 2014) ("Department of Labor regulations state that employee contributions constitute plan assets under ERISA once they are 'segregated from the employer's general assets.'" (quoting 29 C.F.R. § 2510.3-102(a)(1))); *Trs. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-0884, 2009 U.S. Dist. LEXIS 101778, at *6 (E.D.N.Y. Sept. 25, 2009) ("The employees' contributions to the plan became plan assets when the contributions were withheld from the employees' wages."). Employee premium contributions withheld from employee paychecks are plan assets, "even though the contributions have not actually been delivered to the benefit plan." *Hammer v. Johnson Senior Ctr*., Inc., No. 6:19-cv-00027, 2020 U.S. Dist. LEXIS 223169, at *25 (W.D. Va. Nov. 30, 2020).

Premium dollars derived from participants' wage withholdings are additionally plan assets because ERISA looks to their purpose, beneficial ownership, and continued economic connection to the Plan, not merely their physical location. *See* U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993) (plan assets will "include any property, tangible or intangible, in which the plan has a beneficial ownership interest," considering "any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved[.]"). Plaintiffs allege that Allied held funds that were withheld from employee paychecks, before remitting them for the

25

contractual purpose, among other things, of paying for commissions. AC ¶ 146. At the time they were transferred to Aflac, a portion of the funds were already earmarked for commission payments. Defendants cannot whitewash improper payments merely by channeling them through a third party. *See Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209, 1220 (2d Cir. 1987) (parties cannot avoid prohibited transaction liability through "shell-game-like maneuvers"). The funds at issue, accordingly, are plan assets. *Trs. of the Rd. Carriers Local 707 Welfare Fund*, 2009 U.S. Dist. LEXIS 101778, at *6.

In any event, Defendants' plan asset arguments are inapplicable to transactions under 29 U.S.C. § 1106(a)(1)(A) and (C), which contain no such requirement.  *See supra*, p. 20. Lockton's assertion that it "cannot have engaged in a prohibited transaction merely by accepting payment for services," moreover, is contrary to *Cunningham*, 604 U.S. at 709.

Finally, Allied's argument (at 24–25) that the Amended Complaint establishes an affirmative defense by affirmatively alleging that fees were within a "reasonable" range mischaracterizes the facts. Plaintiffs repeatedly allege that the Plan's commissions were excessive and "unreasonable" because they were *four times higher* than a reasonable fee. AC ¶¶ 3, 7, 165–68, 172. As to the cited range of commissions, Allied ignores Plaintiffs' allegation that the range is "large because it includes outliers like Mercer and Lockton, which charge unreasonably high commissions." AC ¶ 97.  Under no reasonable reading of the complaint does it affirmatively allege reasonable fees to establish a defense under 29 U.S.C. § 1108(b)(2).

### CONCLUSION

The Court should deny Defendants' Rule 12(b)(6) motions.[7]

---

[7] While Plaintiffs' existing allegations are sufficient, Defendants' request for a dismissal with prejudice is improper for the reasons discussed. *See supra*, p.2.

May 29, 2026

Respectfully submitted,

/s/ Andrew D. Schlichter
Andrew D. Schlichter, Bar No. 4403267
Alexander L. Braitberg (*pro hac vice*)
Patrick R. Kutz (*pro hac vice*)
Kaitlin Minkler (*pro hac vice*)
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-5934 (fax)
aschlichter@uselaws.com
abraitberg@uselaws.com
pkutz@uselaws.com
kminkler@uselaws.com

Ruben R. Chapa (*pro hac vice*)
SCHLICHTER BOGARD LLC
33 North Dearborn Street, Suite 1170
Chicago, IL 60602
(630) 919-9301
(314) 621-5934 (fax)
rchapa@uselaws.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(c), I hereby certify that this brief complies with the word limit established by this Court. This brief contains exactly 8,527 words, as counted by Microsoft Word, the processing program used to prepare the document. In accordance with Rule 7.1(c), this word count excludes the caption, table of contents, table of authorities, signature blocks, and required certificate.

/s/ Andrew D. Schlichter
Andrew D. Schlichter

27