**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

SABRINA FELLOWS, EDMUND LYNN III, DONNA PATTON, WESLEY HALL, and NINA BUSTAMANTE-VICARIO, Individually and as Representatives of a Class of Participants and Beneficiaries on Behalf of the ALLIED UNIVERSAL HEALTH AND WELFARE BENEFIT PLAN,

        Plaintiffs,

        v.

UNIVERSAL SERVICES OF AMERICA, LP d/b/a ALLIED UNIVERSAL, ALLIED UNIVERSAL EMPLOYEE BENEFITS COMMITTEE, MERCER HEALTH AND BENEFITS ADMINISTRATION, LLC, LOCKTON COMPANIES, LLC, and JOHN DOES 1–20,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No.

1:25-cv-10659-GHW-BCM

------------------------------------------------------- X

**MERCER HEALTH AND BENEFITS, LLC'S REPLY**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    The Opposition Does Not Refute That Plaintiffs Fail to Plead a Breach. ..... 2

    A.    Plaintiffs Are Not Subject to Any Lessened Pleading Burden. ............ 2

    B.    Plaintiffs Fail to Plausibly Allege *Any* Overpayments. ........................ 2

    C.    The Court Can and Should Consider Forms 5500 upon Which the AC Relies. ................................................................................................... 5

II.   The Opposition Confirms that Plaintiffs Fail to Allege Mercer's Fiduciary Liability. ....................................................................................................... 7

    A.    Plaintiffs' Authorities Demonstrate That Fiduciary Status Arises from Final Decision-Making Authority That Plaintiffs Do Not Plead as to Mercer. ................................................................................................ 7

    B.    The Opposition Cites No Non-Conclusory Allegations About Mercer's Fiduciary Status, Because There Are None. ......................................... 8

    C.    The Opposition Does Not Offer a Viable Non-Fiduciary Theory of Liability as to Mercer. .......................................................................... 8

III.  Plaintiffs Fail to Resuscitate Their Prohibited Transaction Claims, Which Regurgitate the Statute Rather than Allege Facts. ...................................... 10

    A.    Plaintiffs' Cursory Response to Mercer's Statute-of-Limitations Argument Cites No Supporting Authority. ......................................... 10

    B.    *Cunningham* Did Not Change the Meaning of "Party in Interest.".... 12

    C.    Premiums Are Not Plan Assets once Paid to the Insurer. ................... 13

IV.   The AC Should Be Dismissed with Prejudice. .......................................... 15

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Access Servs. of N. Ill. v. Capitol Adm'rs, Inc.*,
  2021 WL 780483 (N.D. Ill. Mar. 1, 2021) ...........................................................7

*Baines v. Nature's Bounty (NY), Inc.*,
  2023 WL 8538172 (2d Cir. Dec. 11, 2023) .......................................................15

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*,
  2024 WL 2815980 (S.D.N.Y. May 31, 2024) ......................................................9

*Cassell v. Vanderbilt Univ.*,
  285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ...........................................................11

*Cunningham v. Cornell Univ.*,
  604 U.S. 693 (2025)..............................................................................................12

*D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*,
  88 F.4th 602 (5th Cir. 2023) ...........................................................................11, 12

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016) .................................................................................5

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
  608 U.S. __, 2026 WL 1593307 (2026) ...........................................................4, 14

*Lowen v. Tower Asset Mgmt., Inc.*,
  829 F.2d 1209 (1987)............................................................................................14

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
  898 F.3d 243 (2d Cir. 2018) .................................................................................15

*Singh v. Deloitte LLP*,
  123 F.4th 88 (2d Cir. 2024) ...................................................................................5

*Singh v. Deloitte LLP*,
  650 F. Supp. 3d 259 (S.D.N.Y. 2023) ................................................................5, 6

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret.
  Plan v. Morgan Stanley Inv. Mgmt, Inc.*,
  712 F.3d 705 (2d Cir. 2013) ...................................................................................2

*Teets v. Great-West Life & Annuity Ins. Co.*,
    919 F.3d 1232 (10th Cir. 2019) ...............................................................7

*Teets v. Great-West Life & Annuity Ins. Co.*,
    921 F.3d 1200 (10th Cir. 2019) ...............................................................7

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017).........................................11

**Statutes**

ERISA § 3(14)(B); 29 U.S.C. § 1002(14)(B)..........................................12

ERISA § 406(a); 29 U.S.C. § 1106(a) ................................10, 11, 12, 13

ERISA § 406(b); 29 U.S.C. § 1106(b)..............................................13, 15

ERISA § 408(b)(2)(A); 29 U.S.C. § 1108(b)(2)(A) ................................12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ...........................................1, 15

Federal Rule of Civil Procedure 12(b)(6) ...........................................1, 15

U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993) .............14

iv

## INTRODUCTION

Plaintiffs' Opposition[1] confirms what the Amended Complaint ("AC") already exposed:  This case is a generalized assault on all broker commissions. Plaintiffs concede that the commissions they challenge are paid by the insurer (Aflac), *not* by Plaintiffs.  And Plaintiffs do not come close to plausibly alleging that their premiums—the amounts *Plaintiffs* actually paid—were higher than comparable alternatives.  Instead, they divert the Court's attention to rates of commissions paid to brokers in connection with other, unrelated plans.  But absent any factual allegation supporting the inference that lower commissions lead to lower premiums, Plaintiffs' commissions allegations are irrelevant to their claims.  The Opposition does nothing more than ask the Court to credit unsupported theories and ignore documents incorporated into the AC that negate the very inferences Plaintiffs ask the Court to draw.  Plaintiffs have not plausibly alleged that they paid excessive premiums sufficient to demonstrate Article III standing or to state a claim for relief. The AC should be dismissed with prejudice under Rule 12(b)(6) or without leave to replead under Rule 12(b)(1).

---

[1] This Reply refers to Plaintiffs' Opposition to Defendants' Rule 12(b)(6) Motions, ECF No. 100, as the "12(b)(6) Opp." Mercer focuses on the Rule 12(b)(6) arguments here and joins and incorporates the Rule 12(b)(1) arguments—as well as the additional Rule 12(b)(6) arguments—in Allied's and Lockton's Replies.

## ARGUMENT

**I.    The Opposition Does Not Refute That Plaintiffs Fail to Plead a Breach.**

**A.    Plaintiffs Are Not Subject to Any Lessened Pleading Burden.**

Plaintiffs argue that they should be relieved of their pleading burden because they do not possess facts about Defendants' "fiduciary[] methods."  12(b)(6) Opp. 17 (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt, Inc.*, 712 F.3d 705, 719-20 (2d Cir. 2013) ("*PBGC*")). But *PBGC* confirms that ERISA fiduciary claims are subject to the standard pleading burdens, because "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the [defendant] to probing and costly inquiries and document requests about its methods and knowledge at the relevant times." *Id.* at 719.  Like all ERISA plaintiffs, Plaintiffs here must support their fiduciary-breach claims with "sufficient, nonconclusory factual allegations." *Id.* at 709.  Absent direct facts demonstrating an imprudent fiduciary process (which Plaintiffs concede they lack), they must allege facts from which the court can "reasonably infer … that the process was flawed." *Id.* at 718.  They fail to do so.

**B.    Plaintiffs Fail to Plausibly Allege *Any* Overpayments.**

Plaintiffs' fiduciary-breach theory rests on what Plaintiffs describe as "circumstantial allegations that the Plan's fees were multiples higher than comparable plans," which Plaintiffs contend raise an "inference that Defendants had

2

a 'flawed' process."  12(b)(6) Opp. 22.  Yet Plaintiffs never allege that they paid any more than participants in comparable plans.  *See* Mercer Mem. 21-29.[2]

Plaintiffs obfuscate by conflating their allegations about the premiums *they* paid and the commissions *Aflac* paid.  The Opposition affirms that Plaintiffs' case is about "excessive premiums." 12(b)(6) Opp. 1.  Plaintiffs do not dispute that it is the premiums that reflect Plaintiffs' total costs.  Plaintiffs also acknowledge that an imprudent fee claim must be supported by comparison to a "meaningful benchmark." *Id*. 22-23.  Yet Plaintiffs cannot and do not refute that the AC does not compare the Plan's premiums with those of any comparable plan to support such claim.  *Nothing* in the AC alleges that comparable insurance options were available for lower premiums.

Instead, Plaintiffs direct the Court only to their allegations that "40% of the [Plan's] premiums was earmarked as a broker commission," and that brokers for other plans received lower commission rates.  12(b)(6) Opp. 1, 22.  But neither the AC nor the Opposition demonstrates any relationship between broker commissions and participants' premiums—here, or in any plan—sufficient to support Plaintiffs' excessive-premium claim.

For one thing, Plaintiffs purport to plead comparator plans with lower

---

[2] "Mercer Mem." and "Allied Mem." refer to each Defendant's memorandum in support of its motion to dismiss:  ECF No. 76 and ECF No. 73, respectively.

commission rates, but fail to allege that such lower commissions resulted in lower premiums to participants. Pleading the commissions paid to brokers of other plans without pleading the associated premiums does not demonstrate that the commissions Aflac paid resulted in excessive premiums to Plaintiffs. And Plaintiffs ignore that a majority of their comparator plans had premiums that were *higher* than those of the Plan, negating the inference they ask the Court to draw of a direct correlation between commission rates and premiums. *See* Allied Mem. 12-22.

To illustrate, Plaintiffs' theory appears to be that prudence could only have been achieved here by selecting an insurance program that paid lower commissions to brokers. But had Allied selected the program utilized, for example, by The Dollar Tree Inc. Group Health Benefit Plan, which Plaintiffs allege generated average broker commissions of 10.7% (AC ¶ 192), its Plan would have paid higher premiums in 2024 ($424.13) than Plaintiffs paid ($205.63). *See* Doc. 74-53 (Reynolds Decl. Ex. AAA).[3]

As the Supreme Court recently reaffirmed, "well-established federal pleading standards" require plaintiffs to plead facts that allow the Court to "rule out obvious alternative explanations for the defendant's conduct." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. __, 2026 WL 1593307, at *6 (2026) (internal

---

[3] Even if commission comparators were relevant, Plaintiffs' references to a 10% "industry standard" commission rate (*e.g.*, 12(b)(6) Opp. 1; AC ¶ 172) lacks any supporting detail—much less enough to establish a "meaningful benchmark."

citations and quotations omitted).    ERISA is concerned with "total" costs to participants.  *Singh v. Deloitte LLP*, 123 F.4th 88, 95 (2d Cir. 2024); *see also* Mercer Mem. 25-26.  By failing to plead premium benchmarks, Plaintiffs fail to rule out the obvious alternative explanation here:  that Allied was focused on the total cost to participants, which Plaintiffs fail to allege was excessive.

### C.    The Court Can and Should Consider Forms 5500 upon Which the AC Relies.

Despite basing their fiduciary-breach claims on irrelevant Form 5500 data (about commissions) (AC ¶¶ 189-203), Plaintiffs now ask the Court to ignore the relevant information (about premiums) derived from the very same documents.  *See* 12(b)(6) Opp. 9-10.  The Court should reject Plaintiffs' gambit.

Plaintiffs' allegations about the commissions of comparator plans are based exclusively on data derived from publicly-available Forms 5500.  AC ¶¶ 189-203 (citing data from various Forms 5500).  But they omit key information from the Forms 5500—most critically, the data showing *premiums* participants in the comparator plans paid.  When, as here, plaintiffs rely on part of a document in their complaint, but "the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim," the court can and should consider such materials in deciding a motion to dismiss.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).  That is precisely what the court did in a highly analogous scenario in *Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 267 (S.D.N.Y. 2023).  There, plaintiffs relied

5

on Form 5500 data to plead fee comparisons to comparator plans. *Id.* Judge Koeltl thus held that the court could properly consider the full Form 5500 data in deciding a motion to dismiss, because the data was "incorporated by reference in the complaint." *Id.* at 267 n.3. Judge Koeltl then relied on the data in concluding that— just as here—plaintiffs' attempted "comparison is disingenuous," because it selectively cited the data available on the full Forms 5500. *Id.* at 267.

Here, Plaintiffs selectively cite Forms 5500 to paint an incomplete picture, when the full documents actually contradict Plaintiffs' theory. *Supra*, p. 4. Plaintiffs cannot on the one hand utilize Form 5500 data to form the entire factual basis for their excessive-premium claim, while on the other hand claim that the Court may not consider such data on Defendants' motions. If the Court will credit Plaintiffs' allegations at AC ¶¶ 188-203 based on Form 5500 data at all, it should consider the full documents.[4] Indeed, in cases challenging plan fees, Forms 5500 are routinely considered by courts at the motion to dismiss stage. *See* Allied Mem. 8.

---

[4] The Court can, of course, decide the Motions without referencing the Forms 5500, because Plaintiffs have not plausibly alleged any overpayment of premiums. *Supra*, pp. 2-5. Thus, Plaintiffs' use of "commission comparators" is irrelevant. But if the Court does consider those commission comparators based on Plaintiffs' theory that higher commissions must mean higher premiums, it should also consider the Form 5500 data that negate that correlation.

## II. The Opposition Confirms that Plaintiffs Fail to Allege Mercer's Fiduciary Liability.

No fiduciary breach is plausibly alleged. But even if it were, Plaintiffs' Opposition further confirms that Mercer is not liable for any breach.

### A. Plaintiffs' Authorities Demonstrate That Fiduciary Status Arises from Final Decision-Making Authority That Plaintiffs Do Not Plead as to Mercer.

In response to Mercer's extensive discussion (Mercer Mem. 10-21) of Plaintiffs' failure to plausibly allege Mercer's fiduciary status, Plaintiffs supply a one-page rebuttal that regurgitates inapposite cases cited in the AC. *See* 12(b)(6) Opp. 16-17. Those cases hold that exercising *final discretion* in choosing insurance options can render an entity a fiduciary. *Id.* (citing *Access Services*, *Eversole*, and *Day*). The Opposition does not refute that there are no such allegations here that Mercer exercised "final discretion in the choice of which insurance provider" to choose. *Access Servs. of N. Ill. v. Capitol Adm'rs, Inc.*, 2021 WL 780483, at *4 (N.D. Ill. Mar. 1, 2021); *see also* Mercer Mem. 14-15 (distinguishing Plaintiffs' cases). Plaintiffs' only new authority—*Teets v. Great-West Life & Annuity Ins. Co.*, 919 F.3d 1232 (10th Cir. 2019) (cited 12(b)(6) Opp. 17)—was superseded by panel rehearing, which *rejected* a claim that a service provider lacking "discretion or control over its compensation" is a functional fiduciary. *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1220 (10th Cir. 2019).

7

In short, the Opposition's authority only confirms that, unless a broker exercises final decision-making authority, it is *not* a fiduciary under ERISA.

**B.    The Opposition Cites No Non-Conclusory Allegations About Mercer's Fiduciary Status, Because There Are None.**

Nothing in the AC alleges in a non-conclusory manner that Mercer exercised the requisite decision-making authority to render it a fiduciary. *See* Mercer Mem. 10-21. Plaintiffs use the word "selection" to describe Mercer's conduct, but that conclusory phrase must be read in context to mean selecting which options to present to the decisionmaker, since Plaintiffs claim that Mercer's job was to provide information to Allied about its options so that Allied could "select[] a specific insurer." See 12(b)(6) Opp. 15, 23-24. While Plaintiffs attempt to add details about the Lockton-Allied agreement "to counter anticipated defense arguments that factual allegations without additional support should be discarded as 'conclusory,'" they have now expressly declined do the same for Mercer. 12(b)(6) Opp. 10. Thus, Plaintiffs' bare-bones allegations about Mercer's fiduciary status should be discarded as the conclusory allegations they are.

**C.    The Opposition Does Not Offer a Viable Non-Fiduciary Theory of Liability as to Mercer.**

Given their failure to establish Mercer's fiduciary status, Plaintiffs instead try to hold Mercer liable as a *non*-fiduciary. But non-fiduciary liability is far narrower

8

than Plaintiffs suggest.    Plaintiffs' theory would render fiduciary status—the threshold requirement in every fiduciary-breach claim—entirely irrelevant.

Plaintiffs' theory turns on a single, unpublished district court decision that *no* other court has ever cited, let alone extended.  *See Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, 2024 WL 2815980 (S.D.N.Y. May 31, 2024).  Even if this Court were to follow *Carfora*, the case is readily distinguishable.  There, the claimed breach was that plan sponsors failed to investigate a service provider's (TIAA's) cross-selling practices, whereby TIAA used tactics that were allegedly "misleading and fraught with conflicts of interest" to pressure participants to purchase additional, high-fee services.  *Id.* at *2-3.  In concluding that TIAA had "knowingly participated" in the sponsors' breach, *Carfora* emphasized that plaintiffs had alleged TIAA was "the instigator of" the challenged activity, and that it had "*caused* the Plan Sponsors to engage in such behavior in the first place."  *Id.* at *3, 9 (emphasis added).

The allegations here are nothing like those in *Carfora*.  Whereas the *Carfora* plaintiffs alleged TIAA was deriving revenue unknown to the plan sponsors responsible for overseeing TIAA's compensation, none of Plaintiffs' allegations suggest that Mercer hid its commissions from Allied, that Allied failed to identify the commissions, or that it failed to oversee its broker arrangements.  To the contrary, Plaintiffs plead that Allied *was* aware of Mercer's commissions and specifically

9

reported them in its regulatory filings, and that it changed brokers during the putative class period.  AC ¶¶ 125, 188.

Plaintiffs' attempt to extend *Carfora* here would vastly expand the narrow category of situations in which non-fiduciaries may be liable for fiduciary breaches. Their theory is that Mercer "knowingly participated" in Allied's purported failure to monitor and control Mercer's (fully-disclosed) commissions simply because Mercer did not negotiate against itself and reduce its commissions on its own.  That theory finds no support in the caselaw.  And it runs directly counter to the long line of cases establishing that service providers do *not* have fiduciary duties with respect to the negotiation of their own compensation.  *See* Mercer Mem. 16-21.

### III.   Plaintiffs Fail to Resuscitate Their Prohibited Transaction Claims, Which Regurgitate the Statute Rather than Allege Facts.

#### A.    Plaintiffs' Cursory Response to Mercer's Statute-of-Limitations Argument Cites No Supporting Authority.

To start, Plaintiffs essentially throw in the towel with their two-sentence response to Mercer's argument that Count VIII is untimely.  *See* 12(b)(6) Opp. 28. Plaintiffs do not contest that any and all broker agreements between Mercer and Allied were formed *outside* the limitations period.  *See* Mercer Mem. 35-36 (making this argument); 12(b)(6) Opp. 21 (not contesting this fact).  Nor do Plaintiffs grapple with the fact that Section 406(a) claims require a "transaction," which means an "affirmative act."  Mercer Mem. 36 (citing *David v. Alphin*, 704 F.3d 327, 340 (4th

10

Cir. 2013)).   Instead, Plaintiffs suggest that Mercer's receipt of commission payments "at least through 2021" renders Count VIII timely.  12(b)(6) Opp. 21.  But their Opposition offers no authority for that assertion, and caselaw says the opposite.

"[T]he collection of a contractually determined fee is not a 'transaction' under § 1106(a)." *D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 612 (5th Cir. 2023).  Section 406(a)'s "transaction" definition "refers to the establishment of rights and obligations between parties—not the payment of funds pursuant to an existing agreement." *Id.*; *see also White v. Chevron Corp.*, 2017 WL 2352137, at *22 (N.D. Cal. May 31, 2017) ("[A] violation of § 1106 occurs when a fiduciary takes a particular action with respect to a Plan…. [T]here is no such thing as a 'continuing' prohibited transaction—as the plain meaning of 'transaction' is that it is a point-in-time event."); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1068 (M.D. Tenn. 2018) ("[A] decision to continue certain investments, or a defendant's failure to act, cannot constitute a 'transaction' for purposes of the 'prohibited transactions' in 29 U.S.C. § 1106.").   It is thus unsurprising that Plaintiffs cite *zero* cases for their bare-bones theory—it is simply inconsistent with Section 406.

Plaintiffs' two-sentence, non-substantive response does not save Count VIII, which should be dismissed with prejudice as time-barred.

11

**B.**     *Cunningham* **Did Not Change the Meaning of "Party in Interest."**

Count VIII also fails because Plaintiffs do not plausibly allege that Mercer was a party in interest at the time of the relevant "transaction"—the negotiation of its broker agreement with Allied.  *See* Mercer Mem. 34-35.  Section 406(a) only applies to a transaction with a "party in interest," and courts have held that a service provider is not a party in interest when it negotiates its contract, even if it becomes one later.  *Id.*

Plaintiffs respond that "[i]t is doubtful such a requirement remains good law after *Cunningham*, as nothing in § 1106(a) or the relevant 'party in interest' definition … requires a preexisting relationship."  12(b)(6) Opp. 20.  (citing *Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025)).  But *Cunningham* merely interprets the relationship between ERISA §§ 406(a) and 408(b)(2)(A).  604 U.S. at 695.  Nothing in the case even purports to interpret preexisting relationships and the party-in-interest definition in 29 U.S.C. § 1002(14)(B).  There is no reason to conclude that *Cunningham* abrogates existing law interpreting § 1002(14)(B) to require a pre-existing relationship between a plan and a potential service provider.  *See D.L. Markham*, 88 F.4th at 610 (interpreting plain text of § 1002(14)(B)).

Plaintiffs' only other retort is that Mercer received commissions during the class period.  12(b)(6) Opp. 20-21.  But again, that is not the question.  Section 406(a) requires a "transaction," and so the relevant question is whether Mercer was a "party

12

in interest" at the time of an alleged transaction. Receiving funds under an existing agreement is not a "transaction." *See supra*, pp. 10-11. And Plaintiffs nowhere allege that Mercer was a service provider of the Plan when entering into an agreement or other qualifying Section 406(a) "transaction" within the class period. That failure is independently fatal to Count VIII.

### C.     Premiums Are Not Plan Assets once Paid to the Insurer.

Plaintiffs do not dispute that their Section 406(b) claim in Count IV applies only to transactions involving "plan assets." 12(b)(6) Opp. 24-25. Plaintiffs contend that premiums paid to the insurer (Aflac) were plan assets even after the insurer collected those payments and remained plan assets even as Aflac paid commissions to Mercer out of Aflac's general assets. *Id.* at 24-26. That is wrong, and unsupported by their authorities. Cases stating that employee contributions are plan assets when they are withheld from employees' wages and held in trust for participants (12(b)(6) Opp. 25) do not speak to status of an insurer's own assets used to pay broker commissions.

Plaintiffs contend that if a portion of funds are "earmarked" for commission payments, then they remain plan assets even in the insurer's hands. *See* 12(b)(6) Opp. 26. But Plaintiffs supply no authorities saying that premium payments are "plan assets" in the insurer's hands simply because the insurer pays commissions. The case that Plaintiffs cite as support provides no support at all. It simply says that

13

fiduciaries may not avoid fiduciary liability by creating shell companies to shield themselves. *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1217-18 (1987). That is irrelevant here. And it is, frankly, absurd for Plaintiffs to suggest that the standard and well-accepted practice of paying premiums to an insurer is an attempt to "whitewash" funds or engage in "shell-game-like maneuvers." 12(b)(6) Opp. 26. The Supreme Court recently rejected a plaintiff's attempt to "turn[] adherence to the law and industry standards into building blocks for illegal conduct," just as Plaintiffs try to do here. *See Hikma*, 608 U.S. __, 2026 WL 1593307, at *6.

Plaintiffs never address Mercer's authorities confirming that premiums paid to an insurer are *not* plan assets once in the insurer's hands. *See* Mercer Mem. 17-18. Instead, Plaintiffs cite an inapposite DOL Advisory Opinion that speaks only to assets held in a plan trust "for the exclusive purpose of providing group medical insurance coverage to participants"—which is not relevant here. U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993) (cited at 12(b)(6) Opp. 25). Here, premium payments to an insurance company became part of the insurer's general assets and are not assets of the plan. *See* Mercer Mem. 17-18 (citing cases).

Plaintiffs' theory is not only legally wrong but practically unworkable. If premium payments were plan assets in insurer's hands, insurers would be subject to fiduciary duties for how they used those funds; they would be constrained from using the funds for ordinary business expenses. That makes no sense, and Plaintiffs offer

14

no supporting authority.  Because Mercer's commissions were not paid from "plan assets," Plaintiffs' Section 406(b) claim in Count IV based on a misuse of plan assets fails.

## IV.    The AC Should Be Dismissed with Prejudice.

Plaintiffs urge that even if the Court dismisses their AC for failure to state a claim, it should do so without prejudice.  However, Plaintiffs had the benefit of Defendants' fully-briefed motions to dismiss when they drafted their AC, yet rather than correcting the defects identified in the motions, Plaintiffs chose to file a nearly identical pleading to their original one—forcing all parties to endure *another* round of briefing on identical deficiencies.  "[A] busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."  *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018).  The Second Circuit has affirmed denials of leave to amend where plaintiffs were placed on notice of pleading defects by just pre-motion letters.  *See Baines v. Nature's Bounty (NY), Inc.*, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023).  Dismissal with prejudice is similarly warranted here.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice under Rule 12(b)(6) or without leave to replead under Rule 12(b)(1).

Dated:  June 12, 2026                    Respectfully Submitted,

*/s/ Alison V. Douglass*
Alison V. Douglass, *admitted pro hac vice*
James O. Fleckner, *admitted pro hac vice*
Katherine G. McKenney, *admitted pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
ADouglass@goodwinlaw.com
JFleckner@goodwinlaw.com
KMcKenney@goodwinlaw.com

Samuel J. Rubin
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
SRubin@goodwinlaw.com

*Attorneys for Defendant Mercer Health*
*and Benefits Administration, LLC*

16

**CERTIFICATION OF WORD COUNT**

Pursuant to Local Rule 7.1(c), the undersigned certifies that the above Memorandum contains a total of 3,500 words, measured by Microsoft Office Word.

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Alison V. Douglass*
Alison V. Douglass

17