**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SABRINA FELLOWS, EDMUND LYNN III, DONNA PATTON, WESLEY HALL, and NINA BUSTAMANTE-VICARIO, individually and as representatives of a class of participants and beneficiaries on behalf of the ALLIED UNIVERSAL HEALTH AND WELFARE BENEFIT PLAN,

                Plaintiffs,

v.

UNIVERSAL SERVICES OF AMERICA, LP d/b/a ALLIED UNIVERSAL, ALLIED UNIVERSAL EMPLOYEE BENEFITS COMMITTEE, MERCER HEALTH AND BENEFITS ADMINISTRATION, LLC, LOCKTON COMPANIES, LLC, and JOHN DOES 1–20,

                Defendants.

No. 1:25-cv-10659-GHW-BCM

**DEFENDANT LOCKTON COMPANIES, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 1

I.      PLAINTIFFS LACK ARTICLE III STANDING TO PURSUE THEIR CLAIMS
AGAINST LOCKTON ..................................................................................................... 1

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST LOCKTON
UNDER RULE 12(B)(6) ................................................................................................ 5

      A.    The Agreement Is Properly Before the Court and Negates Fiduciary Status ................. 5

      B.    Plaintiffs' Conclusory "Functional Fiduciary" Allegations Fail Under *Iqbal* ............... 6

      C.    Plaintiffs Plead No Flawed Process or Meaningful Comparators (Count I) .................. 8

      D.    Causation Independently Defeats Plaintiffs' Fiduciary Breach Claim .......................... 8

      E.    The Prohibited-Transaction Claim Fails (Count V) ......................................................... 9

      F.    The Knowing-Participation Claims Fail (Counts VII and IX) ...................................... 10

      G.    Plaintiffs Cannot Obtain the Monetary Relief They Seek Against a
Non-Fiduciary ................................................................................................................... 11

CONCLUSION ......................................................................................................................... 12

ii

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Access Servs. of N. Ill. v. Capitol Adm'rs, Inc.*,
2021 WL 780483 (N.D. Ill. Mar. 1, 2021)...................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................6

*Carfora v. Teachers Ins. Annuity Ass'n of Am.*,
2024 WL 2815980 (S.D.N.Y. May 31, 2024) .........................................................................11

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016).......................................................................................................3

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)......................................................................................................6

*Chao v. Day*,
436 F.3d 234 (D.C. Cir. 2006) ..................................................................................................7

*Collins v. Ne. Grocery*, *Inc.*,
2025 WL 2383710 (2d Cir. Aug. 18 2025)................................................................................9

*D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*,
88 F.4th 602 (5th Cir. 2023) ....................................................................................................10

*Danza v. Fid. Mgmt. Tr. Co.*,
533 F. App'x 120 (3d Cir. 2013) .............................................................................................10

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ..........................................................................................4, 9, 11

*F.H. Krear & Co. v. Nineteen Named Trs.*,
810 F.2d 1250 (2d Cir. 1987)....................................................................................................7

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)......................................................................................................6

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
858 F. App'x 432 (2d Cir. 2021) ..............................................................................................2

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000)...........................................................................................................10, 11

*Harry v. Total Gas & Power N. Am., Inc.*,
    244 F. Supp. 3d 402 (S.D.N.Y. 2017)..................................................................2

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*,
    751 F.3d 740 (6th Cir. 2014) ............................................................................9

*Horvath v. Keystone Health Plan E., Inc.*,
    333 F.3d 450 (3d Cir. 2003)..............................................................................4

*Krukas v. AARP, Inc.*,
    2021 WL 5083443 (D.D.C. Nov. 2, 2021) ........................................................5

*Lewandowski v. Johnson & Johnson*,
    2025 WL 3296009 (D.N.J. Nov. 26, 2025) ........................................................4

*Lowen v. Tower Asset Mgmt.*,
    829 F.2d 1209 (2d Cir. 1987)............................................................................9

*Lujan v. Defs of Wildlife*,
    504 U.S. 555 (1992).........................................................................................1

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ............................................................................8

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)........................................................................................11

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*,
    577 U.S. 136 (2016)........................................................................................11

*Navarro v. Wells Fargo & Co.*,
    2026 WL 591454 (D. Minn. Mar. 3, 2026) ....................................................2, 4

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).......................................................................................6, 7

*Sacerdote v. New York University*,
    9 F.4th 95 (2d Cir. 2021) .................................................................................8

*Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Medical Centers Ret.
    Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)..............................................................................8

*Santomenno v. Transamerica Life Ins. Co.*,
    883 F.3d 833 (9th Cir. 2018) ............................................................................7

*Scott v. UnitedHealth Grp., Inc.*,
    540 F. Supp. 3d 857 (D. Minn. 2021)................................................................2

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
  547 U.S. 356 (2006)......................................................................................................11

*Singh v. Deloitte LLP*,
  123 F.4th 88 (2d Cir. 2024) ........................................................................................3, 8

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)........................................................................................................5

*Stern v. JPMorgan Chase & Co.*,
  2026 WL 654714 (S.D.N.Y. Mar. 9, 2026) .............................................................3, 4

*Teets v. Great-West Life & Annuity Ins. Co.*,
  921 F.3d 1200 (10th Cir. 2019) ....................................................................................7

*Thole v. U.S. Bank, N.A.*,
  590 U.S. 538 (2020)........................................................................................................2

*Trs. of Upstate N. Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
  843 F.3d 561 (2d Cir. 2016)........................................................................................10

*Walsh v. Vinoskey*,
  19 F.4th 672 (4th Cir. 2021) .......................................................................................11

*Winsor v. Sequoia Benefits & Ins. Srvs., LLC*,
  62 F.4th 517 (9th Cir. 2023) ......................................................................................2, 4

*XY Planning Network, LLC v. SEC*,
  963 F.3d 244 (2d Cir. 2020)..........................................................................................5

## Other Authorities

29 C.F.R. § 2510.3-102.......................................................................................................9

29 U.S.C. § 1110.................................................................................................................6

Dep't of Labor, Advisory Opinion Letter 1993-14A (May 5, 1993)..............................9

Fed. R. Civ. P. 12 ...........................................................................................................1, 5

**PRELIMINARY STATEMENT**

Plaintiffs' oppositions (Dkts. 99-100) ("Opp.") confirm that their claims against Lockton are fatally deficient.[1]  Plaintiffs recast their Article III theory as a "straightforward financial injury," yet do not dispute that participants paid premiums at or below their own comparators' rates.  Their "overpayment" theory thus identifies no overpayment traceable to Lockton or any other defendant.  That facial defect cannot be deferred to discovery.  On the merits, Plaintiffs' claims depend on discretionary authority the Agreement reserved to Allied; their prudence claim supplies no meaningful benchmark; and their knowing-participation theory—that Lockton "necessarily knew" Allied was allegedly not monitoring—is circular and would brand every well-compensated service provider a "knowing participant."  Lockton's motion should be granted in full and, on Rule 12(b)(6) grounds, with prejudice.[2]

**ARGUMENT**

**I.    PLAINTIFFS LACK ARTICLE III STANDING TO PURSUE THEIR CLAIMS AGAINST LOCKTON**

Plaintiffs bear the burden of plausibly alleging a concrete, particularized, non-speculative injury-in-fact traceable to Lockton and redressable by this Court.  *See Lujan v. Defs of Wildlife*, 504 U.S. 555, 560–61 (1992).  They have not done so.  Invoking the buzzword "overpayment" and calling a supposed "monetary injury" the "quintessential Article III injury" does not end the analysis.  Opp. (Dkt. 99) 1.  Plaintiffs' theory remains conjectural and contradicted by their own pleadings.

---

[1] Unless otherwise indicated, capitalized terms have the meaning given in Lockton's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint (Dkt. 82) ("Lockton Brief" or "Lockton Br.").

[2] Where appropriate, Lockton joins in and incorporates the arguments in Allied's and Mercer's concurrently filed replies (respectively, "Allied Rep. Br." and "Mercer Rep. Br.").

*First*, Plaintiffs do not dispute that they received the coverage and benefits for which they bargained.[3]  They contend that *Thole v. U.S. Bank, N.A.*, 590 U.S. 538 (2020) does not foreclose standing because the Program is a "welfare plan" rather than a "defined-benefit plan."  Opp. (Dkt. 99) 11-13.  That attacks a strawman.  Lockton never argued the Program is a statutory defined-benefit pension plan under 29 U.S.C. § 1002(35); the point was that VB group insurance is functionally analogous because participants receive fixed, contractually defined benefits regardless of plan asset value.  Lockton Br. 7.  The label is beside the point: "There is no ERISA exception to Article III."  *Thole*, 590 U.S. at 547.  Courts repeatedly apply *Thole* to welfare and health plans, rejecting Plaintiffs' distinction.  *See, e.g.*, *Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 858 F. App'x 432, 433 (2d Cir. 2021) (affirming dismissal for lack of Article III standing where health plan participants alleged misappropriation of plan funds but did not allege denial of any promised benefits); *Winsor v. Sequoia Benefits & Ins. Srvs., LLC*, 62 F.4th 517, 528-29 (9th Cir. 2023) (welfare program providing "a fixed set of benefits" defeats standing under *Thole*); *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 864 (D. Minn. 2021) (healthcare plans are "closely analogous to the defined-benefit plan at issue in *Thole*"); *Navarro v. Wells Fargo & Co.*, 2026 WL 591454, at *7 n.5 (D. Minn. Mar. 3, 2026) (rejecting the argument that welfare plans fall outside *Thole*).

*Second*, Plaintiffs do not dispute that the VB Program's premiums were *below or within* the range of their own selected comparators.  Participants who paid at or below the going rate for an allegedly materially identical product cannot plausibly allege an out-of-pocket loss.  *See Harry v. Total Gas & Power N. Am., Inc.*, 244 F. Supp. 3d 402, 415 n.5 (S.D.N.Y. 2017) (no injury-in-

---

[3]  Indeed, Plaintiffs contend that the benefits under any of their proposed comparator plans would have been "materially identical."  Opp. (Dkt. 100) 23.

2

fact without alleging that plaintiff "paid more than they should have. . .under the terms of a particular transaction") (citation modified).  Because premiums are the only cost participants paid, absent excessive premiums there can be no overpayment, however Aflac composed its expenses.[4]

*Third*, labeling the harm "economic" or "monetary" does not make it non-speculative.[5] Plaintiffs themselves allege that premiums "may rely on complex actuarial calculations," Compl. ¶ 205, yet plead *no* facts showing that: (1) Lockton could lower commissions paid by Aflac; (2) Aflac would have reduced premiums if commissions were lower; (3) any reduction would reach participants; or (4) Aflac would have provided the insurance at all at the commission level Plaintiffs deem "reasonable."  Opp. (Dkt. 99) 2.  To the contrary, Plaintiffs' own pleading refutes any correlation: As commissions declined as a percentage of premiums, total premiums rose.[6]  Compl. ¶ 188; Lockton Br. 9-10.  Without a plausible link between commissions and the premiums Plaintiffs paid, there is no adequately alleged injury-in-fact.

Plaintiffs rely on *Stern v. JPMorgan Chase & Co.*, 2026 WL 654714 (S.D.N.Y. Mar. 9, 2026), but it defeats their theory.  The *Stern* plaintiffs could identify specific sums they personally overpaid at the pharmacy counter—a *direct, out-of-pocket* overcharge on which the court sustained standing.  *Id.* at *7-9.  Yet the court *rejected* the higher-premium theory Plaintiffs press here because the plan sponsor's discretion over contribution rates kept those contributions from moving in lockstep with plan spending, so excess plan costs could not be traced to what participants paid.

---

[4] Plaintiffs' loss-ratio theory (Compl. ¶ 186) fails: their own sources confirm that sub-50% loss ratios are typical for VB insurance.  Lockton Br. 11-12.

[5] Plaintiffs' insistence that Lockton's commissions were four times the industry standard (Opp. (Dkt. 99) 17; Opp. (Dkt. 100) 22) is meritless: they make *no* effort to allege comparability of structure, demographics, plan size, or services.  *Cf. Singh v. Deloitte LLP*, 123 F.4th 88, 93–94 (2d Cir. 2024).

[6] The Second Circuit's "low threshold" for injury-in-fact does not rescue Plaintiffs. Opp. (Dkt. 99) 9. *Carter* still requires concrete, traceable harm, not a multi-step causal chain resting on a non-party carrier's hypothetical pricing.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

Plaintiffs have no such overcharge—only the indirect premium theory *Stern* rejected.   Their attempt to distinguish *Winsor*, *Horvath*, *Knudsen*, and *Navarro* on the grounds that participants here pay 100% of premiums merely relocates the speculation from the plan sponsor's use of excess funds to the insurer's pricing.   Plaintiffs still must plausibly allege that reducing Lockton's commissions would have led Aflac to reduce premiums that were already within or below the range of their comparators, the type of causal link *Horvath* rejected as "far too speculative." *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 457 (3d Cir. 2003).

Plaintiffs' auto-insurance analogy (Opp. (Dkt. 99) 20) also backfires.   It works only because a driver can isolate a single *erroneous* input—a wrongly reported traffic infraction—and compare her premium with and without it.   Plaintiffs cannot: Their own data shows comparator plans with lower commissions charged higher premiums, and that other variables (demographics, risk, benefits paid) overwhelm any commission effect.   Lockton Br. 2, 9-10.   If commissions playing "at least some role" in pricing sufficed, every component of an insurer's cost structure would confer standing—the limitless inquiry *Horvath* warned against.

*Fourth*, unlike the self-funded plans in many of the cases Plaintiffs cite (*e.g.*, *Stern* and *Lewandowski*), the VB Program is *fully insured*: Aflac assumes the risk of paying benefits and fully insures those benefits.   In a self-funded plan, excessive fees deplete the trust that pays benefits, causing participant harm.   *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 658-59 (9th Cir. 2019) (distinguishing self-funded from fully insured plans).   Here, every dollar of Lockton's commission came from Aflac's general assets, and Plaintiffs' premiums were fixed in advance; whether Aflac's brokerage costs were "high" or "low" cannot retroactively change what Plaintiffs paid.   Plaintiffs' theory thus depends on speculation about how a non-party insurer would have priced a different bargain—exactly the "conjectural" injury Article III forbids.   *See*

4

*Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016) (injury in fact must be "concrete and particularized . . . not conjectural or hypothetical").

*Fifth,* Plaintiffs have no entitlement to the funds Aflac used to pay Lockton's commissions and cannot recast that defect as a "merits issue." Opp. (Dkt. 99) 21. Having no interest in those funds, Plaintiffs suffered no cognizable injury from how Aflac spends its own money. *Krukas v. AARP, Inc.*, 2021 WL 5083443, at *8 (D.D.C. Nov. 2, 2021) (holding plaintiffs lacked standing where they received the benefit of their bargain and challenged only the allocation of their agreed-upon premium between the insurer and a third party, not the amount they paid).

*Finally,* Plaintiffs are not entitled to jurisdictional discovery or an evidentiary hearing. Lockton's challenge is facial: Even taking all allegations as true, the Complaint's theory of injury rests on conclusory assumptions the law does not credit and that its own incorporated data contradicts. *See XY Planning Network, LLC v. SEC*, 963 F.3d 244, 253 (2d Cir. 2020) (no standing where the injury theory rested on "conclusory statements and speculative economic data"). The claims against Lockton should be dismissed under Rule 12(b)(1).

## II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST LOCKTON UNDER RULE 12(B)(6)

### A.   <u>The Agreement Is Properly Before the Court and Negates Fiduciary Status</u>

Plaintiffs' argument that the Agreement is not "integral" and must be excluded under Rule 12(d) borders on frivolous.[7] Opp. (Dkt. 100) 10-11. The Amended Complaint expressly quotes the Agreement (¶¶ 159, 161) and relies on its provisions to allege Lockton was responsible for "VB vendor oversight" and "optimization." *Id*. ¶¶ 91, 159, 161, 177; Allied Rep. Br. § II.C.1. A document is integral where "the complaint relies heavily upon its terms and effect," *Chambers v.*

---

[7] Similarly, the Form 5500s are "integral" to Plaintiffs' Complaint, so their argument against attachment fails. Allied Rep. Br. § II.C.1.

*Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation modified), and reaches legal documents "containing obligations upon which the plaintiff's complaint stands or falls," *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  Plaintiffs cannot mine the Agreement for favorable phrases while asking the Court to ignore the structural terms—§ 6.8's reservation of final discretion to Allied and § 6.11's confirmation of Lockton's non-fiduciary role—that defeat their theory.

Plaintiffs' fallback that ERISA § 410(a) voids fiduciary-status disclaimers misreads the statute.  Opp. (Dkt. 100) 11.  By its terms, § 410(a) voids only provisions that "purport[] to relieve a fiduciary" of liability, it does not transform a non-fiduciary into one.  The Agreement's terms are not exculpatory "boilerplate," as Plaintiffs claim.  Opp. (Dkt. 100) 11.  They are important operational provisions that allocate authority between Allied and Lockton and give Lockton no discretion to relinquish.  Fiduciary status turns on the exercise of discretionary authority, *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000), and the contractual restraints confirm that none was conferred or exercised here.

### B.    Plaintiffs' Conclusory "Functional Fiduciary" Allegations Fail Under *Iqbal*

Plaintiffs barely engage with Lockton's fiduciary-status arguments, asserting only that fiduciary status is "fact-intensive."  Opp. (Dkt. 100) 14.  But that does not excuse pleading *any* specific facts that Lockton acted as a fiduciary.  Conclusory parroting of § 1002(21)(A)—that Lockton "exercised discretionary authority" or "selectively with[held] information," Compl. ¶ 23, 162—falls far short of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), especially given the restrictions in the Agreement.  Plaintiffs needed to allege that Lockton transcended a typical broker's role and exercised discretion the Agreement did not permit, Lockton Br. 14-15, and they have not.

The cases Plaintiffs cite do not help them. *Access Services* distinguishes a broker who "offer[s] insurance plans for sale or recommend[s] options" from one with "final discretion in the choice of which insurance provider and plan to choose." *Access Servs. of N. Ill. v. Capitol Adm'rs, Inc.*, 2021 WL 780483, at *4 (N.D. Ill. Mar. 1, 2021). The Agreement places Lockton in the former category and reserves final discretion to Allied. *Chao v. Day*, 436 F.3d 234, 236-37 (D.C. Cir. 2006), involved an agent who misappropriated funds and delivered counterfeit policies—nothing like Lockton's disclosed, arm's-length services—and its premise that the broker was "employed to effect insurance for another," *id.* at 237 does not fit, because Lockton merely recommended insurance to the Plan. The undisputed timeline also defeats any "selection" theory: Aflac was Allied's carrier *before* Lockton was retained in 2021. Lockton Br. 15-16.

Finally, fiduciary status must be assessed with respect to the "action subject to complaint." *Pegram*, 530 U.S. at 226. The action challenged here is Lockton's receipt of commissions, yet Plaintiffs do not—and cannot—allege that Lockton set its own rate; Aflac set the schedule and Allied approved it. In any event, a service provider "is not an ERISA fiduciary with respect to the terms of the agreement for [its] compensation," *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987), and "owes no fiduciary duty with respect to the negotiation of its fee compensation," *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018). Plaintiffs' reliance on *Teets v. Great-West Life & Annuity Insurance Co.*, 921 F.3d 1200 (10th Cir. 2019), is inapposite, Opp. (Dkt. 100) 17; the provider there *unilaterally* dictated investment options generating its own fees. Because neither the Agreement nor Plaintiffs' conclusory allegations support an inference that Lockton exercised discretionary authority, Plaintiffs' claims hinging on fiduciary status fail at the threshold.

### C.    Plaintiffs Plead No Flawed Process or Meaningful Comparators (Count I)

Plaintiffs concede prudence is process-based but ask the Court to infer a flawed process from the magnitude of commissions alone.  Opp. (Dkt. 100) 22.  They lean on *Sacerdote v. New York University*, 9 F.4th 95, 107 (2d Cir. 2021), and *Pension Benefit Guaranty Corp. ex rel. Saint Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc.*, 712 F.3d 705, 719-20 (2d Cir. 2013), arguing that circumstantial allegations suffice because the relevant facts lie in fiduciaries' "sole possession."  Opp. (Dkt. 100) 13, 17.  But *Singh v. Deloitte LLP*, 123 F.4th 88, 95 (2d Cir. 2024), holds that "sole possession" does not excuse a failure to plead specific facts, because ERISA's "extensive disclosure requirements" make information available without discovery.

Regardless, Plaintiffs do not credibly defend their comparator allegations, which fail under *Singh*, 123 F.4th at 93 -94, and *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278-79 (8th Cir. 2022): A plaintiff relying on comparators must show they are genuinely comparable in the nature, scope, and quality of services, not merely that a cost disparity exists.  Plaintiffs do not allege that any comparator plan used the same heaped commission structure, served a similar demographic, offered comparable benefits, or received comparable services.  Their supposed "common-sense" assertion that VB insurance is "materially identical across providers" misses the point: The relevant comparison is not just the insurance benefits but the *brokerage services*, which vary widely and which Plaintiffs never compare.

### D.    Causation Independently Defeats Plaintiffs' Fiduciary Breach Claim

Plaintiffs also cannot plead causation.  Aflac was Allied's carrier *before* Lockton was retained, and the Agreement barred Lockton from changing carriers without Allied's instruction.  Lockton Br. 22-23.  Plaintiffs' oppositions do not respond, and that silence is dispositive.  An

8

independent fiduciary (Allied) with sole discretion over the Program severs the causal chain between Lockton's conduct and any alleged injury.  Lockton Br. 22.

### E.    The Prohibited-Transaction Claim Fails (Count V)

Plaintiffs' § 406(b) theory requires fiduciary status, Lockton Br. 23, which they cannot establish.  That threshold deficiency alone defeats Count V.

Plaintiffs' § 406(b) theory fails for additional reasons.  *First*, Lockton's commissions were not paid from "plan assets."  Lockton Br. 23-24; Mercer Rep. Br. § III.C.  Once Allied transmitted premiums to Aflac, the funds became Aflac's property, and commissions paid from Aflac's general revenue are not plan assets.  *Depot,* 915 F.3d at 657–58.  The regulation Plaintiffs invoke, 29 C.F.R. § 2510.3-102(a)(1), addresses *participant contributions held by an employer* before remittance, not premiums already paid to an insurer.  Plaintiffs' case law is equally inapposite.  *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 745-47 (6th Cir. 2014), involved a self-funded plan whose contributions remained "in trust," and *Lowen v. Tower Asset Management*, 829 F.2d 1209, 1214-18 (2d Cir. 1987), condemned fiduciaries who funneled plan assets to entities they secretly controlled—not routine premium payments to a bona fide, arm's-length insurer.  And Dep't of Labor, ERISA Op. 1993-14A, May 5, 1993, deems funds plan assets only while held in trust for the exclusive purpose of providing coverage and beyond the reach of the insurer's general creditors—not premiums that, once paid to Aflac, became its general assets.  Plaintiffs' "earmarking" theory proves too much: under it, every dollar an insurer spends on claims, salaries, or overhead would be a "plan asset."  Opp. (Dkt. 100) 1, 25-26.

*Second*, Plaintiffs argue that "Lockton's assertion that it 'cannot have engaged in a prohibited transaction merely by accepting payment for services,' . . . is contrary to *Cunningham*," Opp. (Dkt. 100) 26, but *Cunningham* concerns § 406(a), not § 406(b).  Mercer Rep. Br. § III.B*; see also Collins v. Ne. Grocery, Inc.*, 2025 WL 2383710, at *5 (2d Cir. Aug. 18 2025) (post-

9

*Cunningham* decision dismissing § 406(b) claim as "too conclusory" where complaint offered no factual basis to distinguish between ordinary compensation and illicit kickbacks).

*Third*, Lockton was not a fiduciary as to its compensation (*supra* § II.A); in all events, accepting previously bargained-for, disclosed compensation is not self-dealing under § 406(b). Because Aflac set and Allied approved the schedule, Lockton had no discretion over its own pay and "cannot be held liable for merely accepting previously bargained-for fixed compensation." *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013); *accord D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 609 (5th Cir. 2023). And even under *Cunningham*, the § 408(b)(2) reasonable-compensation exemption applies on the Complaint's face given Plaintiffs' concession that the commissions fell within the 15–55% industry range.

### F.    The Knowing-Participation Claims Fail (Counts VII and IX)

The knowing-participation claims fail because the underlying claims against Allied are inadequately pled. *See Trs. of Upstate N. Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016) (first element of a participation claim is a fiduciary breach).

Plaintiffs' argument that § 406(a) does not require "plan assets" (Opp. (Dkt. 100) 19-20, 26) does not salvage the knowing-participation theory. Even if §§ 1106(a)(1)(A) and (C) reach beyond plan-asset transfers, Plaintiffs must allege an underlying prohibited transaction by Allied (Mercer Rep. Br. § III.B), and they cannot because the § 408(b)(2) exemption applies on the Complaint's face (*supra* § II.E). Regardless, Lockton was not a "party in interest" when Allied engaged it years after the start of the class period and agreed to its disclosed commissions. Mercer Rep. Br. § III.B (addressing party-in-interest requirements).

Independently, Plaintiffs fail to plead Lockton's "actual or constructive knowledge" that any transaction was unlawful. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S.

10

238, 251 (2000).  Their theory that Lockton "necessarily knew" Allied was not monitoring because commissions were high, Opp. (Dkt. 100) 18, is circular.  *Walsh v. Vinoskey*, 19 F.4th 672, 677-78 (4th Cir. 2021), requires knowledge of "the circumstances that rendered the transaction unlawful," not merely of one's own compensation.  Plaintiffs' lead authority, *Carfora v. Teachers Insurance Annuity Association of America*, Opp. (Dkt. 100) 18, is inapposite.  There, the plaintiffs alleged the defendant "caused the Plan Sponsors to engage in" the unlawful conduct.  2024 WL 2815980, at *9 (S.D.N.Y. May 31, 2024).  Plaintiffs allege nothing comparable; Lockton's commissions were disclosed, approved by Allied, and within the industry range Plaintiffs cite.

G.    **Plaintiffs Cannot Obtain the Monetary Relief They Seek Against a Non-Fiduciary**

Even if Plaintiffs had adequately pleaded knowing participation, Counts VII and IX would independently fail because § 502(a)(3) permits only "appropriate equitable relief" against non-fiduciaries.  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255–62 (1993).  Equitable restitution requires the plaintiff to identify specific property, or its traceable proceeds, in the defendant's possession.  *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362–64 (2006); *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 143 (2016).  Plaintiffs' rejoinder that *Harris Tr.* permits disgorgement of "ill-gotten plan assets or profits" without identifying a "particular fund" (Opp. (Dkt. 100) 19) misreads that decision.  *Harris Trust* allows recovery only from "a transferee of ill-gotten trust assets," reaching the "proceeds" or "profits derived" from particular property the transferee received.  530 U.S. at 250–51.  As the Ninth Circuit held, "nothing in *Harris Trust*" dispenses with the requirement of "specifically identifiable property or its traceable proceeds."  *Depot*, 915 F.3d at 664.  Lockton received no plan assets—its commissions were paid by Aflac (*supra* § II.E)—so there is no identifiable property to disgorge and no "ill-gotten" profits derived from it.  Mercer Rep. Br. § III.C; Allied Rep. Br. § II.C.3.

11

## **CONCLUSION**

The Amended Complaint should be dismissed with prejudice as to Lockton.

Dated: June 12, 2026                    **MILBANK LLP**
New York, New York


/s/ *Sean M. Murphy*
Scott A. Edelman
Sean M. Murphy
Robert C. Hora
Lucille E. Baeurle
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Email:  sedelman@milbank.com
        smurphy@milbank.com
        rhora@milbank.com
        lbaeurle@milbank.com

*Counsel for Defendant Lockton Companies, LLC*

**<u>Local Civil Rule 7.1(c) Certification</u>**

Undersigned counsel hereby certifies that this Reply Memorandum of Law complies with the word count limitations and rules set forth in Local Civil Rule 7.1(c).  Undersigned counsel has relied on the word count of the word-processing program used to prepare this document and states that the applicable portions of the document contain 3,478 words.

Dated: June 12, 2026                                                 */s/ Sean M. Murphy*