UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA FELLOWS, EDMUND LYNN III, DONNA PATTON, WESLEY HALL, and NINA BUSTAMANTE-VICARO, individually and as representatives of a class of participants and beneficiaries on behalf of the ALLIED UNIVERSAL HEALTH AND WELFARE BENEFIT PLAN; and Karen Connolly, in her individual capacity, <br><br> Plaintiffs, <br><br> -against- <br><br> UNIVERSAL SERVICES OF AMERICA, LP d/b/a ALLIED UNIVERSAL, ALLIED UNIVERSAL EMPLOYEE BENEFITS COMMITTEE, MERCER HEALTH AND BENEFITS ADMINISTRATION, LLC, LOCKTON COMPANIES, LLC, and JOHN DOES 1-20; <br><br> Defendants. | Case No. 25-cv-10659 |

**DEFENDANTS UNIVERSAL SERVICES OF AMERICA,
LP, d/b/a ALLIED UNIVERSAL, AND ALLIED
UNIVERSAL EMPLOYEE BENEFITS COMMITTEE'S
<u>REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED
COMPLAINT</u>**

Pamela S.C. Reynolds
preynolds@littler.com
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
Telephone:  585.203.3400
Facsimile:  585.203.3414

*Attorneys for Defendants
UNIVERSAL SERVICES OF AMERICA, LP,
d/b/a ALLIED UNIVERSAL, and ALLIED
UNIVERSAL EMPLOYEE BENEFITS
COMMITTEE*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 2

      A.      Allied Universal's Decision to Sponsor VBI Is a Settlor Function. ................ 2

      B.      Plaintiffs Have No Article III Standing. ......................................................... 3

            1.      Plaintiffs Lack Standing to Challenge Broker Commission Rates Because of the VBI Program's Nature Akin to a Defined Benefit. .................................................................................. 4

            2.      Plaintiffs' Claims Are Not Distinguishable from *Thole* Because of Alleged "Personal Financial Harm." ............................... 5

      C.      Plaintiffs Fail to Plausibly Allege an Imprudent Fiduciary Process. ............................................................................................................. 8

            1.      The Court May Consider Allied Universal's Exhibits ......................... 8

            2.      The Amended Complaint Does Not State a Plausible Imprudent Fiduciary Process Claim. .................................................. 9

            3.      The Amended Complaint Does Not State a Plausible Prohibited Transaction Claim. ........................................................... 10

III.    CONCLUSION ...................................................................................................... 10

Case 1:25-cv-10659-GHW-BCM   Document 103   Filed 06/12/26   Page 3 of 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beck v. PACE Int'l Union*,
551 U.S. 96 (2007)................................................................................................................2

*Carter v. HealthPort, Techs., LLC*,
822 F.3d 47 (2d Cir. 2016)..................................................................................................5

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)................................................................................................8

*Comerica Bank for DALRC Retiree Benefit Tr. v. Voluntary Emp. Benefits Assocs. Inc.*,
No. 1:09-cv-1164-WSD, 2012 WL 12948705 (N.D. Ga. Jan 11, 2012) ................................10

*Global Network Commc'ns, Inc. v. City of N.Y.*,
458 F.3d 150 (2d Cir. 2006)................................................................................................8

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
858 F. App'x 432 (2d Cir. 2021) ........................................................................................4

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield*,
751 F.3d 740 (6th Cir. 2014) ............................................................................................10

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)..............................................................................................................2

*Knudsen v. MetLife Grp., Inc.*,
117 F.4th 570 (3d Cir. 2024) ..............................................................................................8

*Mass Laborer's Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*,
Civil Action No. 21-10523-FDS, 2022 WL 952247 (D. Mass Mar. 30, 2022)......................10

*Mitchell v. Planned Parenthood of Greater New York, Inc.*,
745 F. Supp. 3d 68 (S.D.N.Y. 2024)..................................................................................6

*Pegram v. Herdrich*,
530 U.S. 211 (2000)..............................................................................................................2

*Polanco v. WPP Grp. USA, Inc.*,
No. 24-CV-9548 (JGK), 2026 WL 1099370 (S.D.N.Y. Apr. 22, 2026) ................................9

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)................................................................................................8

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020)................................................................................................3, 5

*Trs. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg*,
    No. 08-0884, 2009 U.S. Dist. LEXIS 101778 (E.D.N.Y. Sept. 25, 2009) ..............................10

**Other Authorities**

Rule 12(b)(6)...................................................................................................................8

## I.    INTRODUCTION[1]

Plaintiffs seek to impose ERISA liability upon the Allied Universal Defendants for offering VBI at premiums costing less than three-quarters of the identified comparator plans in the Amended Complaint ("AC"). Not only is Allied Universal's choice to offer VBI a non-fiduciary settlor function, but it also caused no harm to Plaintiffs. The group health benefits under the VBI program are akin to benefits under a defined benefit plan: participants contract for a specific benefit, which Aflac must provide if a claim event occurs. As there is no assertion that Plaintiffs did not actually receive the benefits for which they contracted, or an allegation of fiduciary mismanagement within the VBI program so serious that it threatens non-party Aflac's ability to pay future claims, Plaintiffs have no standing.

While Plaintiffs claim that they have alleged "personal financial harm" in the form of "higher premiums," this bare allegation is not backed up by a single well-pled fact. The AC and the documents it incorporates prove just the opposite. The incorporated Form 5500s which Plaintiffs use as the source of their data establish that Allied Universal's VBI had premiums that were lower on average than 72% of the purported comparator plans. Thus, the undisputed facts do not support a plausible conclusion that Plaintiffs paid "higher" or "excessive" premiums. This data also implodes Plaintiffs' arguments about a "correlation" between premiums and commissions. According to Plaintiffs, all the purported comparator plans in the AC were prudently administered and have appropriate, lower broker commissions. Yet 72% of them have higher VBI premiums. These facts show that premiums *are not* tied to commissions – there is no such correlation. It also confirms that Plaintiffs fail to establish injury in fact to support standing.

---

[1] All defined terms have the same meaning as in the Allied Universal Defendants' opening Memorandum (Doc. 73). As applicable, the Allied Universal Defendants join the arguments in Mercer's and Lockton's replies.

Similar issues render it implausible to draw any inference of an imprudent fiduciary process based on allegations of relatively high commissions when expressed as a percentage of premiums. And, while Plaintiffs couch their prohibited transaction arguments in the passive voice to avoid drawing attention to the parties involved, those claims rely on the idea that *Aflac*, not Allied Universal, paid improperly high commissions to Mercer and Lockton. Not only is Allied Universal not a party to those transactions, but the challenged commissions are not plan assets as premiums cease to be plan assets once remitted to the insurer. Finally, because the AC affirmatively establishes commission rates are within industry standard, the claims can be dismissed under the "reasonableness" safe harbor.

## II.    ARGUMENT

### A.    Allied Universal's Decision to Sponsor VBI Is a Settlor Function.

As Plaintiffs concede, employers are settlors and not fiduciaries when adopting a benefit program. (Doc. 100 at 15). Accordingly, Allied Universal acted as a settlor when deciding to offer VBI, including selecting the carrier and resulting price at which VBI were offered. This plan design decision dictated "form" and "structure"—*i.e.*, the "content of the [P]lan," which is not a fiduciary act. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Plaintiffs attempt to draw a distinction between making the decision to offer VBI and "implementing" that decision by selecting the carrier and related pricing structure. (Doc. 100 at 15). However, these decisions are inherently part of the decision to offer the insurance benefit in the first place, as one cannot practically decide to offer the benefit without selecting a carrier and pricing framework. *Stern v. JPMorgan Chase & Co.*, the only case cited by Plaintiffs that actually ruled on this settlor question,[2] supports the Allied Universal Defendants' position. In granting the

---

[2] Contrary to Plaintiffs' suggestions, *Beck v. PACE Int'l Union*, 551 U.S. 96, 102 (2007), was

defendants' motion to dismiss a claim that they breached ERISA's fiduciary duty of prudence "through the way they structured the Plan's prescription-drug program," the *Stern* court stated:

> Here, although framed in the language of fiduciary breach, Plaintiffs' theory targets the structure of the pharmacy benefit itself — how the PBM was compensated, how drugs were categorized, what pricing benchmarks were used, and which alternatives were not adopted. Those are choices about the architecture of the benefit offering, not about the discretionary management of plan assets or the administration of particular claims . . . Courts have consistently treated decisions of the kind outlined in the Complaint as settlor functions. The gravamen of Plaintiffs' Complaint is Defendants' alleged failure to consider or implement alternative pricing structures for the Plan's prescription-drug component. . . . By focusing on the absence of these alternatives, Plaintiffs assert that the design of the Plan itself should have been different, and that a different structure would have reduced costs and better served the participants. This argument, at its core, challenges the choices made regarding the architecture of the Plan's prescription-drug benefit component, rather than specific acts of plan management or administration. Defining the formulary framework, determining cost-sharing terms, and choosing between pricing models are components of benefit design.

No. 1:25-cv-02097 (JLR), 2026 LX 132031, at \*11-12 (S.D.N.Y. Mar. 9, 2026). Like *Stern* and the cases cited therein, this Court should dismiss Plaintiffs' claims because the Allied Universal Defendants' decision to offer VBI with a policy through Aflac is a non-fiduciary settlor act.

### B.    Plaintiffs Have No Article III Standing.

The parties agree that there is "no ERISA exception to Article III." *Thole v. U.S. Bank N.A.,* 590 U.S. 538, 547 (2020). Indeed, the Allied Universal Defendants argue that Plaintiffs fail to establish the requisite injury in fact *and* causation *and* redressability necessary to confer Article III standing.[3] This question is *not* inextricably tied into the merits—regardless of whether the Court

---

decided on an antecedent question and did not address this issue. Likewise, *Barbich v. Northwestern Univ.* found in that particular case the question was too intertwined with the merits and declined to decide the motion to dismiss on the basis of the defendant's settlor function argument. 1:25-cv-6849, at [Doc. 61 at 5] (N.D. Ill. Apr. 2, 2029).

[3] Plaintiffs suggest that because Mercer discussed redressability in a footnote, arguments about it are waived. (Doc. 100 at 17). The Court cannot "waive" analysis of a standing element that goes directly to its jurisdiction to hear a case. (*Cf.* Doc. 73 at 7). Moreover, Article III standing elements are functionally interdependent. The lack of any injury in fact goes hand-in-hand with there being

determines that the commissions Aflac paid Mercer and Lockton were excessive or not, the AC's allegations do not support a conclusion that those allegedly inflated commissions caused any redressable injury to Plaintiffs because facts cited in the AC and publicly available show Plaintiffs did not pay excessive premiums and there is no correlation between commissions and premiums for VBI.

### 1.    Plaintiffs Lack Standing to Challenge Broker Commission Rates Because of the VBI Program's Nature Akin to a Defined Benefit.

The Allied Universal Defendants never argued for a "blanket rule that participants in a health insurance plan who received their benefits lack standing." (*Compare* Doc. 99 at 17). Rather, they argue that VBI operates like a defined benefit plan, as participants are only entitled to contractually defined benefits and, thus, standing only arises from an alleged denial of promised benefits or alleged substantial risk that future benefits will not be paid. (Doc. 73 at 9-12 (citing *Thole* and its progeny)).

Plaintiffs do not contest they received the VBI benefits for which they paid, nor do they allege fiduciary mismanagement creating a substantial risk that future benefits will not be paid. Plaintiffs instead challenge how their premium payments were allegedly used by Aflac (after ceasing to be Plan assets) to compensate Mercer and Lockton. Therefore, properly viewing the VBI program as a set contractual or "defined" benefit, Plaintiffs lack standing. *See, e.g.*, *Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 858 F. App'x 432, 433 (2d Cir. 2021) (affirming dismissal for lack of Article III standing where health plan participants alleged misappropriation of plan funds but did not allege denial of any promised benefits).

---

no plausible inference that the facts as alleged caused any harm, or that the Court could favorably redress any such harm.

### 2.    Plaintiffs' Claims Are Not Distinguishable from *Thole* Because of Alleged "Personal Financial Harm."

Plaintiffs' efforts to distinguish this case from the *Thole* line of authority fail; while it may be that "Plaintiffs allege monetary injury" through premiums overpayment, they do not do so ***plausibly***. First, while their Opposition confirms that their sole alleged injury is "excessive premiums" (Doc. 100 at 1), Plaintiffs fail to address that they have not directly shown that comparable plan participants paid lower premiums, nor have they alleged anything about comparative loss ratios of other plans to support relying on loss ratio as an "alternative measure" of overpayment. (Doc. 73 at 13-15). Instead, they argue that other plans had arrangements where the insurance carrier paid the broker a lower commission rate when expressed as a percentage of premiums, and then awkwardly leap to the contention that this suggests Allied Universal VBI participants could have paid lower premium rates for the same coverage.  (Doc. 99 at 10).

The problem with Plaintiffs' argument, setting aside the fact that the AC alleges ***nothing*** factually to support the conclusion that the services the brokers for these other plans provided were similar to those of Mercer and Lockton, is that the very documents the AC draws its commission data from show that ***72% of the comparator plans charged higher premiums for VBI than Allied Universal's plan did***.[4] (Doc. 73 at 20-21; Doc. 74, ¶¶ 55-56; Doc. 74-53). Thus, the lower commissions paid to brokers in those other plans ***did not result in lower premiums*** – instead, the premiums were higher. Plaintiffs' argument that the Court can infer Plaintiffs paid higher premiums because of the higher commissions paid by Aflac to Mercer and Lockton is disproven by their own data (which they cannot avoid) and is, at a minimum, decidedly implausible. This is

---

[4] Reviewing the Forms 5500 incorporated by reference in the AC does not convert the Allied Universal Defendants' 12(b)(1) motion to a factual standing challenge. A 12(b)(1) motion becomes factual when evidence is proffered beyond the pleading (*i.e.*, a defendant's own records). *Carter v. HealthPort, Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). The "evidence" used by the Allied Universal Defendants was incorporated into the AC by reference and is not "beyond the pleading."

not a "merits argument"; it is recognizing the implausibility of the facts upon which Plaintiffs purport to base their claims. *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 86 n.1 (S.D.N.Y. 2024) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam) ("[W]hen an allegation in a complaint is squarely contradicted by a properly considered document, 'the document controls and the allegation is not accepted as true.'").

The data also disproves Plaintiffs' "economic harm" theory another way. In their Motion, the Allied Universal Defendants charted the VBI premiums against the commission rate paid to Mercer and Lockton during the six-year statute of limitations period. Those scattershot data points show no correlation between commissions and premiums. (Doc. 73 at 15-16). When commissions go up or down, premiums do not move in synch – they often move the opposite direction. The same is true when premiums against commission percentages are charted for all of Plaintiffs' comparator plans. (*Id*. at 16-17). Thus, Plaintiffs' contention that higher VBI commission rates led to higher VBI premiums is simply not plausible.[5]

Plaintiffs resist this reality through some "common sense" notion that because commissions are calculated as a percentage of premiums, commission dollars necessarily increase as premium dollars go up. (Doc. 99 at 20-22). This is a meaningless point; obviously commission dollars will go up if more premium dollars are paid because Aflac chose to pay commissions by calculating them as a percentage of premiums. But this offers zero support for the conclusion that any lowering of the commission rate would cause average premium dollars paid to be lower. In fact, Plaintiffs allege no facts which support the conclusion, plausible or otherwise, that there is

---

[5] At one point in their Opposition, Plaintiffs claim that "for standing purpose, *any* correlation between commission and premiums is enough to show that higher commissions caused Plaintiffs to pay more in premiums…." (Doc 99 at 19). Maybe so, but Plaintiffs have not pled any facts demonstrating a correlation, and the facts prove there is not one.

any link at all between commission rates and premium dollars charged. Instead, hard data available from the documents the AC relies upon reinforces this is not the case at least 72% of the time. (Doc. 73 at 20-21; Doc. 74 ¶¶ 55-56; Doc. 74-53). In other words, while it may be "common sense" that premium dollars collected by Aflac drive "dollar-for-dollar" the commission dollars collected by Mercer and/or Lockton, it is nonsense to suggest that any decrease in the percentage commission rate Mercer or Lockton receives would necessarily be passed on to VBI participants or otherwise drive down the average participant premium rates Aflac charges.[6] Plaintiffs cannot overcome these undisputed facts that torpedo their theory of liability through "logic" arguments like "it is reasonable…to infer that reducing commissions would reduce premiums," (*cf.* Doc. 99 at 17), when the AC has no facts to back those arguments up. *Cf. Stern*, 2026 WL 654714, at *5 (agreeing that "Plaintiffs' higher premium theory" based on allegations of the hiring of a PBM increased premium costs "is too speculative" to confer Article III standing).[7]

In short, the Forms 5500 incorporated by reference in the AC show that Plaintiffs got a bargain: they paid lower premiums on average than 72% of comparator plans. No plausible allegations suggest they would have paid less if the commission percentage were lower. To the contrary, nearly three quarters of the comparator plans that paid lower commission rates offered VBI at ***higher*** premium rates. Absent plausible facts that lower commission percentages

---

[6] Non-party Aflac's involvement and the conjecture around whether it would choose to pass on any savings from decreased commission rates to its customers critically distinguishes Plaintiffs' authority from this case. Their cited cases involve alleged harm based on the plan's own expenses being too high, such that any decrease would necessarily save the plan money. By contrast, a decrease in Aflac's expenses does not necessarily save the plan money. By arguing otherwise, Plaintiffs ask the Court to find that that decreasing Aflac's expenses would necessarily inure to the benefit of plan participants. This is not a plausible inference.

[7] Plaintiffs claim *Stern* supports their position. But *Stern* explicitly rejected increased premiums as a non-conjectural harm and instead allowed the claims to proceed based on allegations of increased out-of-pocket costs, which Plaintiffs have not alleged here.

effectively cause lower premiums, Plaintiffs cannot plausibly allege a theory of injury based on Aflac's commission payments, and the AC should be dismissed for lack of Article III standing. *Cf. Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 579-82 (3d Cir. 2024) (dismissing claim based on employer fiduciary's conduct in allocating prescription drug rebates because no allegations established with any certainty that such rebates would be used to reduce premium costs, and "pleadings must be something more than an ingenious academic exercise in the conceivable").

### C. Plaintiffs Fail to Plausibly Allege an Imprudent Fiduciary Process.

#### 1. The Court May Consider Allied Universal's Exhibits.

Plaintiffs try to fashion a controversy where there is not one. Defendants are unquestionably allowed to attach and have the Court consider the content of documents incorporated into the AC, like the Forms 5500, on a Rule 12(b)(6) motion. Under settled Second Circuit authority, courts may consider not only the complaint itself, but documents incorporated by reference or "integral" to the complaint (on which the complaint relies heavily) because such materials are deemed part of the pleadings. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Unlike materials considered solely through judicial notice, which may only establish the existence of a document or the fact of prior proceedings but not the truth of the documents' contents, documents integral to the complaint may be considered for what they say, including the facts reflected in and fairly derived from them, where their authenticity is undisputed. *Cf. Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). Any limitation that a court may consider only the existence—and not substance—of a document applies to judicial notice, not documents incorporated by reference.

Plaintiffs cannot credibly argue that the Form 5500s are not incorporated by reference or that the AC "merely refers to publicly available Form 5500 data" when the AC specifically uses that data for the allegations central to Plaintiffs' theories of liability. (*Cf.* Doc. 64 ¶¶ 189-203). The

8

Court should consider the Form 5500 exhibits. *See Polanco v. WPP Grp. USA, Inc.*, No. 24-CV-9548 (JGK), 2026 WL 1099370, at *2 (S.D.N.Y. Apr. 22, 2026) (quoting *Chambers*, 282 F.3d at 152, and considering Forms 5500 on motion to dismiss).

### 2.    The Amended Complaint Does Not State a Plausible Imprudent Fiduciary Process Claim.

Plaintiffs argue their circumstantial allegations plausibly allege an imprudent fiduciary process claim. However, they have not done anything to rebut that, under Second Circuit authority, the mere allegation that a request for proposal was not performed for either broker or carrier (if it were supported by nonconclusory facts) is insufficient to allege an ERISA breach of fiduciary duty. (Doc. 73 at 18-19). Nor can plausible imprudence be drawn from Plaintiffs' allegations about commission percentages Aflac remitted to brokers when Plaintiffs' own data shows plans with lower commission rates charged higher per-person premium payments 72% of the time.

A simple example illustrates the point: Plaintiffs contend that as a fiduciary of the VBI program with a responsibility to administer those programs in their participants' best interest, Allied should have adopted a plan that required the brokers to accept less commission. Yet Plaintiffs do not dispute that the sole costs paid by participants for the VBI program are premiums. (Doc. 99 at 10). Why would Allied choose to use a broker commission arrangement like that of alleged prudent comparator plan Clarative Analytics with a lower average commission rate of 5.8%  when it would mean its VBI participants would have to pay ***287% more in premiums*** in 2024? (*Compare* Doc. 64 ¶ 195, *with* Doc. 74-53, Ex. AAA at 2 ($591.57 for Claritive vs. $205.62 for Allied)). Neither Allied nor its VBI program participants would prefer this alternative commission arrangement which Plaintiffs deem "prudent."

In short, that the Allied Universal Defendants' VBI participants had lower premium rates than 72% of the cited-to comparator plans all while the associated brokers were receiving commission rates within the range that Plaintiffs specifically allege is reasonable, is hardly

consistent with, much less suggestive of, an imprudent fiduciary process. (*Compare* Doc. 64 ¶¶ 96, 129-130). The Allied Universal Defendants' arguments in favor of dismissal stand.

### 3. The Amended Complaint Does Not State a Plausible Prohibited Transaction Claim.

Plaintiffs' prohibited transaction claims remain implausible because the commission percentages paid to Mercer and Lockton fall squarely within the alleged industry-wide reasonable ranges, leading to the conclusion from the face of the Complaint that Mercer and Lockton were "reasonably compensated" for the services provided. (*Cf.* Doc. 73 at 24-25).

Furthermore, the Allied Universal Defendants reemphasize that the AC allegations recognize they never actually compensated Mercer or Lockton; Aflac did. (*E.g.*, Doc. 64, ¶¶ 87, 91, 93). This dooms Plaintiffs' prohibited transaction claims and distinguishes this case from *Hi-Lex* and *Goldberg* relied upon by Plaintiffs, as the additional layer of removal not only alters the parties involved but the nature of the payments made; it is axiomatic that collected premiums cease to be plan assets when they move to Aflac's control, and yet another step further away from being plan assets when Aflac remits funds to Mercer and Lockton. *Compare Hi-Lex Controls, Inc. v. Blue Cross Blue Shield*, 751 F.3d 740, 745 (6th Cir. 2014), *and Trs. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-0884, 2009 U.S. Dist. LEXIS 101778, at *6 (E.D.N.Y. Sept. 25, 2009), *with Mass Laborer's Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, Civil Action No. 21-10523-FDS, 2022 WL 952247, at *12-13 (D. Mass Mar. 30, 2022) (premiums paid to insurer not plan assets); *see also Comerica Bank for DALRC Retiree Benefit Tr. v. Voluntary Emp. Benefits Assocs. Inc.*, No. 1:09-cv-1164-WSD, 2012 WL 12948705, at *15-16 (N.D. Ga. Jan 11, 2012).

## III. CONCLUSION

For the reasons set forth above, the Allied Universal Defendants ask the Court to dismiss the AC entirely and without leave to replead.

Dated:  June 12, 2026

**LITTLER MENDELSON, P.C.**

By: */s/ Pamela S.C. Reynolds*
Pamela S.C. Reynolds
preynolds@littler.com
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
Telephone:  585.203.3400
Facsimile:  585.203.3414

Wesley E. Stockard *(Admitted Pro Hac Vice)*
WStockard@littler.com
Rachel P. Kaercher *(Admitted Pro Hac Vice)*
RKaercher@littler.com
Kaylee M. Patterson *(Admitted Pro Hac Vice)*
KPatterson@littler.com
LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, Georgia 30326.1127
Telephone:     404.233.0330
Facsimile:     404.233.2361

Simon J. Torres *(Admitted Pro Hac Vice)*
STorres@littler.com
Tara McAndrew *(Admitted Pro Hac Vice)*
TMcAndrew@littler.com
815 Connecticut Ave. NW, Suite 400
Washington, DC 20006
Telephone:  202.842.3400
Facsimile:  202.842.0011

*Attorneys for Defendants*
*UNIVERSAL SERVICES OF AMERICA, LP,*
*d/b/a ALLIED UNIVERSAL, and*
*UNIVERSAL EMPLOYEE BENEFITS*
*COMMITTEE*

11

## CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7.1(C)

I, Pamela S.C. Reynolds, hereby certify in accordance with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") the foregoing Reply contains 3,474 words (exclusive of the caption, table of contents, table of authorities, and signature block), and complies with the applicable word count limit set forth at Local Rule 7.1(c).

In accordance with Local Rule 7.1(c), I have relied upon the word processing system's word count function in preparing this certification.

/s/ *Pamela S. C. Reynolds*
Pamela S.C. Reynolds

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2026, a true and correct copy of the foregoing has been filed with the Clerk via the Court's CM/ECF system, and thereby served on all counsel of record through that system.

/s/ Pamela S. C. Reynolds<br>Pamela S.C. Reynolds

13